UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DALE PHILLIPS,** | : | Case No. 2:16-cv-880 |
| c/o Gerhardstein & Branch Co. LPA | : | |
| 441 Vine Street, Suite 3400 | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| **PLAINTIFF** | : | |
| | : | **CIVIL COMPLAINT AND JURY** |
| vs. | : | **DEMAND** |
| | : | |
| **KAREN BLAIR** | : | |
| **ADAM GROVES** | : | |
| **JEAN BYRNE** | : | |
| **DOUGLAS K. MCCLAIN JR.** | : | |
| **CHAD CAZAN** | : | |
| **LOWELL F. RECTOR** | : | |
| c/o Columbus Police Department | : | |
| 120 Marconi Boulevard | : | |
| Columbus, OH 43215 | : | |
| *Individually and in their official* | : | |
| *capacity as a police officer of the City* | : | |
| *of Columbus,* | : | |
| | : | |
| and | : | |
| | : | |
| **CHIEF KIM JACOBS** | : | |
| c/o Columbus Police Department | : | |
| 120 Marconi Boulevard | : | |
| Columbus, OH 43215 | : | |
| *Individually and in her official* | : | |
| *capacity as the police chief of the City* | : | |
| *of Columbus* | : | |
| | : | |
| and | : | |
| | : | |
| **CITY OF COLUMBUS, OHIO** | : | |
| 77 North Front Street | : | |
| Columbus, OH 43215 | : | |
| | : | |
| | : | |
| **DEFENDANTS.** | : | |
| | : | |
| | : | |

1

I. **PRELIMINARY STATEMENT**

1. Defendant Officer Karen Blair, who was investigating a burglary involving two White men and a Black woman with an orange head wrap, happened upon Mr. Phillips and his passenger who were driving near the building where the burglary had allegedly occurred. Officer Blair stopped Mr. Phillips to investigate whether he was involved in the burglary, but before she got out of her vehicle dispatch informed Officer Blair and the other responding officers that the suspects were no longer at large, and that all the suspects were back inside the burgled building. Officer Blair, after learning that all the suspects were back inside the building, unlawfully continued Mr. Phillips' detention by running his license plates and with Officer Byrne questioning Mr. Phillips and his passenger. Although Mr. Phillips was cooperating and following the officers' commands, Officers Blair, Cazan, Groves and McClain pulled Mr. Phillips out of his car, so he hit the ground face first. The officers, along with Officer Byrne, then proceeded to handcuff Mr. Phillips. After Mr. Phillips was handcuffed, the officers continued to assault him while Officer Groves discharged mace directly in Mr. Phillips' eyes. The officers conspired with their supervisor Sergeant Rector to falsely charge Mr. Phillips with Obstructing Official Business in an attempt to cover up the officers' unlawful detention and use of excessive force against Mr. Phillips. The City of Columbus even offered to dismiss the criminal charge if Mr. Phillips would promise not to sue the City. After two criminal trials where the officers provided false testimony and a meritorious appeal, Mr. Phillips was found not guilty of the false charge of Obstructing Official Business. As a result of the incident, Mr. Phillips had to have surgery to repair a torn tendon in his right arm and suffered injuries to his eye, head, knees, and shoulders. Mr. Phillips had to take time off work, suffering monetary loss. Mr. Phillips brings this action seeking fair compensation, and reforms to the policies and training within the

Columbus Police Department to prevent the use of excessive force and unreasonable seizures against innocent civilians in the future.

## II.     JURISDICTION AND VENUE

2. Jurisdiction over claims arising from Defendants' violation of the Civil Rights Act is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).

3. Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367.

4. Venue is proper in this Division.

## III.     PARTIES

5. Plaintiff Dale Phillips, a Black man, is and was at all relevant times a resident of Franklin County in the State of Ohio and this judicial district.

6. Defendant Karen Blair, a White woman, was at all times relevant to this action employed by the City of Columbus as a police officer and acting under color of law. Defendant Blair is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued both in her individual and official capacities.

7. Defendant Adam Groves, a White man, was at all times relevant to this action employed by the City of Columbus as a police officer and acting under color of law. Defendant Groves is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued both in his individual and official capacities.

8. Defendant Jean Byrne, a White woman, was at all times relevant to this action employed by the City of Columbus as a police officer and acting under color of law. Defendant Byrne is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued both in her individual and official capacities.

9. Defendant Douglas K. McClain Jr., a White man, was at all times relevant to this action employed by the City of Columbus as a police officer and acting under color of law. Defendant McClain is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued both in his individual and official capacities.

10. Defendant Chad Cazan, a White man, was at all times relevant to this action employed by the City of Columbus as a police officer and acting under color of law. Defendant Cazan is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued both in his individual and official capacities.

11. Defendant Lowell F. Rector, a White man, was at all times relevant to this action employed by the City of Columbus as a police sergeant and acting under color of law. Defendant Rector is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued both in his individual and official capacities.

12. Defendant Chief Kim Jacobs, a White woman, was at all times relevant to this action employed by the City of Columbus as the police chief and acting under color of law. Defendant Jacobs is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacities.

13. Defendant City of Columbus is a unit of local government organized under the laws of the State of Ohio. Defendant City of Columbus is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

### IV. FACTS

14. Dale Phillips is a forty-eight year old African-American military veteran and former Ohio State Highway Patrol Officer. He is a husband and a father of four children. Mr. Phillips has no criminal record.

15. Mr. Phillips currently is a self-employed semi-truck driver. On September 15, 2014, after a long trucking job, Mr. Phillips parked his semi-truck and got into his pick-up truck.

16. Mr. Phillips was driving north on Harris Avenue in the City of Columbus, on his way to a Marathon gas station, when Officer Blair drove out of an alley, causing Mr. Phillips to stop suddenly to avoid hitting her. Mr. Phillips was blocked in by Officer Blair's cruiser and sat in his truck, waiting for Officer Blair to back up.

17. Officer Blair was in the area responding to a report that two White men and a Black woman wearing shorts with an orange head wrap were carrying items out of the rear of a closed bar.  She stopped Mr. Phillips' truck while it was driving past the right side of the building that was burgled.

18. There were only two occupants in Mr. Phillips' truck. Mr. Phillips, himself, a Black man and his passenger, a White woman who wore pants and had nothing wrapped around her head. They did not fit the description broadcast by dispatch.

19. After Officer Blair blocked Mr. Phillips' truck, dispatch broadcast that all suspects were back inside the burgled building. Officer Blair could hear the radio traffic through her portable radio and her car radio.  Before she got out of her vehicle she heard over the radio that "They are all back inside." A copy of the radio dispatch is incorporated in this complaint and filed along with the complaint.   She knew all of the suspects were inside the building.  Her suspicion to stop Mr. Phillips was dispelled. Nonetheless, she continued to detain him.

20. Columbus Police Division Directive Number 11.02(A) mandates that "Sworn personnel operating a CVS – equipped unit shall record all investigatory stops, traffic and pedestrian stops,…from the beginning of the action". Directive 11.01 (A)(1) mandates that "Recording of an event shall not be stopped until the enforcement action or incident has ended, or as directed by

a sworn Division supervisor." Directive 11.02 (L) mandates that "Personnel shall not tamper with, erase, delete, alter, or destroy any recorded section of the video."

21.     Officer Blair's police cruiser was equipped with a cruiser video system.

22.     Officer Blair activated her overhead lights, and then turned them off to prevent the automatic cruiser video system from recording her interaction with Mr. Phillips. She called Mr. Phillips' plates into dispatch and exited her cruiser.

23.     Mr. Phillips rolled down his window and asked Officer Blair why he was being stopped. Officer Blair responded, "I don't know, but we're going to find out." Mr. Phillips replied that Officer Blair could not stop him for no reason at all and to do so would violate his civil rights.

24.     Officer Blair then proceeded to question Mr. Phillips and requested identification. He again asked Officer Blair why he was being stopped, whether he was being detained, and stated that she already had his information from running his truck tags; nonetheless he provided her with his full name, date of birth, and social security number.

25.     Officer Blair requested Mr. Phillips' passenger's identification, and the passenger replied that she did not have identification.

26.     Officer Blair turned her attention back to Mr. Phillips and asked him where he was going. He told her he was going to the gas station. He repeatedly asked why he was being stopped. Officer Blair refused to respond to each of his requests. Mr. Phillips finally asked, "Am I being detained, because if I'm not being detained, I'm ready to go." Officer Blair then responded, "Yes, you are being detained." She did not tell him why he was being detained. Nor at that point could she have lawfully continued to detain him.

27. Defendant Officer Jean Byrne arrived shortly after Officer Blair detained Mr. Phillips. When she arrived, Officer Byrne asked the passenger to step out of the truck. Officer Byrne then patted her down and the two of them stepped away from the truck.

28. Officer Byrne questioned the passenger about whether she had been in the burgled building and became satisfied that she was not involved in the burglary. Despite knowing she was not involved in the burglary, Officer Byrne continued to detain the passenger and Mr. Phillips to do a "field interview" by conducting a warrant check and gathering additional information from the passenger unrelated to the burglary investigation.

29. Officer Blair continued to detain Mr. Phillips, and ask Mr. Phillips questions as if she were performing a normal traffic stop.

30. Only after other police cruisers arrived on the scene did Officer Blair inform Mr. Phillips that she was investigating a burglary. He informed her that he had nothing to do with a burglary. Mr. Phillips answered Officer Blair's questions and provided her with his driver's license.

31. Defendant Officer Adam Groves approached Mr. Phillips' passenger door as Defendant Officers Chad Cazan and Douglas McClain started approaching Mr. Phillips' truck. At this point all officers knew that Officer Blair had suspected that Mr. Phillips was a suspect in the burglary but also knew before they arrived that the three burglary suspects were still inside the building.

32. Officer Blair asked Mr. Phillips to turn his truck off. Mr. Phillips immediately complied. Officer Groves then walked around to Mr. Phillips' driver door and demanded that Mr. Phillips step out of the truck, but before he could even open the door, Officer Blair yanked his door open. Mr. Phillips began to exit his truck by placing his right hand on the truck's grab handle and stepping his left foot out of the truck.

7

33. Before Mr. Phillips' could place both feet on the pavement, Officer Groves grabbed Mr. Phillips and began to twist his left arm behind his back, preventing him from exiting the truck without falling. Mr. Phillips tried to keep his balance.

34. Officers Groves continued to twist Mr. Phillips' left arm and Officer Blair grabbed his right arm. They, along with Officer McClain pulled Mr. Phillips' upper torso and arms, while Officer Cazan grabbed both of Mr. Phillips' legs, causing Mr. Phillips to fall face down on the pavement.  His right shoulder and head bore the weight of his fall as he hit the ground. Officers Blair, Byrne, Cazan, Groves and McClain jumped on top of him. They each were pulling on his arms and legs, and pressing his face into the ground.

35. The officers handcuffed Mr. Phillips behind his back.

36. After Mr. Phillips was handcuffed Officer Groves maced him at point blank range in his left eye, scraping his eyelid and the inside of his eye with the nozzle of the mace bottle.

37. Defendant Sergeant Lowell Rector arrived on scene and authorized the further unlawful detention and a false charge to be filed against Mr. Phillips.

38. Officers Blair, Byrne, Cazan, Groves, and McClain had no reasonable suspicion to detain Mr. Phillips.

39. Within minutes of Mr. Phillips being handcuffed, Officers Blair, Byrne, Cazan, Groves, and McClain knew one of the actual suspects had been arrested, and the other suspects were attempting to escape the burgled building through an opening in the building's roof, yet they continued to detain Mr. Phillips.

40. Sergeant Rector along with Officers Blair, Byrne, Cazan, Groves, and McClain detained and held Mr. Phillips in custody in the police cruiser for over an hour while they conspired to

falsely charge Mr. Phillips to cover up for the illegal seizure and excessive force used against Mr. Phillips.

41. The false charge Sergeant Rector, Officers Blair, Byrne, Cazan, Groves, and McClain created was Obstructing Official Business. They based the charge on false allegations that Mr. Phillips refused to exit his vehicle, refused to be patted down for weapons, and wrestled with officers, thus delaying Officer Blair in the performance of her duties.

42. Prior to his arrest, Mr. Phillips took no action to prevent the police from carrying out their duties. Mr. Phillips answered Officer Blair's questions and provided his identification before he was told to exit his truck. He started to exit his truck before the officers grabbed him and took him to the ground.

43. Mr. Phillips complied with the officers' demands when he was physically able to do so. Mr. Phillips did not wrestle with the officers, as he was physically incapable of doing so.

44. Mr. Phillips' right arm required surgery to repair a torn tendon, and he suffered injuries to his eye, vision, head, knees, and right shoulder as a result of the assault and excessive force used on him by Officers Blair, Byrne, Cazan, Groves, and McClain.

45. Mr. Phillips was unable to work for a period of time while he recovered from his injuries sustained as a result of this incident.

46. Mr. Phillips hired a criminal defense attorney to defend him against the false charge, two trials and one appeal.

47. The Columbus City Prosecutor offered to dismiss the criminal charge of Obstructing Official Business if Mr. Phillips would agree not to pursue a civil case against the police officers in this matter.

48. Mr. Phillips declined the Columbus City Prosecutor's offer and defended the false charge at trial.

49. After false testimony was provided by Officers Blair, Byrne, and Groves, Mr. Phillips' Rule 29 Motion for Acquittal was denied and he was found guilty at his first trial. Mr. Phillips appealed his conviction. The conviction was overturned by the Tenth District Court of Appeals.

50. Officers Blair, Byrne, and Groves again provided false testimony in Mr. Phillips' second trial; and as a result of the officers' false testimony, Mr. Phillips' Rule 29 Motion for Acquittal was denied. The jury found Mr. Phillips not guilty.

51. To overcome Rule 29 Motions for Acquittal and attempt to obtain a conviction, Officers Blair, Byrne, and Groves provided false testimony as to Mr. Phillips' truck being identified as the exact truck used to burglarize the building, the location of Mr. Phillips truck in relation to the dispatched location, the dispatched description of the suspects, the timing of the officers arrival on scene and what they witnessed, and Mr. Phillips' actions as he stepped out of his truck and was being handcuffed.

52. Defendants Blair, Byrne, Cazan, Groves, and McClain acted without probable cause, and intentionally, knowingly, unreasonably, maliciously, and recklessly violated Mr. Phillips' rights when they detained, arrested, and used force upon him on September 15, 2014.

53. Defendants Blair, Byrne, Cazan, Groves, and McClain did not have any legal authority to detain Mr. Phillips beyond the time they learned Mr. Phillips was not a suspect in the alleged burglary. The Defendants knew that Mr. Phillips was not involved in the burglary prior to their demanding he get out of his truck.

54. Defendants Blair, Byrne, Cazan Groves and McClain used excessive force against Mr. Phillips. Officer Blair twisted and pulled Mr. Phillips' right arm. Officer McClain grabbed and

pushed him out of his truck. Officer Cazan grabbed and swept Mr. Phillips' feet from underneath him. Officer Groves twisted and pulled Mr. Phillips' left arm. Officers Blair, Cazan, Groves and McClain held all of Mr. Phillips' limbs causing him to fall face forward on the ground and injure his right arm and face. Officer Byrne grabbed and pulled on his leg after he was already on the ground and restrained by three other officers. Officers Blair, Cazan and McClain after Mr. Phillips was handcuffed, continued pushing the right side of Mr. Phillips' head into the ground, while Officer Groves deploying mace directly in Mr. Phillips' eye. At the time Officers Blair, Byrne, Cazan, Groves, and McClain, used excessive force against Mr. Phillips he was complying with the officers' orders, was not resisting arrest and was not attempting to flee.

55. Defendants Blair and Rector made the decision to knowingly falsely charge Mr. Phillips with the crime of Obstructing Official Business. Officer Blair swore out a Complaint and filed the false charge with the Franklin County Municipal Court.

56. Defendant Blair and Rector knew there was no probable cause to prosecute Mr. Phillips. They only chose to prosecute him to cover up the unlawful stop, detention, arrest, and assault and battery against Mr. Phillips.

57. Defendant City of Columbus' practices, customs, and usages regarding use of force, illegal stops and seizures, the failure to ensure the presence of probable cause before making arrests and instituting prosecutions based on false charges to cover up officer misconduct, were a moving force behind the arrest of Mr. Phillips by the Defendant Officers. This is evidenced in part by the City's offer to dismiss the criminal case against Mr. Phillips if he agreed to forego pursuing a civil case in the matter.

58.     The City of Columbus' lack of training and supervision requiring probable cause to detain and to arrest, forbidding excessive force, and permitting malicious prosecutions also served as a moving force for the injuries suffered by Mr. Phillips.

59.     The training and supervision provided by the City of Columbus to the Defendant Officers was deliberately indifferent to the safety of citizens, including citizens such as Plaintiff, at risk of arrest without probable cause, unlawful detention, excessive force, and malicious prosecution.

60.     Upon information and belief, the City of Columbus has not conducted a meaningful investigation and/or disciplined any of the Defendant Officers for arresting Plaintiff without probable cause, using excessive force, illegally stopping and seizing Plaintiff, or maliciously prosecuting the Plaintiff, even after learning of their conflicting, false testimony and unlawful actions during Mr. Phillips' two trials.

61.     Defendant Kim Jacobs, as the Chief of Police, is the final policy maker for the City of Columbus with regard to training, supervision, making policy, disciplining officers, and for decisions not to discipline officers.

62.     Defendant City of Columbus ratified the arrest without probable cause, excessive use of force, unlawful detention, and malicious prosecution by Defendant Officers by not conducting a meaningful investigation into the incidents surrounding the unlawful seizure, arrest, assault and battery against Mr. Phillips, and the missing cruiser video system evidence in Mr. Phillips' arrest. If the City of Columbus had conducted a meaningful investigation, it would have found false, conflicting testimony by its officers between Mr. Phillips' two trials.

63.     At all times relevant to this action Defendants acted negligently, recklessly, and maliciously to the rights, health and safety of Mr. Phillips.

## V.    FIRST CAUSE OF ACTION – 42 U.S.C. § 1983

64.    Officers Blair, Byrne, Cazan, Groves, and McClain have, under color of law, deprived Dale Phillips of clearly established rights, privileges and immunities secured by the Fourth Amendment to the United States Constitution of which a reasonable person would have known. These rights include, but are not limited to, the right to be free of seizure and arrest without probable cause, free of unreasonable searches and seizures, and free of the use of excessive force. The City of Columbus ratified the unconstitutional behavior of the individual Defendants.

65.    Sergeant Rector did, under color law, deprive Dale Phillips of clearly established rights, privileges and immunities secured by the Fourth Amendment to the United States Constitution of which a reasonable person would have known. These rights include, but are not limited to, the right to due process of law and the right to be free of seizure and arrest without probable cause.

## VI.    SECOND CAUSE OF ACTION –MALICIOUS PROSECUTION

66.    Plaintiff restates each and every allegation in Paragraphs One through Sixty-five (65) of the Complaint as if fully rewritten herein.

67.    Defendants Blair and Rector only instituted and the City of Columbus only continued the criminal prosecution to cover up the officers' own misconduct, and because Dale Phillips would not accept the City Prosecutor's offer to dismiss the criminal prosecution in exchange for Mr. Phillips not filing a civil lawsuit.

68.    Officer Blair and the City of Columbus purposely prevented the recording of, suppressed and/or destroyed video evidence of her encounter with Mr. Phillips from her police cruiser's video system.

69.    No probable cause existed to prosecute Dale Phillips for allegedly obstructing Officers Blair, Byrne, Cazan, Groves, and McClain's investigation into the alleged burglary.

Case: 2:16-cv-00880-ALM-CMV Doc #: 1 Filed: 09/13/16 Page: 14 of 15 PAGEID #: 14

70. Officer Blair and Sergeant Rector, in causing criminal charge to be filed against Dale Phillips, acted under color of state law and in deliberate, willful, wanton and/or reckless disregard of Mr. Phillips' rights.

71. Officer Blair and Sergeant Rector, in causing the criminal charge to be filed against Dale Phillips, maliciously prosecuted Mr. Phillips in violation of his rights protected by the Fourth Amendment to the United States Constitution, 42 U.S.C.§1983, and Ohio law.

## VII. THIRD CAUSE OF ACTION – FIRST AMENDEMENT RETALIATION

72. Dale Phillips, at the time of his seizure and arrest, had the First Amendment right to question and criticize Officer Blair regarding his seizure and detention.

73. Officer Blair in violation of Dale Phillips' First Amendment rights continued Mr. Phillips' unlawful detention because he questioned why he was stopped and detained by Officer Blair.

74. Officer Blair became angry that Mr. Phillips questioned why he was being detained. Had Mr. Phillips not exercised his First Amendment right to question his seizure and detention he would not have had adverse action taken against him, specifically being pulled out of a truck and placed under arrest for a false charge.

## VIII. JURY DEMAND

75. Plaintiff hereby demands a jury trial of all issues triable by a jury.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands that this Court award him:

A. Compensatory damages in an amount to be shown at trial.

14

B. Punitive Damages against the individual Defendants only (not the City of Columbus) in an amount to be shown at trial;

C. Reasonable attorney fees;

D. Prejudgment interest; and

E. Such other and further relief as the Court may deem just and proper.

                                       Respectfully Submitted,

                                       s/ Jennifer L. Branch

Jennifer L. Branch (0038893)
Trial Attorney for the Plaintiff
Alphonse A. Gerhardstein (0032053)
Janaya Trotter Bratton (0084123)
Attorneys for Plaintiff
Gerhardstein & Branch, Co. L.P.A.
441 Vine Street, Suite 3400
Cincinnati, OH  45202
Phone:  (513) 621-9100
Fax:  (513) 345-5543.
jbranch@gbfirm.com
agerhardstein@gbfirm.com
jtbratton@gbfirm.com