# Columbus, Ohio Division of Police



## Arrest, Search, & Seizure Manual
### 07/15/2012

GB001906



| Columbus Division of Police | |
|---|---|
| Arrest, Search, and Seizure Manual | SECTION I |
| Arrest Chapter Summary | |



## I. Information

A. Fourth Amendment to the United States Constitution

Ratified on December 15, 1791

*"The right of the people to be secure in their person, houses, papers and effects against unreasonable search and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."*

B. Fourteenth Amendment to the United States Constitution

Ratified on July 9, 1868

*"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the States wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any persons of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."* (emphasis added)

C. The term seizure includes the arrest of a person. The laws and court decisions concerning the arrest and seizure of persons are all based upon the Fourth Amendment to the United States Constitution. The United States Supreme Court has used the Due Process Clause found in the Fourteenth Amendment to apply the provisions of the Fourth Amendment to local law enforcement officers.

## II. When is a Person Under Arrest?

A. Traditionally, courts in Ohio have used a four part test to determine when an arrest has occurred.

1. Intent

   Did the officer intend to arrest the person? Specific or actual intent is not required. The courts will look at the conduct of the officer to determine if intent was present. This element is closely related to the element of Custody.

2. Authority

   Did the officer have authority under the Ohio Revised Code (ORC) to effect the arrest?

3. Custody
   a. Was the person free to leave? Custody can be actual or constructive. Actual custody includes some physical force, manual touching, or physical restraint. Constructive custody exists when the person submits to verbal orders of the officer and submits to that control without physical contact.
   b. An officer's behavior will determine if the court views the incident as a detention or an arrest.
      (1) How many officers were present?
      (2) What did those officers say to the person?
      (3) Was the person touched?
      (4) Was the person handcuffed?
      (5) Was the person placed in the rear of the police car?
      (6) Where did the detention occur?
4. Understanding

   Given all of the circumstances, would a reasonable person have understood that they were not free to leave?

B. It is important for officers to be able to define the moment that an arrest takes place.
  1. Officers must establish reasonable suspicion to stop and detain a person in an Investigative Detention.
  2. Officers must establish probable cause to effect an arrest.
  3. A lawful arrest will trigger a search incident to that arrest. See Section II, Searches Incident to Arrest
  4. The crime of resisting arrest cannot occur unless a lawful arrest has taken place or been attempted.
  5. A *Miranda* warning is required when asking a person who is arrested questions other than those needed to complete the front of the U-10.100.

## III. Arrest Authority

A. 2935.04 – When any person may arrest
  1. Any person (citizen's arrest) may arrest
    a. Without a warrant,
    b. a person whom he sees commit a felony or has reasonable cause to believe has committed a felony, and
    c. may detain that person until a warrant can be obtained.
B. 2935.03 – Arrest and detention until warrant can be obtained
  1. A police officer shall arrest and detain until a warrant can be obtained a person found violating a state law or municipal ordinance within the officer's jurisdiction. (This is commonly referred to as an on-view arrest)

| Columbus Division of Police | |
|---|---|
| Arrest, Search, and Seizure Manual | SECTION IV |
| Investigative Detentions Chapter Summary | |



## I. Investigative Detention
A. The concept of investigative detention allows officers to stop and briefly detain suspects in a reasonable manner when the officer can establish reasonable suspicion to believe that criminal activity is afoot. The officer must articulate specific facts and circumstances that when viewed in light of the officer's training and experience would lead that officer to believe that criminal activity was afoot.
B. The goal of investigative detention is to gather additional facts and circumstances that would establish probable cause.

   "...[T]he police should be allowed to 'stop' a person and detain him briefly for questioning upon suspicion that he may be connected with criminal activity. Upon suspicion that the person may be armed, the police should have the power to 'frisk' him for weapons. If the 'stop' and the 'frisk' give rise to probable cause to believe that the suspect has committed a crime, then the police should be empowered to make a formal 'arrest'." *Terry v. Ohio*, 392 U.S. 1 (1968)

## II. Establishing Reasonable Suspicion
A. The determination of reasonable suspicion does not rest solely on an officer's personal observations. An officer may use information supplied by another individual to establish reasonable suspicion. *Adams v. Williams*, 407 U.S. 143 (1972)
B. An officer may use information contained in a "Wanted" Poster from another jurisdiction to establish the reasonable suspicion necessary for a valid Investigative Detention. *United States v. Hensley*, 469 U.S. 221 (1985)
C. Reasonable Suspicion is a less demanding standard than probable cause. Reasonable suspicion can be established using information that is different in quality and quantity than that required to establish probable cause. An officer may use information from an anonymous tip if the officer can corroborate the information so that when viewing the information under the totality of the circumstances the information shows sufficient indicators of reliability. *Alabama v. White*, 496 U.S. 325 (1990)
D. The following factors alone do not meet the "reasonable suspicion based on objective facts" test. *Brown v. Texas*, 443 U.S. 47 (1979)
  1. The defendant was walking in an area which had a "high incidence for drug traffic,"

   2. The defendant "looked suspicious," and
   3. The defendant had not been previously seen in the area by the officers.
E. A suspect's presence in a "high crime area" is not sufficient by itself to justify an Investigative Detention. *State v. Carter*, 69 OS (3d) (1994)
F. Officers must corroborate "tips" through independent police work. That corroboration must include some indication that the suspect is presently involved in criminal activity. The totality of the circumstances of this case, including the radio dispatch, Walker's choice to run away from the police officers with his hands in his shorts, and occurrence in a high crime area, do not provide a reasonable, articulable suspicion that Walker had engaged in criminal activity sufficient to justify an investigative stop. *State v. Walker*, 199 WL 63992 (Ohio App 10 Dist.) (1999)
G. An officer must establish reasonable, articulable suspicion that criminal activity is afoot in order to conduct a brief investigative stop. An individual's unprovoked flight, in a high crime area, when noticing police can give an officer reasonable suspicion to stop and investigate further. Flight in and of itself is NOT a crime. If an individual merely sees the police and runs, it is not resisting arrest, obstructing official business or failure to comply. Officers must articulate in the U-10.100 reasons for the stop. *Illinois v. William AKA Sam Wardlow*, 528 US 119 (2000)
H. An anonymous tip that a person is carrying a gun, without more information, is not sufficient to justify a police officer's stop and frisk of that person. Officers must establish reasonable suspicion that a person is armed and poses a threat to them before conducting the frisk. The anonymous tip alone will not establish the necessary reasonable suspicion. Officers must articulate their observations that would indicate the validity of the anonymous tip. *Florida v. J.L.*, 529 US 266 (2000)
I. The Supreme Court of Ohio held that a telephone tip can, by itself, create reasonable suspicion justifying an investigative stop in a DUI case where the tip has sufficient indicia of reliability. As you compare this case to *Florida v. J.L.*, it is important to note that the caller left a name, cellular phone number, and home phone number so that the responding officers could further verify the information. In *Florida v. J.L.* the information that J.L. was carrying a gun was very limited with no way to gather further details from the caller. In cases similar to J.L. the officers must gather further information before making the stop. *City of Maumee v. Weisner*, 87 Ohio St.3d 295 (1999)
J. The Supreme Court of Ohio has held that a partially corroborated anonymous telephone tip, taken in conjunction with a suspect's presence in an area known for drug dealing, and the apparent warnings to others nearby of police approach, which led to flight, supported an investigative stop of the suspect. *State v. Jordan*, 104 Ohio St.3d 21 (2004)

### III. What Constitutes a Seizure?
A. If a person has not been seized then no Fourth Amendment protection applies. An officer is not required to establish reasonable suspicion or probable cause for voluntary contacts.
B. A person is seized only when in view of all of the circumstances surrounding the incident, reasonable persons would believe that they are not free to leave. The Court listed examples of circumstances that might indicate seizure even when the person did not attempt to leave the area:
   1. The threatening presence of several officers, or
   2. The display of a weapon by an officer, or
   3. Some physical touching of the person, or
   4. The use of language or tone of voice indicating that compliance with the officer's request might be compelled. *United States v. Mendenhall*, 446 U.S. 544 (1980)
C. No seizure exists when the police are simply chasing a suspect. A seizure will not occur until two things happen:
   1. The suspect stops in response to the chase or to police orders, and
   2. A reasonable person in the suspect's position would believe that the suspect is not free to leave once the suspect stopped. *California v. Hodari D.*, 111 S.Ct. 1547 (1991)

### IV. Length of the Detention
A. If an officer holds a suspect in an investigative detention for an unreasonable period of time, the detention may be viewed by a court as an arrest. If the officer has not established probable cause, the arrest will be considered unlawful and any evidence gathered as a result of the arrest will be inadmissible.
B. The investigative detention must be no longer than necessary to fulfill its purpose and no more intrusive than needed to verify or dispel the officer's suspicions.
C. There is no rigid time limit for the length of an investigative detention. The following factors should be considered:
   1. The purpose of the stop
   2. The reasonableness of the time used for the investigation that the officers wish to conduct, and
   3. The reasonableness of the means of investigation. *United States v. Sharpe*, 470 U.S. 675 (1985)

### V. Ordering the Driver Out of the Vehicle

A. An officer may order the driver of a vehicle, who is not under arrest, out of the vehicle while the officer issues a traffic citation. *Pennsylvania v. Mimms,* 434 U.S. 106 (1977)

Note: The decision in Mimms does not grant authority to frisk the driver. Officers must use the *Terry* decision to determine if a frisk is warranted.

B. Officers may order drivers of vehicles involved in traffic accidents to exit their vehicles during the accident investigation even though no decision has been made to cite either driver for a traffic offense. *State v. Darrington* 54 OS(2d) 321 (1978)

### VI. Ordering the Passenger(s) Out of the Vehicle

A. "...an officer making a traffic stop may order passengers to get out of the car pending the completion of the stop." *Maryland v. Wilson,* 1117 S.Ct. 882 (1997)

B. When an officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment. The same is true of a passenger. A passenger is seized as well. An officer can thus order the driver and passengers to stay in the car during the duration of the stop. *Brendlin v. California,* 551 U.S. 249 (2007)

### VII. The Frisk

A. When an officer can articulate reasonable suspicion that criminal activity is afoot, the officer can stop and briefly detain the suspect to further investigate. The officer must satisfy the second prong of the test found in *Terry* in order to initiate a Frisk.

B. When an officer can articulate a reasonable belief that a suspect is armed and poses a threat to the officer, the officer is permitted to conduct a limited pat down of the suspect's outer clothing for weapons. *Terry v. Ohio,* 392 U.S. 1 (1968)

C. An officer must reasonably believe an object is a weapon before removing and examining that object during a *Terry* pat down. *State v. Evans,* 67 OS(3d) 405 (1993)

E. "...the right to frisk is virtually automatic when individuals are suspected of committing a crime like drug trafficking, for which they are likely to be armed." *State v. Evans,* 67 OS(3d) 405 (1993)

F. "...the driver of a motor vehicle may be subjected to a brief pat down search for weapons where the detaining officer has a lawful reason to detain said driver in the patrol car." *State v. Evans,* 67 OS(3d) 405 (1993)

G. During a routine traffic stop, it is unreasonable for an officer to search the driver for weapons before placing him in a cruiser, if the sole reason for placing the driver in the cruiser during the investigation is for the convenience of the officer. During a routine traffic stop, it is reasonable for

an officer to search the driver for weapons before placing the driver in a cruiser, if placing the driver in the cruiser during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the cruiser is the least intrusive means to avoid the dangerous condition. A hostile crowd threatening the officer or driver has been recognized as an example of such a dangerous condition. Failure to produce a driver's license during a traffic stop is a lawful reason for detaining a driver in a cruiser, and consequently, officers may search such a detainee for weapons before placing the driver in the cruiser. *State v. Lozada,* 92 Ohio St. 3d 74 (2001)

H. An order by an officer for a suspect to remove an article of clothing or remove items from that clothing constitutes a "search" beyond the scope of the "pat down" permitted by the *Terry* Decision. *State v. Smith,* 116 Ohio App.3d 842 (1996)

I. An officer cannot pat down a suspect simply because the officer is putting the suspect into a cruiser in order to issue a citation. The officer must have a lawful reason to detain the offender in the rear of the cruiser. The Franklin County Court of Appeals has held that officers have no reason to detain a suspect in the rear of a cruiser when that offender has committed a minor misdemeanor in a non-traffic stop setting. This includes minor misdemeanor pedestrian violations. *State v. Richardson,* Unreported Case No. 98AP-1500 (Franklin Co. Court of Appeals, December 7, 1999)

| Columbus Division of Police |
|---|
| Arrest, Search, and Seizure Manual — SECTION IV |
| Investigative Detentions<br>U-10.100 Preparation |



### I. Investigative Detentions - U-10.100 Preparation

A. Officers should address the following issues when preparing a U-10.100 as a result of an arrest that began with an investigative detention:
  1. List all facts and circumstances used to establish reasonable suspicion for the stop:
     a. Articulate all information received from the radio dispatcher or the citizen.
     b. Identify the provider of the information if possible.
     c. Describe how that person knows the information provided to the police.
     d. Describe your observations upon arrival.
     e. Describe how your observations and the information received constitute "criminal activity".
     f. Describe in detail how the suspect's actions relate to criminal activity.
  2. What was the length of the detention?
  3. How many officers were present?
  4. Was the suspect touched or handcuffed?
  5. Was language used that might indicate that the suspect was under arrest?
  6. List all the facts and circumstances used to establish reasonable suspicion that the suspect was armed and posed a threat to the officer.
  7. List the reason(s) why you believed the object discovered during the frisk was a weapon.
  8. Detail additional facts and circumstances that were discovered during the investigative detention that led you to conclude that probable cause existed for the arrest.

Revised 12/15/01   GB001976   Page 1 of 1