## COLUMBUS DIVISION OF POLICE....ROUTING SHEET FOR CORRESPONDENCE

SUBJECT: December 2015 EARS Committee Referral, re: Officer Adam Groves #2651, 19B14

ORIGINATOR: Commander Michael Gray #5021    ASSIGNMENT Special Victims Bureau    DATE: 2/24/2016

---

FORWARD TO: Deputy Chief Kenneth Kuebler #5008    ASSIGNMENT Patrol North
REMARKS: FOR FOLLOW-UP/ACTION PLAN. DUE 3.11.16

☐ Cont'd on back
SIGNATURE: _DC Kuebler_    DATE REC'D    FORWARDED 2-24-16

---

FORWARD TO: Cmdr Hyland    ASSIGNMENT
REMARKS: FORWARDED TO SGT. SAART. LT. BARNES NOTIFIED VIA EMAIL.
NOTE DUE DATE 3/11-16.    ☐ Cont'd on back
SIGNATURE: _WMRHyland_    DATE REC'D 2/26/16    FORWARDED 2/26/16

---

FORWARD TO: SGT. SAART    ASSIGNMENT S-19-B
REMARKS: SEE ATTACHED

☐ Cont'd on back
SIGNATURE: _____ S321    DATE REC'D 3/2/16    FORWARDED 3/14/16

---

FORWARD TO: LT BARNES    ASSIGNMENT L3B
REMARKS: UNAVAILABLE

☐ Cont'd on back
SIGNATURE: _____    DATE REC'D    FORWARDED

---

FORWARD TO: CMDR SCOTT HYLAND    ASSIGNMENT C-3
REMARKS: SEE ATTACHED COMMENTS DATED 3/19/16

☐ Cont'd on back
SIGNATURE: _WMRHyland_    DATE REC'D 3/15/16    FORWARDED 3/21/16

---

FORWARD TO: DC KUEBLER    ASSIGNMENT PATROL SOUTH
REMARKS: CONCUR WITH CMDR HYLAND. POSITIVE INTERVIEW
BY C.O.C ALLEGED ADDRESSED. CONCERNS SUCCESSFULLY    ☑ Cont'd on back
SIGNATURE: _DC Kuebler_    DATE REC'D    FORWARDED 3-22-16

---

FINAL DISPOSITION: PRESENTED/GIVEN TO CMDR HYLAND AND GREY
3-23-16, JG

ORIGINATING PERSON ADVISED BY: _____
NAME    NOTIFIED VIA    DATE

---

☐ CD/DVD (#    ) ATTACHMENTS    A-10 (02/09)

△ π EXHIBIT 32
Deponent Groves
Date 9-26-17 Rptr. WS
WWW.DEPOBOOK.COM

GB001594

## Cmdr. Hyland Comments 03/19/2016

I have reviewed the EARS package on Officers Groves forwarded to the COC on February 24th, 2016. The EARS Committee flagged Officer Groves for additional COC review due to two investigations involving sustained profanity violations *("theme of two sustained profanity allegations and concerns about lack of communication skills when dealing with the public")*. The time period involved in this EARS review was April 1st, 2014 through March 31st, 2015. The involved incidents occurred July 22nd, 2014 and August 17th, 2014.

Officer Groves was also flagged for COC review by the EARS Committee at the beginning of 2015. The concern noted at that time was for use of boiler plate language in arrest reports. That COC review resulted in Officer Groves attending a specialized force documentation class. The two investigations included in the current EARS package were originally reviewed by the COC in late 2014. The two sustained complaints in close proximity to each other resulted in immediate attention being given to the matter by the COC. Closer supervision and mentoring was immediately employed by Sgt. James Sheehan to proactively address these concerns. In March 2015, Sgt. Saari became Officer Groves new immediate supervisor and Sgt. Saari inherited the follow-up on the EARS Review issued early in 2015. This transition resulted in multiple discussions and meetings involving both sergeants, Lt. Barnes, and me to ensure Officer Groves professional development remained a high priority that did not get lost in the immediate supervisor transition.

During these dialogues, the COC determined concerns related to Officer Groves' professional interaction with the public would be best addressed by his attendance to the 16 hour course "Surviving Verbal Conflict" in addition to the personal mentoring he was receiving by his COC. Officer Groves attended this course in December 2015 and as noted by Sgt. Saari, conveyed it had a positive developmental impact on him. Sgt. Saari also notes that Officer Groves has only received one similar complaint and this occurred in April 2015 (prior to attending both trainings), during the early intervention stages on the issue of professional public interaction. And I concur with Sgt. Saari's assessment that while that complaint did result in a DCC being issued, that I have pointed recollection of having the sense that Officer Groves had demonstrated personal and professional growth in his ability to deal with an extremely difficult citizen. I recall in that instance, the severity of the conduct was minimal and the decision to issue a DCC was influenced more by the knowledge of past employment history rather than the severity of the offense.

In summary, Officer Groves' COC proactively intervened on issues raised by the EARS Committee long before the EARS Review was generated. Essentially, an improvement plan was put in action already and appears to have promoted the personal/professional growth we were seeking. I concur that no additional action is required at this time other than the continued monitoring and mentoring by Officer Groves COC.

$SRH$

# DIVISION OF POLICE

Intra-Divisional

January 7, 2016

**TO:**   Deputy Chief Kenneth Kuebler #5008
Patrol South Subdivision

**FROM:**   Commander Michael Gray #5021
EARS Committee Chairperson

**SUBJECT:**   Employee Action Review System – Semi-Annual Review

On December 7, 2015, the EARS Committee convened to review incidents from April 1, 2014 through March 31, 2015. Incidents reviewed included:

☒ **Citizen Complaints**

☐ **Uses of Mace**

☐ **Uses of Force**

**Involved Personnel: Officer Adam Groves #2651, 19B14**

Based on the review, the EARS Committee has determined that a pattern of conduct may exist in one or more of the following areas:

☐ Allegation(s)
☐ Behavior
☒ Verbal or nonverbal communication
☐ Tactics
☐ Use of Force level(s) compared with suspect's resistance/aggression
☐ Injuries sustained by citizens

☐ Race, size, gender, ethnicity, socio-economic status, and other generally objective means of describing subjects/complainants.
☐ Reaction to words, actions, or circumstances
☐ Personality conflict

☒ Other: Committee noted a theme of two sustained profanity allegations and concerns about lack of communication skills when dealing with the public.

This letter is being forwarded to advise you of the Committee's concerns. It is the Chain of Command's responsibility to review the investigation that gave rise to this notice and to determine a proper course of action. Per **Directive 3.03 the assigned supervisor must complete a Sworn EARS Plan, Form J-10.110S, and submit it to the Deputy Chief for approval *within 14 days.***

GB001596

Page 2

The following investigations were reviewed:

- 201407-0112
- 201408-0040
- 201410-0023

The Committee noted a pattern with regard to listed areas of concern. The Committee has determined this warrants review by Officer Groves' chain of command.

Respectfully Submitted,

Commander Michael Gray #5021
EARS Committee Chairperson

MG

GB001597

# SWORN EARS PLAN

Employee P.O. Adam Groves                    Badge/IBM# 2651    Assignment 19B14

## Synopsis of Each Incident Reviewed by the EARS Committee: (Attach additional pages if necessary)

Incident # 201407-0112    Synopsis: Used profanity in the presence of Ms. Jill Mathias-Bowles. Failed to give badge number. Received a D.C.C. for violation of Rule of Conduct 1.15(A)(1) and 1.45. Incident date: 7/22/2014

Incident # 201408-0040    Synopsis: Used profanity in the presence of prisoner in the rear of PTV 198. Received a D.C.C. for violation of Rule of Conduct 1.15. Incident date: 8/17/2014

Incident # 201410-0023    Synopsis: Policy Issue-Failed to wear Division issue hat while conducting a traffic stop. Received aNon-Documented Constructive COunseling 1.03 (A). Incident date: 10/20/2014.

Incident #                    Synopsis:

## Analysis of the Review: (Include any additional information reviewed)

See attached additional page.

## Recommendations for Action: (Training, EAP/Counseling, Tactics, Judgement, Working Conditions, etc.)

See attached additional page.

J-10.110S
August 2006

GB001598

**Planned Follow-Up :**

See attached additional page.

**Other Division Issues:**

N/A

Prepared by: _____    2/14/16
           Sergeant                                            Date

Reviewed by: _____
           Lieutenant                                      Date

Reviewed by: _____
           Commander                                  Date

Approved by: _____
           Deputy Chief                               Date

Reviewed With: _____
           Employee                                     Date

Distribution:
Copy to Involved Officer
Original to Personnel Unit

J-10.110S
August 2006

GB001599

# Employees Action Review System Action Plan

## Officer: Adam Groves #2651, 19B14

### Synopsis of Each Incidents Reviewed by the EARS Committee

### Incident Number: 201407-0112

**Synopsis:** A complaint was filed against Officer Groves containing two allegations. Allegation I claimed Officer Groves used profanity in the presence of the complainant. Allegation II claimed Officer Groves failed to give his badge number when requested.

On July 22, 2014, at approximately 8:15 p.m., Officer Adam Groves and Officer Oliver George were working PTV 198 and responded to 3381 Scales Drive in search of two runaway juvenile girls. Officer Groves and Officer George were contacted by Detective Ronald Grocki of the Special Victims Unit, who requested that the officers respond to 3831 Scales Drive because it was suspected that the two runaway girls may have been at the address.

Officer Groves and Officer George arrived and made contact with Ms. Jill Mathais-Bowles, who was in the front yard doing yard work. Officer Groves and Officer George attempted to ascertain if the runaway girls were at 3831 Scales Drive. During the conversation with Ms. Mathais-Bowles, Ms. Mathias claimed that Officer Groves and Officer George were rude by using profanity toward her. Ms. Matias-Bowles further claimed that when Officer Groves and Officer George were leaving, she asked for their badge numbers, which they refused to provide.

During his I.A.B. interview, Officer Groves admitted he said to Officer George, in the presence of Ms. Mathais-Bowles, "Fuck it. We're done. Let's go." Officer Groves also admitted he was aware that Ms. Mathias-Bowles wanted his badge number, and he did not provide it.

As a result of the I.A.B. investigation, the chain of command determined allegation I to be "Sustained" and allegation II to be "Sustained." Officer Groves received two D.D.C.'s for violations of Rules of Conduct.

### Incident Number: 201408-0040

**Synopsis:** A complaint was filed against Officer Groves claiming he used profanity in the presence of a prisoner in the rear of PTV 198 which was recorded on the CVS.

Employees Action Review System Action Plan
Officer Adam Groves #2651, 19B14
Page 2 of 4

On August 17, 2014, Officer Adam Groves and Officer Oliver George were working PTV 198 and conducted a traffic stop in front of 485 South Warren Avenue. The vehicle stopped was driven by Mr. Brad Cherry.

During the traffic stop, it was discovered that Mr. Cherry did not have a valid driver's license. Mr. Cherry was taken into custody and placed in the rear of PTV 198. Mr. Cherry alleged while he was seated in the rear of PTV 198, Officer George used profanity about a passenger in Mr. Cherry's vehicle.

During his I.A.B. interview, Officer Groves admitted he was the officer that used profanity about the passenger while seated in the passenger seat of PTV 198, not Officer George. Officer Groves can be heard on CVS stating, "She's getting on my fucking nerves."

As a result of the I.A.B. investigation, the chain of command determined the allegation to be "Sustained" and Officer Groves was issued a D.C.C.

## Incident Number: 201410-0023

**Synopsis:** During the course of the I.A.B. Investigation, I.A.B. found Officer Groves did not wear his Division issued hat during a traffic stop. Officer Groves was issued a Non-Documented Constructive Counseling for a violation of Rule of Conduct 1.03 (A).

## Analysis of the Review:

In both complaints involving foul language, it appears Officer Groves was using profanity in the presence of complaints, not directly toward the complaints. While this behavior is not acceptable, I find Officer Groves was not directly insulting anyone but did not use restraint in expressing his frustration while dealing with difficult individuals. Officer Groves admitted his errors in using profanity in front of citizens and took full responsibility for his actions.

I have been Officer Groves' immediate supervisor since 3/1/2015. Before I assumed the position of S19B, the previous supervisor, Sergeant James Sheehan, had prepared an EARS Action Plan for Officer Groves for a previous EARS review. The recommended and approved follow-up plan consisted of Officer Groves attending U.10.100 writing and verbal conflict training. The chain of command determined that Officer Groves could benefit from additional training in these areas. I was tasked with identifying available training for 2015.

I scheduled Officer Groves for two courses available through Advanced Training: Use of Force and Documentation (7/21/2015-7/23/2015) and Surviving Verbal

GB001601

Employees Action Review System Action Plan
Officer Adam Groves #2651, 19B14
Page 3 of 4

Conflict (12/16/15-12/17/15). Officer Groves completed both courses. Since completing the courses, I have observed a marked improvement in Officers Groves' ability to document his actions on arrest reports; the improvement has been impressive. Additionally, Officer Groves has stated the course was excellent, and his confidence in documenting his actions has risen dramatically.

After attending the Surviving Verbal Conflict course, Officer Groves expressed to me that it was one of the better courses he has attended. Again, I have seen a marked improvement in Officer Groves' ability to defuse situations dealing with difficult individuals. In the last year as Officer Groves' supervisor, Officer Groves has been involved in only one citizen complaint involving an allegation of rude and discourteous behavior (201504-1013). Even though Officer Groves received a D.C.C. for a violation of Rule of Conduct 1.15(A)(1), Officer Groves demonstrated personal and professional growth in his interaction with an extremely difficult individual.

## Recommendations for Action:

After my review of the incidents in 2014 and my observations of Officer Groves' performance in the past year, I believe Officer Groves has shown a true desire to improve his ability to communicate effectively. Officer Groves has incorporated the additional training he received into his daily duties as a police officer. Additionally, he has expressed he will continue his professional development. I have observed nothing but improvement in his written and verbal communication skills. Officer Groves is an excellent, proactive police officer working an extremely busy and violate precinct. Based on his work performance and his improvement in the identified areas, I recommend no further action at this time.

## Planned Follow-up:

I will continue to mentor Officer Groves through his professional development.

Employees Action Review System Action Plan
Officer Adam Groves #2651, 19B14
Page 4 of 4

Prepared By: _____ _____ _____
                        Sergeant        Date

Reviewed By: _____ _____ _____
                        Lieutenant      Date

Reviewed By: _____ _____ _____
                        Commander       Date

Approved By: _____ _____ _____
                        Deputy Chief    Date

Reviewed With: _____ _____ _____
                        Officer         Date

Distribution:
Copy to Involved Officer
Original and all copies to Personnel Unit

GB001603

# Public Agency Training Council

National Criminal Justice

## CERTIFICATE OF ATTENDANCE

### Adam Groves

Has completed 20 hours in

## Use of Force and Documentation

Columbus, OH

7/21/2015 through 7/23/2015

*Instructor*

Jon Blum

South Carolina 047
Indiana 35-1639066



"Dedicated to Setting Training Standards"



James R. Alsup
*Director*

GB001604

# Employee Training Report

Report Date
Thursday, March 10, 2016

| OFFICER | ADAM | GROVES | | 2651 | 2010096 | 19 PRECINCT B CO - 19B9 |

| Date | Time | Class Name | Location | Instructor | Course # | Score | Certificate |
|---|---|---|---|---|---|---|---|
| 2/23/2016 | | 2016 DTU Basic Skills, Taser Review & U... | Academy | | | | |
| 12/17/2015 | | 2015 Rescue Ropes Refresher | Roll Call | | 486 | | |
| 12/17/2015 | | Surviving Verbal Conflict | Academy | Outside Training | 220 | | |
| 12/9/2015 | | Managing Canine Encounters | Roll Call | | 464 | | |
| 11/27/2015 | | CIT Recruiting Video | Roll Call | | 483 | | |
| 11/27/2015 | | FBI NCIC Missing Person File | Roll Call | | 482 | | |
| 11/25/2015 | | Counter Terrorism Unit | Roll Call | Electronic Roll Call | 479 | | |
| 11/18/2015 | | 2015 Panasonic Arbitrator Classification | Roll Call | Electronic Roll Call | 473 | | |
| 10/24/2015 | | Premier One Check In-Check out Process | Roll Call | Electronic Roll Call | 466 | | |
| 10/20/2015 | | 2015 CIVIL DISORDER TRAINING | Academy | | 427 | | |
| 10/14/2015 | | PTV Doors - 2015 | Roll Call | Electronic Roll Call | 467 | | |
| 10/9/2015 | | 2015 October Police Legal Update | Roll Call | Electronic Roll Call | 465 | | |
| 10/8/2015 | | 2015 Special Duty Cruiser Rentals | Roll Call | Electronic Roll Call | 464 | | |
| 10/8/2015 | | 2015 Domestic Incident Worksheet | Roll Call | Electronic Roll Call | | | |
| 9/30/2015 | | FOX MK-9 Pistol Grip Fogger Familiarization | Roll Call | Electronic Roll Call | 439 | | |
| 9/30/2015 | | 2015 Tourniquet Training Video | Roll Call | | 438 | | |
| 9/30/2015 | | 2015 September MDA (DD, PSOP,ATE's) | Roll Call | | | | |
| 9/12/2015 | | 2015 RC Netcare Community Crisis Resp | Roll Call | | 431 | | |

Page 1 of 6

GB001605

Discipline Number: 2015-1644

Printed
3/9/2016 5:58 PM

Page 1 of 3

## Discipline Review

Discipline Review ——

| | | | |
|---|---|---|---|
| Discipline Number: | 2015-1644 | IAB Number: | 201407-0112 |
| CAD Number: | | Discipline Entry Date: | 3/10/2015 |
| | | | |
| Employee Type: | Sworn | Employee Race: | White |
| Employee Name: | IAB1234 - Purge, IAB | Employee Sex: | M - Male |
| Employee Rank: | Officer | Employee Date of Birth: | |
| Employee Badge: | | Employee Age: | 27 |
| Employee Assignment: | 19B9 | Employee PIN Number: | |
| Employee Shift: | 2nd | Employee Date of Appointment: | 12/6/2010 |
| Employee Zone/Bureau: | Zone 3 | Employee Duty Status: | On Duty |
| Employee Precinct/Section: | 19 Pct. | | |

### Division Supervisor Review

| Division Supervisor Name | Review Date | Supervisor Recommendation | Supervisor Comment |
|---|---|---|---|
| 1995013 - CHURCH, BILLY J | 10/9/2014 | Documented Constructive Counseling | |
| 1989056 - BARNES, JIMMIE D | 2/19/2015 | Documented Constructive Counseling | |
| 1999042 - SHEEHAN, JAMES W | 2/27/2015 | Documented Constructive Counseling | |
| 1988009 - HYLAND, SCOTT R | 3/3/2015 | Documented Constructive Counseling | |
| 1994084 - KUEBLER, KENNETH J | 3/5/2015 | Documented Constructive Counseling | |

### Discipline Entry ——

| | |
|---|---|
| Reported Charge: | Documented Constructive Counseling |
| Specification Number: | |
| Incident Date: | 7/22/2014 |
| Purge Date: | 7/22/2015 |
| Traffic Crash Report Number: | |
| Citation Number: | |
| Complaint: | Used profanity in the presence of Ms. Jill Mathias-Bowles |
| Rule of Conduct Number: | 1.15 - General Requirements |
| Rule of Conduct Number Section: | 1.15A1 - Division personnel shall be civil, orderly and courteous in conduct and demeanor |

GB001606

Discipline Number: 2015-1644

Policy Number:
Policy Number Section:
Directive Number:
Directive Number Section:
City Work Rule Number:
City Work Rule Number Section:
State Code Charged:
City Code Charged:
Miscellaneous:
Chief Hearing Recommendation:
Chief Hearing Recommendation Notes:
Directors Hearing Finding:
Director Hearing Finding Notes:
Abeyance Notes:
Arbitration Letter Received Date:
Arbitration Decision:
Arbitration Notes:
Suspension:
Days Held in Abeyance:

Leave Forfeited

| Leave Forfeited | Hours Forfeited |
| --- | --- |

Last Chance Agreement:
Last Chance Agreement Notes:
Name of Supervisor Serving Discipline: 1999042 - SHEEHAN, JAMES W
Date Discipline Served: 2/27/2015
Is this Progressive Discipline: N - No
Final Discipline Received: Documented Constructive Counseling

Discipline Entry ————————————————————————————

Reported Charge: Documented Constructive Counseling
Specification Number:
Incident Date: 7/22/2014
Purge Date: 7/22/2015
Traffic Crash Report Number:
Citation Number:
Complaint:: Failed to give your badge number when requested
Rule of Conduct Number: 1.45 - Requirement to Give Name and Badge Number

Discipline Number: 2015-1844

Printed
3/9/2016 5:58 PM

Page 3 of 3

Rule of Conduct Number Section:
Policy Number:
Policy Number Section:
Directive Number:
Directive Number Section:
City Work Rule Number:
City Work Rule Number Section:
State Code Charged:
City Code Charged:
Miscellaneous:
Chief Hearing Recommendation:
Chief Hearing Recommendation Notes:
Directors Hearing Finding:
Director Hearing Finding Notes:
Abeyance Notes:
Arbitration Letter Received Date:
Arbitration Decision:
Arbitration Notes:
Suspension:
Days Held in Abeyance:

Leave Forfeited

| Leave Forfeited | Hours Forfeited |
|---|---|

Last Chance Agreement:
Last Chance Agreement Notes:
Name of Supervisor Serving Discipline:   **1999042 - SHEEHAN, JAMES W**
Date Discipline Served:   **2/27/2015**
Is this Progressive Discipline:   **N - No**
Final Discipline Received:   **Documented Constructive Counseling**

Discipline Number: 2015-1575

Printed
3/9/2016 5:58 PM

Page 1 of 2

## Discipline Review

Discipline Review ——————————————————————————————————————————

| Discipline Number: | 2015-1575 | IAB Number: | 201408-0040 |
|---|---|---|---|
| CAD Number: | 140700077 | Discipline Entry Date: | 1/29/2015 |

| Employee Type: | Sworn | Employee Race: | White |
|---|---|---|---|
| Employee Name: | IAB1234 - Purge, IAB | Employee Sex: | M - Male |
| Employee Rank: | Officer | Employee Date of Birth: | |
| Employee Badge: | | Employee Age: | 27 |
| Employee Assignment: | 19B9 | Employee PIN Number: | |
| Employee Shift: | 2nd | Employee Date of Appointment: | 12/6/2010 |
| Employee Zone/Bureau: | Zone 3 | | |
| Employee Precinct/Section: | 19 | Employee Duty Status: | On Duty |

Division Supervisor Review

| Division Supervisor Name | Review Date | Supervisor Recommendation | Supervisor Comments |
|---|---|---|---|
| 1999042 - SHEEHAN, JAMES W | 11/18/2014 | Documented Constructive Counseling | No prior violations on this Rule of Conduct. |
| 1989056 - BARNES, JIMMIE D | 11/19/2014 | Documented Constructive Counseling | Concur |
| 1988009 - HYLAND, SCOTT R | 12/1/2014 | Documented Constructive Counseling | Concur |
| 1994084 - KUEBLER, KENNETH J | 12/3/2014 | Documented Constructive Counseling | Concur |

Discipline Entry ——————————————————————————————————————————

| | |
|---|---|
| Reported Charge: | Documented Constructive Counseling |
| Specification Number: | 1 |
| Incident Date: | 8/17/2014 |
| Purge Date: | 9/17/2015 |
| Traffic Crash Report Number: | |
| Citation Number: | |
| Complaint:: | Used profanity in the presence of prisoner in the rear of PTV 198 (incident recorded on the CVS). |
| Rule of Conduct Number: | 1.15 - General Requirements |
| Rule of Conduct Number Section: | 1.15A1 - Division personnel shall be civil, orderly and courteous in conduct and demeanor |
| Policy Number: | |

GB001609

Discipline Number: 2015-1575

Policy Number Section:
Directive Number:
Directive Number Section:
City Work Rule Number:
City Work Rule Number Section:
State Code Charged:
City Code Charged:
Miscellaneous:
Chief Hearing Recommendation:
Chief Hearing Recommendation Notes:
Directors Hearing Finding:
Director Hearing Finding Notes:
Abeyance Notes:
Arbitration Letter Received Date:
Arbitration Decision:
Arbitration Notes:
Suspension:
Days Held in Abeyance:

Leave Forfeited

| Leave Forfeited | Hours Forfeited |
|---|---|

Last Chance Agreement:   N - No
Last Chance Agreement Notes:
Name of Supervisor Serving Discipline:   1999042 - SHEEHAN, JAMES W
Date Discipline Served:   12/12/2014
Is this Progressive Discipline:   N - No
Final Discipline Received:   Documented Constructive Counseling

GB001610

# COLUMBUS DIVISION OF POLICE....ROUTING SHEET FOR CORRESPONDENCE

SUBJECT: Findings and Recommendations for I.A.B. Database #201407-0112

RE: Officers Adam Groves #2651, 19B9, and Oliver George #2647, 19B5

ORIGINATOR: Sergeant Billy Church #5197    ASSIGNMENT IAB    DATE: 10/9/2014

---

FORWARD TO: Sergeant James W. Sheehan, #5229    ASSIGNMENT S-19-B

REMARKS: I concur with Sergeant Church that allegation I, and II against officer Groves be Sustained, and that allegation I against

Officer George is Unfounded. I have searched the disciplinary tracking system in regards to Officer Groves in violation of Rule of    ☒ Cont'd on back

SIGNATURE: _Sgt. Church #5229_    DATE REC'D 10/20/2/14    FORWARDED 10/22/14

---

FORWARD TO: Lieutenant Jimmie D. Barnes, #5068    ASSIGNMENT L-3-B

REMARKS: _I concur with the findings and recommendations of both Sergeants_

_and I recommend that allegations I and II against officer_    ☒ Cont'd on back

SIGNATURE: _Lt. J. Barnes #5068_    DATE REC'D 10/22/14    FORWARDED 10/22/14

---

FORWARD TO: Commander Scott Hyland #5029    ASSIGNMENT Cmdr.3

REMARKS: _I concur w/ findings as outlined by Sgt. Sheehan; PO Groves_

_#1 and #2 sustained and DCC for each. PO George #1) unfounded_ ☐ Cont'd on back

SIGNATURE: _S. Hyland 5029_    DATE REC'D 10/23/14    FORWARDED 10/27/14

---

FORWARD TO: _DC Koebler_    ASSIGNMENT _Patrol South_

REMARKS: _Concur. Issue DCS and refer_

☐ Cont'd on back

SIGNATURE: _DC Koebler_    DATE REC'D _____    FORWARDED 10-30-14

---

FORWARD TO: _IAB_    ASSIGNMENT _____

REMARKS: _Please issue Discipline and Return to IAB_

☐ Cont'd on back

SIGNATURE: _Cmdr. _____ #5026_    DATE REC'D 2/12/15    FORWARDED 2/12/15

---

FORWARD TO: _____    ASSIGNMENT _____

REMARKS: _____

☐ Cont'd on back

SIGNATURE: _____    DATE REC'D _____    FORWARDED _____

---

FINAL DISPOSITION: _____

ORIGINATING PERSON ADVISED BY: _____

NAME    NOTIFIED VIA    DATE

---

☐ CD/DVD (#    )ATTACHMENTS

A-10 (02/09)

Conduct 1.15 A1 which states " A Division Personnel shall : 1. Be civil, orderly, and courteous in their conduct and demeanor. Allegation 1 use of profanity was found that documented constructive counseling was the appropriate form of discipline. Allegation II fail to provide badge number in violation of Rule of Conduct 1.15A which states in part, Division Personnel shall give their name and badge/team/item number to any person upon request. Documented constructive counseling was the appropriate form of discipline. I recommend officer Graves receives two DCC's with no further action.

Sgt. _____ #5729
5-19-15

Barnes —

Graves be classified as sustained. I also recommend that allegation I against officer Graves be classified as unfounded. Officer Graves should be issued a documented constructive counseling for each sustained allegation. Violation of Rule of Conduct 1.15A1 as it relates to Allegation I and violation of Rule of Conduct 1.15A as it relates to Allegation II. I recommend no further action.

Lt. _____ #5068

GB001612

## Division of Police

### Intra-Divisional

### October 9, 2014

**TO:**  Deputy Chief Ken Kuebler #5008
Patrol South Subdivision

**FROM:**  Commander Jennifer Knight #5026
Internal Affairs Bureau

**SUBJECT:**  I.A.B. Database #201407-0112

---

Attached is the Investigation of I.A.B. #201407-0112, which was conducted by Sergeant Billy Church #5197 in the Internal Affairs Bureau.  Sergeant Church has made the following recommendations regarding this Investigation.  Please evaluate and classify each specific allegation and recommendation listed below:

<u>Officer Adam Groves #2651, 19B9</u>

**Allegation I:**

Officer Adam Groves used profanity in the presence of Ms. Jill Mathias-Bowles.

      **Investigator Recommendation:**    Sustained
      **Policy/Procedure Followed:**    N/A
      **Rule Violated:**    Rule of Conduct 1.15A1
      **Deputy Chief's determination:**    SUSTAINED
      **Corrective Action:**    DCC

**Allegation II:**

Officer Adam Groves failed to provide his badge number to Ms. Jill Mathias-Bowles when requested.

      **Investigator Recommendation:**    Sustained
      **Policy/Procedure Followed:**    Rule of Conduct 1.45A
      **Rule Violated:**    N/A
      **Deputy Chief's determination:**    SUSTAINED
      **Corrective Action:**    DCC

GB001613

IAB Database #201407-0112
Cover Letter
Page 2

## Officer Oliver George #2647, 19B5

**Allegation I:**                    Officer Oliver George used profanity in
                                     the presence of Ms. Jill Mathias-Bowles.

      **Investigator Recommendation:**     Unfounded
      **Policy/Procedure Followed:**       N/A
      **Rule Violated:**                   N/A
      **Deputy Chief's determination:**    UNFOUNDED
      **Corrective Action:**

**Deputy Chief's Signature:** _D/C KUEBLER_        **Date:** 10/30/14

When completed, return the investigation and your findings to this Bureau.

Respectfully submitted,

Commander Jennifer Knight #5026
Internal Affairs Bureau

JLK/bc

GB001614

# Division of Police

## Intra-Divisional

## October 9, 2014

TO:      Commander Jennifer Knight #5026
            Internal Affairs Bureau

FROM:    Sergeant Billy Church #5197
            Internal Affairs Bureau

SUBJECT:  Investigative Summary
             **Ref: I.A.B. Database #201407-0112**

---

Investigator: **Sergeant Billy Church #5197**

## Circumstances of Incident

On July 22, 2014, at approximately 8:15 PM, Officer Adam Groves and Officer Oliver George were working PTV 198 and responded to 3831 Scales Drive in search of two runaway juvenile girls. Officer Groves and Officer George were contacted by Detective Ronald Grocki of the Special Victims Unit, who requested that the officers respond to 3831 Scales Drive because it was suspected that the two runaway girls may have been at that address.

Officer Groves and Officer George arrived and made contact with Ms. Jill Mathias-Bowles, who was in the front yard doing yard work. Officer Groves and Officer George attempted to ascertain if the runaway girls were at 3831 Scales Drive. During their conversation with Ms. Mathias-Bowles, Ms. Mathias-Bowles claims that Officer Groves and Officer George were rude by using profanity toward her. Ms. Mathias-Bowles further claims that when Officer Groves and Officer George were leaving she asked for their badge numbers, which they refused to provide.

## Allegation I

**Officer Adam Groves used profanity in the presence of Ms. Jill Mathias-Bowles.**

## Allegation I

**Officer Oliver George used profanity in the presence of Ms. Jill Mathias-Bowles.**

Investigative Summary
I.A.B. Database #201407-0112
PAGE 2

## Allegation II

### Officer Adam Groves failed to provide his badge number to Ms. Jill Mathias-Bowles when requested.

### Response to Allegation I and II

**In-take interview:** Ms. Jill Mathias-Bowles called the Internal Affairs bureau on July 22, 2014, to file a complaint on two officers who were working a PTV. Sergeant Jerry Ehrsam spoke to Ms. Mathias-Bowles about the incident.

Ms. Mathias-Bowles stated she was outside of her residence, 3831 Scales Drive, when two officers in a "paddy wagon" pulled up in front of her house. Ms. Mathias-Bowles stated that one of the officers asked her for her address. Ms. Mathias-Bowles stated she told the officers her address. Ms. Mathias-Bowles stated that the two officers got out of their van and approached her. Ms. Mathias-Bowles stated that the passenger officer, later identified as Officer George, told her that they were there looking for two missing runaway girls. Ms. Mathias-Bowles stated she told the officers that there were no girls in her house, and she agreed to let the officers search her house. Ms. Mathias-Bowles stated the driver officer, later identified as Officer Groves, started talking and called her a "smart ass bitch". Ms. Mathias-Bowles stated she told the officers that they can't talk to her like that. Ms. Mathias-Bowles stated she further said that she told the officers that she didn't have a problem with them before, but that now she does. Ms. Mathias-Bowles stated she told the officers that they couldn't disrespect her like that. Ms. Mathias-Bowles stated the officers continued to cuss at her by calling her a "bitch" and "dumb bitch". Ms. Mathias-Bowles stated Officer Groves said "Fuck this shit. I don't need this bullshit". Ms. Mathias-Bowles stated Officer Groves then turned around and walked back to the PTV. Ms. Mathias-Bowles stated she asked Officer George for Officer Groves' badge number. Ms. Mathias-Bowles stated Officer George told her to "shut the fuck up", and then he walked off. Ms. Mathias-Bowles stated the officers got into the PTV and drove away.

**Ms. Jill Mathias-Bowles, complainant,** was interviewed in person by this investigator on October 8, 2014, at her residence, 3831 Scales Drive. Ms. Mathias-Bowles did not wish to have her in-person interview recorded.

I reviewed Ms. Mathias-Bowles' in-take interview with her. Ms. Mathias-Bowles stated that her initial in-take interview was accurate and correct. Ms. Mathias-Bowles stated that Officer George, who was the passenger, didn't really say anything to her, which contradicted her original statement of Officer George. Ms. Mathias-Bowles stated that the officers got to approximately twenty feet from her door and decided to not search

GB001616

Investigative Summary
I.A.B. Database #201407-0112
PAGE 3

the house. Ms. Mathias-Bowles stated it was at that point when Officer Groves said "Fuck this shit. I don't need this bullshit".

The only additional information that Ms. Mathias-Bowles provided was that one of the missing girls, who Officer Groves and Officer George were looking for, is now living with her. Ms. Mathias-Bowles stated that the girl's parents have been abusing her and she is now permitted to live with her.

Ms. Mathias-Bowles did not provide any further information, so the interview was concluded.

**Officer Adam Groves, focus officer,** was interviewed in person by Sergeant Billy Church. Officer Groves stated to this investigator in his Internal Affairs interview, that he and Officer George were working together in PTV 198 on the day of this incident.

Officer Groves stated Detective Grocki notified the radio room and requested that a marked police unit respond to 3831 Scales Drive to locate two missing teenage girls. Officer Groves stated the girls were possibly at this address. Officer Groves stated that he was unaware that other officers had also tried to find these two girls at the same address numerous times prior to their attempt. Officer Groves stated he and Officer George were the ones sent out this time to locate the missing girls. Officer Groves stated they pulled up in front of the house, and observed a female, Ms. Mathias-Bowles, in the yard. Officer Groves stated he asked Ms. Mathias-Bowles if her address was 3831 Scales Drive. Officer Groves stated he got out of the PTV and started to walk up the driveway.

Officer Groves stated that, before he and Officer George made their way up the driveway, Ms. Mathias-Bowles began yelling at them and cussing at them. Officer Groves stated Officer George tried to calm Ms. Mathias-Bowles by trying to tell her why they were there. Officer Groves stated that Ms. Mathias-Bowles was yelling about the missing girls' families and how they were trying to get her in trouble. Officer Groves stated they again tried to calm down Ms. Mathias-Bowles, but she wasn't listening to them and kept yelling about them being there. Officer Groves stated Ms. Mathias-Bowles just kept cussing at them and told them to get off her property and that she didn't want them there. Officer Groves stated he knew he wasn't going to get anywhere with Ms. Mathias-Bowles. Officer Groves stated that he turned to Officer George and said, "Fuck it. We're done. Let's go". Officer Groves stated he and Officer George walked back to the PTV.

Officer Groves stated he got in the driver's seat of the PTV. Officer Groves stated he did not hear Ms. Mathias-Bowles ask for his badge number. Officer Groves stated that when Officer George got into the passenger seat of the PTV, Officer George mentioned to him that Ms. Mathias-Bowles asked for his badge number. Officer Groves stated he

Investigative Summary
I.A.B. Database #201407-0112
PAGE 4

thought that if he went back to speak to Ms. Mathias-Bowles the situation would have escalated, so he decided to just drive away, ignoring the request for his badge number.

Officer Groves stated neither he, nor Officer George used profanity toward Ms. Mathias-Bowles. Officer Groves stated the one time he used profanity he was directing his comment to Officer George and it was not directed at Ms. Mathias-Bowles.

Officer Groves did not have anything further to add, so the interview was concluded.

**Officer Oliver George, focus officer,** was interviewed in person by Sergeant Billy Church. Officer George stated to this investigator in his Internal Affairs interview, that he and Officer Groves were working together in PTV 198 on the day of this incident.

Officer George stated that Detective Grockl contacted the radio room and requested a marked unit to respond to 3831 Scales Drive to locate two missing teenage girls. Officer George stated the missing girls were possibly at this address. Officer George stated he and Officer Groves were the officers dispatched to find the missing girls.

Officer George stated he and Officer Groves pulled up in front of the residence of Ms. Mathias-Bowles. Officer George stated Ms. Mathias-Bowles was outside in her yard. Officer George stated Ms. Mathias-Bowles, upon seeing them, was immediately irritated and uttered words to the effect, "Oh no. It's you guys again". Officer George stated he was the first one to make contact with Ms. Mathias-Bowles. Officer George stated he tried to explain why they were there. Officer George stated Ms. Mathias-Bowles told him that she already knew why they were there and she is getting tired of the police coming to her house looking for the two missing girls. Officer George stated he told Ms. Mathias-Bowles that he was not aware of any other times that officers had been there. Officer George stated that he advised Ms. Mathias-Bowles that a detective sent them out there and asked to search her house so that they could tell the detective that the missing girls were not there, and then they would move on.

Officer George stated Ms. Mathias-Bowles did not listen to him and started yelling about them being there and on her property. Officer George stated that Ms. Mathias-Bowles initially agreed to let them search the house, but then rescinded the offer almost immediately. Officer George stated he never got the opportunity to search the house. Officer George stated that Ms. Mathias-Bowles told them to leave her property. Officer George stated he did not know if the girls were actually there because he and Officer Groves never made it any further than the driveway.

Officer George stated that he never heard Officer Groves use profanity toward Ms. Mathias-Bowles or ever call her a "bitch", "smart ass bitch", or ever told her to "shut her mother fucking mouth". Officer George stated that nobody was called any names at all. When asked whether Officer Groves stated, "Fuck this shit. I don't need this bullshit",

Investigative Summary
I.A.B. Database #201407-0112
PAGE 5

Officer George stated that Officer Groves didn't say those exact words, but did say something similar. Officer George stated that Officer Groves actually said, "Fuck this. We're done with this". Officer George stated Officer Groves did not utter that statement to Ms. Mathias-Bowles, but just stated it out loud and that it was directed towards him.

Officer George stated that after he asked for consent to search Ms. Mathias-Bowles got irritated, so he never said another word for the rest of the time he was there, and it was Officer Groves who did the talking. Officer George stated he never used any profanity while in the presence of Ms. Mathis-Bowles. Officer George stated the conversation got very heated, so he and Officer Groves decided to leave. Officer George stated, as he was getting in the PTV, Ms. Mathias-Bowles yelled that she wanted Officer Groves' badge number. Officer George stated that he advised Officer Groves that Ms. Mathias-Bowles requested his badge number. Officer George stated Officer Groves said it was getting too heated, he then put the PTV into drive, and left the area.

Officer George did not have anything further to add, so the interview was concluded.

## Investigator's Comments

No additional comments.

## Investigator's Recommendation of Finding

## Allegation I

*Officer Adam Groves used profanity in the presence of Ms. Jill Mathias-Bowles.*

Officer Groves and Officer George stated in their interviews that Ms. Mathias-Bowles became immediately hostile upon their arrival. Unbeknownst to Officer Groves and Officer George, officers had been to Ms. Mathias-Bowles' residence on numerous other occasions, prior to this incident, looking for the same two runaway girls. Ms. Mathias-Bowles was aggravated by the constant visits from the police, looking for the girls. Officer Groves and Officer George stated that Ms. Mathias-Bowles was using profanity while arguing with Officer Groves and Officer George, due to being extremely upset over the situation. Officer Groves admitted in his Internal Affairs interview that he used profanity toward the end of the conversation with Ms. Mathias-Bowles, but the profanity was not directed at her. Officer Groves admitted he uttered to Officer George the phrase, "Fuck this, I don't need this shit". That statement is very similar to what Ms.

GB001619

Investigative Summary
I.A.B. Database #201407-0112
PAGE 6

Mathias-Bowles alleged was said. I find no other evidence to support Ms. Mathias-Bowles' allegations that Officer Groves used more profanity than he admitted to using.

Based on my investigation and Officer Groves' admission, I find Officer Groves to be in violation of Rule of Conduct 1.15A1, which states; *A. Division personnel shall: 1. Be civil, orderly, and courteous in their conduct and demeanor.* I recommend that Allegation I, *Officer Adam Groves used profanity in the presence of Ms. Jill Mathias-Bowles,* be classified as **Sustained.**

## Allegation I

### *Officer Oliver George used profanity in the presence of Ms. Jill Mathias-Bowles.*

During the interviews of Officer Groves and Officer George, both officers stated that Officer George did not use profanity while speaking to, or around Ms. Mathias-Bowles. Both officers stated that Officer George spoke very little to Ms. Mathias-Bowles, but that it was Officer Groves who did most of the talking. Officer Groves admitted to being the officer who used profanity in the presence of Ms. Mathias-Bowles. Since the officers were willing to admit that profanity was used, and that Officer Groves was the officer who used the profanity, I find no reason to believe that either officer would not be truthful regarding what was said and by whom. In Ms. Mathias-Bowles' in-person interview, she contradicted her original stated by saying that Officer George really didn't say much during the incident, and did not mention that Officer George used profanity.

Based on my investigation, I find no reason to believe Officer George used any profanity toward, or around Ms. Mathias-Bowles. I recommend that allegation I, *Officer Oliver George used profanity in the presence of Ms. Jill Mathias-Bowles,* be classified as **Unfounded.**

## Allegation II

### *Officer Adam Groves failed to provide his badge number to Ms. Jill Mathias-Bowles when requested.*

Ms. Mathias-Bowles asked for Officer Groves badge number as he and Officer George were leaving. Officer Groves stated that he didn't hear Ms. Mathias-Bowles ask for his badge number, and I find no reason to believe Officer Groves heard the request. However, Officer George admitted he did hear Ms. Mathias-Bowles' request. Officer George stated in his interview that he advised Officer Groves of the request for his badge number. Officer Groves in his interview admitted that Officer George told him of the request. Officer Groves admitted that he did not provide Ms. Mathias-Bowles with

GB001620

Investigative Summary
I.A.B. Database #201407-0112
PAGE 7

his badge number, even after he was made aware of the request by Officer George.
Even though Officer Groves did not hear the request personally, he was made aware of
the request by his partner, another police officer, that Ms. Mathias-Bowles had asked
for his badge number, therefore he should have satisfied the request.

Based on my investigation and the interviews of Officer Groves and Officer George, I
find Officer Groves was in violation of Rule of Conduct 1.45A, which states in part;
*Division personnel shall give their name and badge/tech/IBM number to any person
upon request.* Based on this finding, I recommend that Allegation II, *Officer Adam
Groves failed to provide his badge number to Ms. Jill Mathias-Bowles when requested,*
be classified as **Sustained.**

Respectfully submitted,

Sergeant Billy Church #5197
Internal Affairs Bureau

# OTHER MATERIALS NOTICE

| IAB Database # | 201408-0040 |
|---|---|

Be advised, the following noted materials are associated with this investigation and are being stored and maintained in accordance with current applicable law, and contractual obligations.

| # | Medium |
|---|---|
| | Audio Cassette Tapes |
| | Digital Audio Tapes |
| | VHS Video Tapes |
| | Digital Video Tapes |
| | Photographs |
| | Floppy Disks |
| 2 | CD Computer Disks |
| | |
| | |

IAB Form 38 (1/05)

GB001622

COLUMBUS DIVISION OF POLICE....ROUTING SHEET FOR CORRESPONDENCE

SUBJECT: Findings and Recommendations for I.A.B. Database #201408-0040

RE: Officers Adam Groves #2651, 19B9, and Oliver George #2647, 19B5

ORIGINATOR: Sergeant Billy Church #5197     ASSIGNMENT IAB     DATE: 10/28/2014

---

FORWARD TO: Sergeant James W. Sheehan, #5229     ASSIGNMENT S-19-B

REMARKS: I concur with Sergeant Church that allegation I against officer Groves be Sustained, and that allegation I against

Officer George is Unfounded. I have searched the disciplinary tracking system in regards to Officer Groves in violation of Rule of     ☒ Cont'd on back

SIGNATURE: _Jas W Sheehan #5229_     DATE REC'D 11/18/2/14     FORWARDED 11/19/14

---

FORWARD TO: Lieutenant Jimmie D. Barnes, #5068     ASSIGNMENT L-3-B

REMARKS: BASED UPON THE INVESTIGATION CONDUCTED BY SERGEANT CHURCH, I CONCUR

WITH THE FINDINGS AND RECOMMENDATIONS OF BOTH SERGEANTS.     ☒ Cont'd on back

SIGNATURE: _Lt. J. Barnes #5068_     DATE REC'D 11/19/14     FORWARDED 11/21/14

---

FORWARD TO: Commander Scott Hyland #5029     ASSIGNMENT Cmdr.3

REMARKS: I CONCUR WITH FINDINGS OF DFB & COC, ALLEGATION #1 ON FO GEORGE SHOULD

BE UNFOUNDED, ALLEGATION #1 ON FO GROVES SHOULD BE DCC AS     ☒ Cont'd on back

SIGNATURE: _S. Hyland 5029_     DATE REC'D 12/1/14     FORWARDED 12/3/14

---

FORWARD TO: DC KOEBLER     ASSIGNMENT PATROL SOUTH

REMARKS: CONCUR, ISSUE DCC AS INDICATES

☐ Cont'd on back

SIGNATURE: _DC Koebler_     DATE REC'D     FORWARDED 12/3/14

---

FORWARD TO: CMDR HYLAND     ASSIGNMENT C-3

REMARKS: ISSUE DCC & RETURN

☐ Cont'd on back

SIGNATURE: _Hyland 5029_     DATE REC'D 12/4/14     FORWARDED 12/5/14

---

FORWARD TO: LT. BARNES     ASSIGNMENT C-3-B

REMARKS: ISSUE DCC AND RETURN

☐ Cont'd on back

SIGNATURE: _Lt J Barnes #5068_     DATE REC'D 12/10/14     FORWARDED 12/10/14

---

FINAL DISPOSITION: DCC #2015-1575

---

ORIGINATING PERSON ADVISED BY:
NAME          NOTIFIED VIA          DATE

---

☐ CD/DVD (#     ) ATTACHMENTS     A-10 (02/09)

GB001623

CONDUCT 1.15 A1. OFFICER GROVES DOES NOT HAVE VIOLATIONS ON THIS RULE OF CONDUCT. VIOLATION OF THIS CONDUCT IS A DOCUMENTED CONSTRUCTIVE COUNSELING (DCC). I RECOMMEND OFFICER GROVES BE ISSUED A D.C.C. WITH NO FURTHER ACTION.

BARNES —

I RECOMMEND THAT ALLEGATION I AGAINST OFFICER GEORGE BE CLASSIFIED AS UNFOUNDED. I RECOMMEND THAT ALLEGATION I AGAINST OFFICER GROVES BE CLASSIFIED AS SUSTAINED. I CONCUR WITH SERGEANT SHEEHAN THAT OFFICER GROVES BE ISSUED A DOCUMENTED CONSTRUCTIVE COUNSELING FOR VIOLATION OF RULE OF CONDUCT 1.15 A1. I FURTHER RECOMMEND THAT SERGEANT SHEEHAN REVIEW DIRECTIVE 3.37 WITH BOTH OFFICERS TO ENSURE THAT THEY HAVE A GOOD UNDERSTANDING OF THE DIRECTIVE. ALTHOUGH OFFICER GROVES WAS WEARING THE BODY MICROPHONE, THE DIRECTIVE REQUIRES THAT THE DRIVER OF A TWO OFFICER CRUISER (EXCEPT FTO CRUISER) IS REQUIRED TO WEAR THE BODY MICROPHONE. OFFICER GEORGE SHOULD HAVE BEEN WEARING THE BODY MICROPHONE AND NOT THE PASSENGER OFFICER, OFFICER GEORGE. I RECOMMEND NO FURTHER ACTION.

LT.

CMDR. HYLAND

OUTLINED. CORRECTIVE COUNSELING - REGARDING WHICH PO SHOULD HAVE WORN BODY MIC IS SUFFICIENT.
SRH-12-2-17

## COLUMBUS DIVISION OF POLICE....ROUTING SHEET FOR CORRESPONDENCE

SUBJECT: Findings for I.A.B. Database #201403 6040 0412

RE: Officers Adam Groves #2851, 1989

| ORIGINATOR: | Sergeant Billy Church #5197 | ASSIGNMENT IAB | DATE: 10/9/2014 |
|---|---|---|---|

FORWARD TO: Sergeant James W. Sheehan, #5229          ASSIGNMENT S-19-B

REMARKS: DCC was issued to Officer Groves. I also counseled Officer Groves on Rule of Conduct 1.15A1, and Division

Directive 3.87

☐ Cont'd on back

SIGNATURE: _Sgt _____ #5229, 5-19-8_          DATE REC'D 12/10/14          FORWARDED 12/12/14

FORWARD TO: Lieutenant Jimmie D. Barnes, #5068          ASSIGNMENT L-3-B

REMARKS: _Documented Constructive Counseling issued and a Review of_

_Rule of Conduct 1.15A1 and Directive 3.87 conducted. No further action_          ☐ Cont'd on back

SIGNATURE: _Lt. _____ #5068_          DATE REC'D 12/16/14          FORWARDED 12/27/14

FORWARD TO: ~~Commander~~ A/DC Scott Hyland #5029          ASSIGNMENT Cmdr.3 / Patrol South

REMARKS: _DLC Issued, to IAB re File._

☐ Cont'd on back

SIGNATURE: _A/DC _____ #5029_ DATE REC'D 12/30/14          FORWARDED 12/30/14

FORWARD TO: _____          ASSIGNMENT _IAB_

REMARKS: _DCC Issued — Entered By #5283 (1/29/15)_

☐ Cont'd on back

SIGNATURE: _____          DATE REC'D _____          FORWARDED _____

FORWARD TO: _____          ASSIGNMENT _____

REMARKS: _____

☐ Cont'd on back

SIGNATURE: _____          DATE REC'D _____          FORWARDED _____

FORWARD TO: _____          ASSIGNMENT _____

REMARKS: _____

☐ Cont'd on back

SIGNATURE: _____          DATE REC'D _____          FORWARDED _____

FINAL DISPOSITION: _____

ORIGINATING PERSON ADVISED BY: _____

NAME          NOTIFIED VIA          DATE

☐ CD/DVD (#     ) ATTACHMENTS

A-10 (02/09)

GB001625

# Division of Police

## Intra-Divisional

### October 29, 2014

**TO:**      Deputy Chief Ken Kuebler #5008
             Patrol South Subdivision

**FROM:**    Commander Jennifer Knight #5026
             Internal Affairs Bureau

**SUBJECT:** I.A.B. Database #201408-0040

Attached is the investigation of I.A.B. #201408-0040, which was conducted by Sergeant Billy Church #5197 in the Internal Affairs Bureau. Sergeant Church has made the following recommendations regarding this investigation. Please evaluate and classify each specific allegation and recommendation listed below:

## Officer Oliver George #2647, 19B5

**Allegation I:**                           Officer Oliver George used profanity
                                            toward Ms. Claudia Craft.

      **Investigator Recommendation:**    Unfounded
      **Policy/Procedure Followed:**       N/A
      **Rule Violated:**                   N/A
      **Deputy Chief's determination:**    _(Unfounded)_
      **Corrective Action:**

## Officer Adam Groves #2651, 19B9

**Allegation I:**                           Officer Adam Groves used profanity in
                                            the presence of Mr. Brad Cherry.

      **Investigator Recommendation:**    Sustained
      **Policy/Procedure Followed:**       N/A
      **Rule Violated:**                   N/A
      **Deputy Chief's determination:**    _(Sustained)_
      **Corrective Action:**               _DCC_

IAB Database #201408-0040
Cover Letter
Page 2

**Deputy Chief's Signature:** _____ Date: 12-3-14

When completed, return the investigation and your findings to this Bureau.

Respectfully submitted,

For Commander Jennifer Knight #5026
Internal Affairs Bureau

JLK/bc

GB001627

# Division of Police

## Intra-Divisional

### October 29, 2014

**TO:** Commander Jennifer Knight #5026
Internal Affairs Bureau

**FROM:** Sergeant Billy Church #5197
Internal Affairs Bureau

**SUBJECT:** Investigative Summary
**Ref: I.A.B. Database #201408-0040**

Investigator: **Sergeant Billy Church #5197**

## Circumstances of Incident

On August 17, 2014, Officer Adam Groves and Officer Oliver George were working PTV 198 and conducted a traffic stop in front of 485 South Warren Avenue. The vehicle stopped was driven by Mr. Brad Cherry. Ms. Claudia Craft was in the front passenger seat and two children were in the back seat.

During the traffic stop, it was discovered that Mr. Cherry did not have a valid driver's license. Mr. Cherry was taken into custody, handcuffed, and placed in the rear of PTV 198. Ms. Craft and her children were asked to get out of the vehicle. Officer George conducted an inventory search of the vehicle while Officer Groves completed the arrest paperwork on Mr. Cherry. During the processing of the traffic stop and inventory search, Ms. Craft alleges that Officer George used profanity toward her. Mr. Cherry alleges that Officer George used profanity about Ms. Craft in his presence, while he was seated in the rear of PTV 198.

## Allegation I

### Officer Oliver George used profanity toward Ms. Claudia Craft.

## Allegation I

### Officer Adam Groves used profanity in the presence of Mr. Brad Cherry.

## Response to Allegation I

**In-Take:** On August 17, 2014, Ms. Claudia Craft called the Internal Affairs Bureau to file a complaint on two officers who stopped her for a traffic violation. Ms. Craft spoke

Investigative Summary
I.A.B. Database #201408-0040
PAGE 2

to Sergeant Tim Myers, Internal Affairs sergeant. Ms. Craft's in-take interview is as follows:

Ms. Craft stated her, her husband, and kids, ages six and eleven were pulled over in front of their house. Ms. Craft stated her husband, Mr. Brad Cherry, was driving at the time. Ms. Craft stated they were pulled over by two officers, later identified as Officer Oliver George and Officer Adam Groves. Ms. Craft stated the officers advised her and Mr. Cherry the reason for the traffic stop, fail to use a turn signal. Ms. Craft stated the officers advised Mr. Cherry that he did not have a valid driver's license. Ms. Craft admitted that she knew Mr. Cherry did not have a valid driver's license, but was too tired to drive and asked Mr. Cherry to drive her. Ms. Craft stated Mr. Cherry was asked to step out of the car and placed in handcuffs. Ms. Craft stated she and her kids were also asked to get out of the car and permitted to go into their house. Ms. Craft stated Mr. Cherry was placed in the rear of a police van, PTV 198.

Ms. Craft stated one of the officers, identified as Officer Oliver George, began to search her car without a reason. Ms. Craft stated she came back out of her house, walked down to her car, and asked Officer George why he was searching her car. Ms. Craft stated Officer George told her, "*You need to get on your fucking porch and mind your own damn business*". Later in her call, Ms. Craft stated that she was told by Officer George to "*Get your ass on your fucking porch and mind your own damn business*". Ms. Craft stated she informed Officer George that there was no reason to search her car and he didn't have a search warrant. Ms. Craft stated Officer George threatened to impound her car. Ms. Craft stated she told Officer George to do his job because there is no reason to tow her car. Ms. Craft claims that Officer George used profanity toward her while her kids were around.

Ms. Craft claims that the reason she was pulled over is that the officers thought she and Mr. Cherry had just come from a drug house which is down the street from her house. Ms. Craft admits that they did drive from the area of the drug house, but they had not been at the drug house. Ms. Craft did not say that the officers accused her of coming from the drug house, but just "knew" the officers' intentions, because she drives a nice car.

As a result of Mr. Cherry being arrested, Mr. Cherry was searched and his property was placed on the trunk of the car. Ms. Craft stated she started to retrieve those items from the trunk and Officer George stopped her. Ms. Craft stated Officer George told her, "*You need to leave that shit there*". Ms. Craft stated she left Mr. Cherry's property on the trunk of the car, and went back into her house.

After Ms. Craft provided Sergeant Myers with her information and account of the incident, she handed the phone to Mr. Cherry. Mr. Cherry provided his information and also added his account of the incident.

GB001629

Investigative Summary
I.A.B. Database #201408-0040
PAGE 3

Mr. Cherry's account of the incident is very similar to that of Ms. Craft's with the following addition:
Mr. Cherry stated he was seated in the rear of PTV 198 and was not able to hear the conversation between Officer George and Ms. Craft. Mr. Cherry stated that when Officer George finished talking to Ms. Craft and conducting the inventory search, Officer George got back in the PTV as well. Mr. Cherry stated that when Officer George got back in the PTV, he said to Officer Groves, *"She's getting on my fucking nerves. She needs to go back in the fucking house"*. Mr. Cherry was very clear about which officer uttered the statement. Mr. Cherry stated to Sergeant Myers that he was driving Ms. Craft's car and also admitted that he does not have a valid driver's license.

Ms. Craft and Mr. Cherry did not have anything further to add, so they concluded their phone conversation with Sergeant Myers.

**Mr. Brad Cherry, complainant,** did not cooperate with this investigation. The initial letter was sent to Mr. Cherry upon being assigned to this investigation. On October 26, 2014, I attempted to call Mr. Cherry, on the only phone number available, but got Ms. Craft's voice message. I left a message requesting Mr. Cherry call me back. I did not hear from Mr. Cherry. I attempted a third call on October 27, 2014. Again I got Ms. Craft's voice message. I left another message, repeating the request to call me back. At the conclusion of this investigation, Mr. Cherry had not attempted to call me back for a formal interview.

**Ms. Claudia Craft, complainant,** did not cooperate with this investigation. The initial letter was sent to Ms. Craft upon being assigned to this investigation. On October 26, 2014, I attempted to call Ms. Craft, on the only phone number available, but got her voice message. I left a message requesting that she call me back. I did not hear from Ms. Craft. I attempted a third call on October 27, 2014. Again I got Ms. Craft's voice message. I left another message, repeating the request to call me back. At the conclusion of this investigation, Ms. Craft had not attempted to call me back for a formal interview.

**Officer Adam Groves, focus officer,** was interviewed in person by Sergeant Billy Church. Officer Groves stated to this investigator in his Internal Affairs interview, that he and Officer George were working together in PTV 198 on the day of the incident. Officer Groves stated he was the passenger in PTV 198.

Officer Groves stated he and Officer George observed a car on a side street being driven by a male, later identified as Mr. Cherry. Officer Groves stated he couldn't recall the name of the side street. Officer Groves stated Mr. Cherry saw him and Officer George and did a double take. Officer Groves stated Officer George decided to get behind Mr. Cherry. Officer Groves stated he observed Mr. Cherry commit a traffic violation, failing to signal before making a turn. Officer Groves stated he and Officer George conducted a traffic stop of Mr. Cherry on Warren Avenue. Officer Groves stated Mr. Cherry pulled to the right side (west side) of Warren Avenue as if to park. Officer

GB001630

Investigative Summary
I.A.B. Database #201408-0040
PAGE 4

Groves stated the traffic stop occurred a few houses north of Mr. Cherry's address, 485 South Warren Avenue.

Officer Groves stated he approached Mr. Cherry's car on the passenger side while Officer George approached on the driver's side. Officer Groves stated that as he got to the passenger window, he could observe a female, later identified as Ms. Craft, in the front passenger seat and two children in the rear seat. Officer Groves stated Ms. Craft attempted to get out, but he advised her to remain in the car for the time being. Officer Groves stated Ms. Craft tried several times to get out of the car, and each time he asked her to stay in the car. Officer Groves stated he primarily spoke to Ms. Craft while Officer George spoke to Mr. Cherry. Officer Groves stated he was concentrating more on his conversation with Ms. Craft and was not listening to the conversation between Officer George and Mr. Cherry. Officer Groves stated he obtained Ms. Craft's information and had her remain in the car.

Officer Groves stated Officer George discovered that Mr. Cherry did not have any identification on him. Officer Groves stated that he and Officer George were suspicious that Mr. Cherry may not have a valid driver's license, so Mr. Cherry was escorted out of his car and walked back to the rear of his car, which was in front of PTV 198 and the Cruiser Video System. Officer Groves stated Mr. Cherry was searched and any property in Mr. Cherry's pockets was placed on the trunk of the car. Officer Groves stated Mr. Cherry was handcuffed, escorted to the back of PTV 198, and placed in the rear prisoner compartment.

Officer Groves stated he sat in the passenger seat of the PTV, conducting the routine warrant and license checks, and Officer George started to conduct a search of the car. Officer Groves stated Officer Jeffrey Cain #2650, 19B15, was working 194 and arrived to assist him. Officer Groves stated Mr. Cherry did not have any warrants, but was discovered to be under suspension for a reinstatement fee. Officer Groves stated Ms. Craft had a valid license and no valid warrants, so she was permitted to get out of the car. Officer Groves stated Officer Cain advised Ms. Craft that she could get out of the car. Officer Groves stated Ms. Craft and her two children got out of the car, walked to 485 South Warren Avenue, and went inside. Officer Groves stated, after Ms. Craft and her children got out of the car, Officer George proceeded to conduct a search of the car. Officer Groves stated Officer Cain walked back to PTV 198 and stood by the passenger side door.

Officer Groves stated that while he was talking with Officer Cain and completing Mr. Cherry's traffic citation and arrest paperwork, he observed Ms. Craft come out of her residence and walk back to her car, while Officer George was in the process of searching it. Officer Groves stated he remained in the PTV, so he wasn't able to hear the conversation between Officer George and Ms. Craft. Officer Groves stated Ms. Craft, at one point attempted to take Mr. Cherry's property, which was still on the trunk of the car. Officer Groves stated Officer George said something to Ms. Craft, and Ms.

GB001631

Investigative Summary
I.A.B. Database #201408-0040
PAGE 5

Craft stopped, leaving Mr. Cherry's property on the trunk of the car. Officer Groves stated he did not hear what Officer George said to Ms. Craft.

Officer Groves stated Officer George finished the search and walked back to the PTV. Officer Groves stated when Officer George got in the driver's seat, he did not hear Officer George utter the statement, "*She's getting on my fucking nerves. She needs to go back in the fucking house*", or any profanity at all.

Officer Groves stated that he initially was going to have the car impounded due to being driven by someone without a valid license, but later changed his mind. Officer Groves stated that because Ms. Craft was the registered owner of the car, had a valid license, and needed the car to transport her children, he decided to cancel the tow truck and release the car back to Ms. Craft. Officer Groves stated Mr. Cherry was issued several traffic tickets and released to go back to his house. Officer Groves stated he and Officer George cleared the traffic stop.

Officer Groves was called back in to the Internal Affairs office on October 27, 2014, for a follow-up interview by Sergeant Church. Officer Groves was advised that I conducted closer examination of the Cruiser Video from the traffic stop. Office Groves was advised that the video indicated that it was he, not Officer George, who uttered a statement similar to what Mr. Cherry claims he heard. I advised Officer Groves that he could be heard saying, "*She's getting on my fucking nerves*". I advised Officer Groves that this information was not known at the time of his first interview. When asked about this new information, Officer Groves stated he was, in fact, the officer who used profanity about Ms. Craft while seated in the passenger seat of PTV 198, not Officer George.

Officer Groves did not have anything further to add, so I concluded the interview.

**Officer Oliver George, focus officer,** was interviewed in person by Sergeant Billy Church. Officer George stated to this investigator in his Internal Affairs Interview, that he and Officer Groves were working together in PTV 198 on the day of the incident. Officer George stated he was the driver of PTV 198.

Officer George's interview is similar to that of Officer Groves' interview concerning the reason for the traffic stop and the initial contact with Mr. Cherry and Ms. Craft. Officer George had the following additions:

Officer George stated he was the one who conducted the search of Ms. Craft's car. Officer George stated that he started conducting the search of Ms. Craft's car and a short time into the search, Ms. Craft came down off her porch, walked to where her car was parked, stayed on the sidewalk, and began to question his actions. Officer George stated Ms. Craft was arguing with him, saying he didn't have a right to search her car, that he was searching it like she had drugs in the car, and that he didn't have a search warrant. Officer George stated he attempted to explain to Ms. Craft that he was doing an inventory search of her car and it was going to be impounded because Mr. Cherry ·

Investigative Summary
I.A.B. Database #201408-0040
PAGE 6

was driving the car without a valid license. Officer George stated Ms. Craft continued to argue with him. Officer George stated he finally told Ms. Craft to get back on her porch, mind her own business, and let him do his job.

Officer George stated Ms. Craft then walked to the back of the car where Mr. Cherry's property was still sitting. Officer George stated he had not had the opportunity to put Mr. Cherry's property in a bag. Officer George stated Ms. Craft told him, *"I'm getting his stuff"*. Officer George stated he told Ms. Craft, *"You're not taking anything of his stuff until we're done"*. Officer George stated he again told Ms. Craft to go back to her porch. Officer George stated Ms. Craft turned and walked back to her porch. Officer George stated he was finally able to complete the inventory search of Ms. Craft's car.

Officer George was asked about the comments Ms. Craft alleged he said to her. Officer George was asked if he uttered the phrase, *"I need you to get back on your fucking porch"*. Officer George stated that he actually said, *"I need you to go back on your porch"*. Officer George was asked if he uttered the phrase, *"You need to mind your own damn business"*. Officer George stated that he told Ms. Craft, *"You need to mind your own business and let me do my job"*. Officer George was asked if he uttered the phrase, *"You need to leave that shit there"*. Officer George stated that what he told Ms. Craft was, *"You're not taking anything of his property until we're done"*. Finally, Officer George was asked about the statement Mr. Cherry alleged he heard once Officer George got back in the PTV. Officer George was asked that when he got back into the PTV, did he utter the phrase to Office Groves, *"She's getting on my fucking nerves"*. Officer George stated he does not recall ever saying that phrase or anything similar.

Officer George did not have anything further to add, so the interview was concluded.

## Investigator's Comments

The Cruiser Video System and body mic were active during this traffic stop. A copy of the video is included with this investigation.

I reviewed the cruiser video of this incident. During the traffic stop, Officer George can be seen conducting the inventory search of Ms. Craft's vehicle. The video shows Officer George talking to Ms. Craft, but the audio is difficult to hear due to the fact that Officer Groves was the one who had the body mic, not Officer George. At no time during the video is Officer George heard using profanity toward Ms. Craft. After reviewing the video, at 6:41:10 PM, Officer Groves can be heard on the video telling Officer Cain, who was standing by the passenger side door of PTV 198, "She's getting on my fucking nerves".

A copy of the arrest paperwork is included in the investigation.

A copy of the Premier One report is included in the investigation.

GB001633

Investigative Summary
I.A.B. Database #201408-0040
PAGE 7

Mr. Cherry and Ms. Craft reside together at 485 South Warren Avenue. The contact number belongs to Ms. Craft. Mr. Cherry did not provide separate phone number for himself, so all attempts to contact Mr. Cherry and Ms. Craft were done through Ms. Craft's number.

Based on the in-take interviews of Ms. Craft, Mr. Cherry, and the Cruiser Video System, the traffic stop appears to be within the law and Division guidelines. The reason for the traffic stop was not made into an allegation.

Ms. Craft, in her in-take call, alleged that Officer George searched her car illegally. Mr. Cherry was driving Ms. Craft's car and Mr. Cherry was found to not have a valid driver's license. Based on that, Officer George and Officer Groves were initially going to impound Ms. Craft's car. As Officer George started the inventory search of Ms. Craft's car, Ms. Craft told Officer George that the car was hers and it was needed for transportation of her children. Officer George and Officer Groves decided not to impound the car, and release it back to Ms. Craft. Officer George did not commit any misconduct by conducting the search, and was within the law and Division guidelines. For those reasons, Ms. Craft's claim of an illegal search was not made into an allegation.

Officer Cain was not interviewed as part of this investigation. The cruiser video indicated that Officer George and Officer Cain were never together when Ms. Craft alleges Officer George used profanity toward her. Officer Cain was, however, standing next to Officer Groves when Officer Groves used profanity. Since Officer Groves admitted to using profanity, there was no need to call Officer Cain in for an interview.

The cruiser video shows Mr. Cherry being handcuffed and taken into custody. From the moment Mr. Cherry is handcuffed, he became angry and using profanity, which was directed at Officer George and Officer Groves. Mr. Cherry could be heard using words like *"fuck", "shit", and "bullshit".*

## Investigator's Recommendation of Finding

## Allegation I

*Officer Oliver George used profanity toward Ms. Claudia Craft.*

Ms. Craft alleges that when she asked Officer George why he was searching her car Officer George used profanity toward her. Ms. Craft further alleges that Officer George used profanity toward her a second time when she attempted to take Mr. Cherry's property off the trunk of the car. The cruiser video shows Ms. Craft going into her house, then coming back out, and talking to Officer George. The conversation between Officer George and Ms. Craft was not completely audible. During the part of the video

GB001634

Investigative Summary
I.A.B. Database #201408-0040
PAGE 8

that could be heard, Officer George never used any profanity. The video also shows Ms. Craft attempting to take Mr. Cherry's property off the trunk of the car. The video shows Officer George saying something to Ms. Craft, and Ms. Craft leaves Mr. Cherry's property on the trunk of the car, and walked back to her house. This part of the video is not audible.

Ms. Craft complicated a routine traffic stop by arguing with Officer George while he was attempting to conduct a lawful inventory search of the car. Ms. Craft, after being told to go back to her porch, continued to argue with Officer George, which kept Officer George from doing his job. Ms. Craft again made an unwise decision to try to take Mr. Cherry's property off the trunk of the car without permission being given to do so by either, an officer or Mr. Cherry. Officer George is not legally permitted to give someone's property to another without permission.

After reviewing the entire video and conducting interviews, I find there is no evidence to support Ms. Craft's allegation that Officer George used profanity toward her. Had Ms. Craft remained in her house or on her porch when initially let out of her car, she would not have had any interaction with Officer George, and there would not be a reason for this allegation. Based on my investigation, I recommend that Allegation I, *Officer Oliver George used profanity toward Ms. Claudia Craft*, be classified as **Unfounded.**

## Allegation I

### *Officer Adam Groves used profanity in the presence of Mr. Brad Cherry.*

In Mr. Cherry's in-take interview, he alleges that it was the driver, Officer George who uttered the phrase, *"She's getting on my fucking nerves"*, talking about Ms. Craft. Mr. Cherry may have been mistaken when he identified the officer who uttered the phrase, but Mr. Cherry was not mistaken when he claimed he heard an officer utter that phrase. Officer George was the officer conducting the inventory search as Officer Groves sat in the passenger seat of PTV 198, completing arrest paperwork. Officer Groves was also the officer who was wearing the body mic. Mr. Cherry was handcuffed and seated in the rear of PTV 198. On the cruiser video, Officer Groves can be heard talking to another officer, Officer Cain, who had just arrived and was standing at the passenger door of PTV 198. At 6:41:10 PM in the cruiser video, Officer Groves can be heard uttering almost the exact phrase Mr. Cherry stated he heard, while Officer George was still outside of the PTV and still conducting the inventory search.

Even though Mr. Cherry accused the wrong officer of using profanity, the evidence is clear that he did hear the profanity because he was able to recall the phrase almost word for word. The video shows that it was actually Officer Groves who used the profanity. Even though Officer Groves uttered profanity while talking to Officer Cain and not to a citizen, there was a citizen, Mr. Cherry, close enough to hear the comment.

GB001635

Investigative Summary
I.A.B. Database #201408-0040
PAGE 9

Based on this evidence, I find that Officer Groves violated Rule of Conduct 1.15A1, which states; *A. Division personnel shall: 1. Be civil, orderly, and courteous in their conduct and demeanor.* Based on my finding I recommend that Allegation I, *Officer Adam Groves used profanity in the presence of Mr. Brad Cherry,* be classified as **Sustained.**

Respectfully submitted,

*Billy Church* #5197

Sergeant Billy Church #5197
Internal Affairs Bureau

GB001636

# Complaint Narrative

| IAB Database Number | 201408-0040 |
|---|---|

| Contractual Target Date | 11/15/2014 |
|---|---|

## Incident:

| | |
|---|---|
| Date of occurrence | 8/17/2014 |
| Time of occurrence | 6:45PM |
| Place of occurrence | 485 S. Warren Avenue |
| Date complaint received | 8/17/2014 |
| Time complaint received | 7:57PM |

| | |
|---|---|
| Complaint received by | Sgt. T. Myers #5167 |
| Entered into database by | Sgt. T. Myers #5167 |
| Narrative completed by | Sgt. T. Myers #5167 |

## Complainant:

| | |
|---|---|
| Name | Claudia Craft/Brad Cherry |
| Address (number/street) | 485 S. Warren Avenue |
| Address (city/state/zip) | Columbus, OH 43204 |
| Mobile phone | (614) 817-7940 |
| Secondary phone | None |

## Involved Personnel:

| Name/Badge Number | Assignment |
|---|---|
| Adam Groves #2651 | 19B9 |
| Oliver George #2647 | 19B5 |

## Summary of Contact with Complainant:

Complainants allege that one of the above listed officers used improper language during a traffic stop. (Audio available).

A-42.102

PatrolView :: Details for Incident #P140700077

Incident #: P140700077    Call Type:  6    Incident Date: 8/17/2014

Location:  483 S WARREN AVE

Apartment:                                Lat/Lon: 39.94502, -83.07107

Name:

Phone:

Address:

1855.: Preempt:CAD AUTOMATIC PREEMPT
1856.: Event P140700077 Dispatch Assigned

Priority:  4        Source:  O        District: 194    Zone:  03        County: FRANKLIN

Call Taker:   2001D89 (WILLIAMS, SHARI)

Rec:  18:37:12 · Disp:            Enr:            Arv:            Clr:   18:56:17

Unit(s):    194B  198B

| Chemical Mace N | | | | | | | Response to Resistance N |

# ARREST INFORMATION
## Columbus, Ohio Division of Police
Under officially declared emergency conditions, fill in bold blocks only.

| 2. NAME Cherry, Brad A | 2. SLATE NUMBER |
|---|---|

| 3. ALIAS | 4. Foreign National? No- (If yes, complete the two items below) Contact Communications Bureau? |
|---|---|
| | 6. |

| 5. ADDRESS 485 S Warren Ave | CSZ Columbus, OH 43204 | | | |

| 7. SEX M - Male | 8. RACE B - Black | 9. HGT. 6' 8" | 10. WT. 340 | 11. HAIR BLK - Black | 12. EYES BRO - Brown | 13. AGE 31 | 14. MARRIED? N - No | 15. Incident # 140700077 |
|---|---|---|---|---|---|---|---|---|

| 16. SOCIAL SECURITY NUMBER | 17. DATE OF BIRTH 9/10/1982 | 18. BIRTHPLACE | 19. ID NUMBER 95206B | 20. PERMIT HOLDER? ESTABLISHMENT NAME N - No |
|---|---|---|---|---|

| 21. PLACE OF EMPLOYMENT AND DURATION | 22. RELIGION None | 23. TELEPHONE NUMBERS HOME (614) 421-8269 WORK |
|---|---|---|

| 24. ARREST DATE 8/17/2014 | 25. ARREST TIME 6:37:00 PM | 26. ARREST LOCATION 485 S Warren Ave . Columbus, OH 43204 | CVS Used Y - Yes |
|---|---|---|---|

| 27. ARRESTING OFFICER SUBPOENA 2010096 - GROVES, ADAM C Y - Yes | 28. BADGE NO. 2651 | 29. AGENCY CPD - Columbus an | 30. ASSIGNMENT 19B9 | 31. E-MAIL agroves@columbus police.org | 32. DAYS OFF W/T | 33. SHIFT 2nd |
|---|---|---|---|---|---|---|
| 34. ARRESTING OFFICER SUBPOENA 2010103 - GEORGE, OLIVER B Y - Yes | 35. BADGE NO. 2647 | 36. AGENCY CPD - Columbus an | 37. ASSIGNMENT 19B5 | 38. E-MAIL ogeorge@columbu spolice.org | 39. DAYS OFF W/T | 40. SHIFT 2nd |

| 41. ACCIDENT INVOLVED? N - No | 42. VEHICLE LICENSE NUMBER & STATE GCG5887 OH | 43. DISPOSITION RTO | 44. YEAR 2001 | 45. MAKE CADI - Cadillac | 46. MODEL DEV - DeVille | 47. STYLE 4D - Sedan, 4 |
|---|---|---|---|---|---|---|

| 48. ARREST IS: N VIEW | 49. ZONE & CRUISER DISTRICT 3 - Zone 3 194 District | 50. CAR SEARCHED? Y - Yes | 51. HELD FOR PRINTS? N - No |
|---|---|---|---|

| 52. CONVEYING OFFICER SUBPOENA | 53. BADGE NO. | 54. AGENCY | 55. ASSIGNMENT | 56. E-MAIL |
|---|---|---|---|---|
| 57. CONVEYING OFFICER SUBPOENA | 58. BADGE NO. | 59. AGENCY | 60. ASSIGNMENT | 61. E-MAIL |

| 62. SLATING OFFICER | 63. SLATE TIME | 64. TELEPHONE CALL | 65. CALL COMPLETED? | 66. TIME COMPLETED | 67. OFFICER |
|---|---|---|---|---|---|

| 68. PROPERTY BIN NO. | 69. CASH RECEIVED $ | 70. BOND | 71. PROPERTY SLIP NO. | 72. |
|---|---|---|---|---|

| 73. RELEASED OR CELL NO. | 74. SICK OR INJURED? N - No | 75. MEDICATION? N - No | 76. CHARGE TYPE Misdemeanor City | 77. |
|---|---|---|---|---|

| 78. VIOLATION CODE | 79. CHARGE DESCRIPTION | 80. CASE NO. | 81. TYPE | 82. CITATION NO. | 83. COURT DATE |
|---|---|---|---|---|---|
| 1 | 2141.12 A1 | 2141.12 A1 - No Ops (Less than 6 months expired = MM ? Greater than 6 months expired, Suspended or Never Had = M1) | | ON VIEW | 1492818 | 08/27/2014 |
| 2 | 2131.14 A | 2131.14 A - Changing Course Without Safety and also Failure to Signal for a Turn | | ON VIEW | 1492818 | 08/27/2014 |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |

| 84. DETAINERS |
|---|
| 1 |

*IF PERSON ARRESTED IS A JUVENILE, COMPLETE THIS SECTION.*

| 85. FATHER'S NAME, ADDRESS, TELEPHONE (OR LEGAL GUARDIAN) |
|---|

| 86. MOTHERS NAME, ADDRESS, TELEPHONE (OR LEGAL GUARDIAN) |
|---|

| 87. JUV. SENT TO UNRULY UNIT? | 88. PARENTS NOTIFIED BY: | 89. DATE | 90. PARENTS TO APPEAR AT: DETECTIVE BUREAU (9 AM) COURT (1 |
|---|---|---|---|

WITNESSES TO BE SUBPOENED AT TIME OF TRIAL .
ST BOTH WORK AND HOME PHONE FOR CIVILIANS. FOR SWORN, USE BADGE NUMBER AND ASSIGNMENT ONLY.

| | 91. NAME | 92. ADDRESS (and e-mail if available) | 93. ZIP | 94. HOME PHONE/BADGE | 95. WORK PHONE/ASSIGNT |
|---|---|---|---|---|---|
| 1. | Cain, J. | 120 Marconi Blvd | Columbus, OH 43215 | 2650 | 19B |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |

| 96. DID YOU WITNESS DRIVING?  YES  NO | 97. IF NOT, WHO OF THE ABOVE WITNESSED IT? | | |
|---|---|---|---|
| 98. DID THE DEFENDANT OR CO-DEFENDANT FURNISH A  YES  RELEVANT WRITTEN OR RECORDED (Audio or video) STATEMENT? NO | | 99. WERE WRITTEN SUMMARIES MADE OF ANY RELEVANT ORAL STATEMENTS BY THE DEFENDANT OR CO-DEFENDANT? | YES  NO |
| 100. DID YOU, OR ANY OTHER OFFICER, OBTAIN ANY PHYSICAL EVIDENCE SUCH AS  YES  PHOTOS, BOOKS, PAPERS, OR TANGIBLE OBJECTS RELATING TO THIS CASE?  NO | | 101. DOES DEFENDANT HAVE A PRIOR CONVICTION RECORD?  YES  NO | |
| 102. WERE ANY PHYSICAL OR MENTAL EXAMINATIONS OR SCIENTIFIC TESTS OR ANY KIND CONDUCTED IN CONNECTION WITH THIS CASE? | | 103. IF YES, SPECIFY  DNA  Blood  Breath  Urine  Other | |

104. STATEMENT OF FACT – IN CHRONOLOGICAL ORDER WRITE WHAT HAPPENED, THE ELEMENTS OF THE OFFENSE(S), WHAT PROBABLE CAUSE EXISTED, AND WHAT EACH WITNESS IN BLOCK 91 CAN TESTIFY TO.
Warrant On File  N∘  No   (If yes, give a brief statement of fact surrounding the incident, including the elements of probable cause.)

On August 17, 2014 at 6:37pm, Officers Groves #2651 and George #2647 working cruiser 198 were patrolling the area of S Warren Ave just north of Sullivant Ave. Officers observed a Dark Blue, 2001, Cadillac Deville with OH Tag GCG6837 travel southbound on S Warren Ave from Wicklow Rd. Officers further observed the vehicle pull off to the right side of the roadway in front of 485 S Warren Ave without using a turn signal. Officers initiated a traffic stop on the vehicle. Officers made contact with the driver, Brad A Cherry (CPD ID# 95206B). Officers stated the reason for the stop and asked for Mr. Cherry's identification. Through LEADS, Mr. Cherry had never had a license. Mr. Cherry was placed under arrest and in the rear of cruiser 198. Mr. Cherry was released with a summons for the reverse listed charges. The vehicle was released to the owner, Claudia Craft (Ohio DL).

Handcuffs gapped and double locked Y - Yes
Signature of Officer Completing Form                B

| 105. JACKET NO. | 106. REC. BOND | 107. PLEA | 108. JUDGE | 109. WEAPON USED?  YES  NO | 110. MAKE | 111. MODEL | 112. SERIAL NO. |
|---|---|---|---|---|---|---|---|
| 113. ON PAROLE?  YES  NO | 114. ON PROBATION?  YES  NO | 115. OFFENSE | | 116. PAROLE OR PROBATION OFFICER AND PHONE NUMBER | | | |

17. RECOVERED PROPERTY

| | 118. INVESTIGATING DETECTIVES | 119. BADGE | 120. ASSIGNMENT / E-MAIL |
|---|---|---|---|
| 1. | | | / @columbuspolice.org |
| 2. | | | / @columbuspolice.org |

121. COURT DISPOSITION/CONTINUANCE



THE CITY OF
# COLUMBUS
MICHAEL B. COLEMAN, MAYOR

## DIVISION OF POLICE

Columbus Division Of Police
120 Marconi Blvd
Columbus, OH 43215

## Preliminary Investigation

Case Report Number: **140700077-001**

Case Report Date: **8/17/2014 6:37:00 PM**

## Case Report

### Administrative

| | | | |
|---|---|---|---|
| Case Number | 140700077 | Verification Level | |
| Case Report Number | 140700077-001 | Latitude | |
| Subject | 720 - Traffic Arrest | Longitude | |
| Disposition | Citation | Jurisdiction | Columbus, OH |
| Entered On | 8/17/2014 8:25:43 PM | Grid | Zone 3 |
| Entered By | GROVES, ADAM C | Sector | 19 Pct |
| Reported On | 8/17/2014 | Map | 194 District |
| Reporting Officer | GROVES, ADAM C | Census/Geo Code | |
| Reporting Agency | CPD - Columbus PD | Call Source | Pick-Up |
| Report Type | | Related Cases | |
| Assisted By | | Means | |
| Occurred On (Date and Time) | Sunday 8/17/2014 6:37:00 PM | Other Means | |
| | | Motives | |
| Or Between (Date and Time) | | Other Motives | |
| | | Vehicle Activity | |
| Location | 485 S Warren Ave | Direction Vehicle Traveling | |
| CSZ | Columbus, OH 43204 | Cross Street | |
| Location Name | | Notified | |

Verification

For Exceptional Clearances

Clearance Basis
Exceptional Clearance Date

Narrative

On the above listed date and time, at the listed location, Arrestee drove without a license. Arrestee was given a summons and released at the scene.

GB001641

Offense

| | | | |
|---|---|---|---|
| Offense | Miscellaneous Incident | Method of Entry For Motor Vehicle Theft | |
| Code Section | | Method of Entry For Burglary/B&E | |
| IBR Code | | Method of Entry For Burglary/B&E | |
| ORC Code | | | |
| IBR Group | | Method of Operation | |
| Crime Against | | Direction of Entry | |
| Location Type | Street | Using | Not Applicable |
| Secondary Location Type | | Weapons | None |
| Completed | Yes | Criminal Activity | |
| Hate/Bias | No Bias/Not Applicable | Type Security | |
| Domestic Violence | No | Tools | |
| Premises Entered | | | |
| Entry | | | |

Offenders

Arrestee Name: Cherry, Brad A

Aliases



Alerts

Addresses

| Address Type | Address | City/Zip | County | Country |
|---|---|---|---|---|
| H – Home | 485 S Warren Ave | Columbus, OH 43204 | | United States of America |

Phones

| Phone Type | Phone Number |
|---|---|
| M – Mobile | (614) 421-8269 |

Emails

| Email Address |
|---|

| | | | | |
|---|---|---|---|---|
| Sex | Male | DOB | 9/10/1982 | |
| Race | Black | Age | 31 | |
| Ethnicity | Not of Hispanic Origin | Eye Color | Brown | |

| | | | |
|---|---|---|---|
| Hair Color | Black | DL Country | |
| Hair Style | | SSN | 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 |
| Hair Length | | Scars/Marks/Tattoos | |
| Facial Hair | | Attire | |
| Complexion | | Employer/School | |
| Teeth | | Employer Address | |
| Build | | Employer CSZ | |
| Height | 6' 3" | Occupation/Grade | |
| Weight | 340 | MO | |
| Resident | Resident | Other MO | |
| POB | | Habitual Offender | |
| DLN | | Status | |
| DL State | | | |

Arrest Information

| | | | |
|---|---|---|---|
| Arrest For | 7012 - Miscellaneous Incident | Released Location | |
| Arrest Number | 95206B | Released By | |
| Arrest Type | Crime In Progress (On View Arrest) | Release Reason | |
| Armed With | None | Held For | |
| Multi-Clearance | Not Applicable | Fingerprints | |
| Multi-Clearance Offense | | Photos | |
| FBI Number | | Miranda Read | |
| State Number | | Miranda Waived | |
| Arrest Date | 8/17/2014 | Number of Warrants | |
| Arrest Location | 485 S Warren Ave | Juvenile Dispo. | |
| Force Level | | Adult Present (Name) | |
| Date/Time Booked | | Detention Name | |
| Booked Location | | Notified Name | |
| Date/Time Released | | | |

Notes

Victims

Witnesses

Other Entities

Properties

Printed 8/18/2014 7:06 AM

GB001643

Investigative Information

Type of Information

Arrest Summary

Personnel

2010096 - GROVES, ADAM C

Date / Time

8/17/2014 8:30:00 PM

Narrative

On August 17, 2014 at 6:37pm, Officers Groves #2651 and George #2647 working cruiser 198 were patrolling the area of S Warren Ave just north of Sullivant Ave. Officers observed a Dark Blue, 2001, Cadillac Deville with OH Tag GCG6837 travel southbound on S Warren Ave from Wicklow Rd. Officers further observed the vehicle pull off to the right side of the roadway in front of 485 S Warren Ave without using a turn signal. Officers initiated a traffic stop on the vehicle. Officers made contact with the driver, Brad A Cherry (CPD ID# 95206B). Officers stated the reason for the stop and asked for Mr. Cherry's identification. Through LEADS, Mr. Cherry had never had a license. Mr. Cherry was placed under arrest and in the rear of cruiser 198. Mr. Cherry was released with a summons for the reverse listed charges. The vehicle was released to the owner, Claudia Craft (Ohio DL).

| | 7457 |
|---|---|
| Subject | Complaint |
| Call Taken By | Voicemail |
| Entered Into Log B | Myers, T |
| Method Received | Complaint Line |
| Date Received | 8/17/2014 |
| Time Received | 7:02 PM |
| Last Name | Craft |
| First Name | Claudia |
| Address | 485 S. Warren Avenue |
| City | Columbus |
| State/Province | OHIO |
| Postal Code | 43204- |
| Internal Affairs Bureau – Vexatious Complainant List | ☐ |
| Home Phone | (614) 817-7940 |
| Mobile Phone | |
| Work Phone | |
| Email Name | |
| IAB Number | 2014408-0040 |
| | 8/17/2014 |

**Concern**

Caller requested callback.

8/17/14 @ 7:57PM, on callback, caller stated she was the passenger in her vehicle (blue Cadillac DeVille) when her husband was stopped for a turn signal violation in front of her house. (1407000077, 1988) Caller advised her husband was soon handcuffed (he was no ops), she was told to exit the vehicle, and the officers "searched" the passenger compartment of her car (but not the trunk, per caller). Caller said that when she asked why they were searching her car, an officer told her "I need you to get on your fucking porch, and mind your own damn business." When she tried to get her husband's phone from off of the truck of the car the officer told her, "You need to leave that shit there."

Caller admitted her husband is no ops, but stated he was only traveling for a short distance. Caller stated they were traveling from the area of Wicklow & Warren, where there is a well-known drug house.

Caller's husband (Brad Cherry) had a similar story to his wife's. He admitted he was no ops. He said he did not hear what was said to his wife because he was in the back of the wagon at the time, but he did see the wagon driver point at his wife. Mr. Cherry said the passenger officer stayed with him the whole time. Mr. Cherry said when the driver officer got back into the wagon he remarked, "She's getting on my fucking nerves." Mr. Cherry reiterated that the area was a high crime/high drug area and that officers needed to do something about it.

**Response**

After Sgt. Myers explained the concept of protective sweeps and how certain behaviors could be interpreted differently by the officers, neither complainant had any further concerns about the search of the vehicle. They still wished to pursue a complaint on the alleged improper language.

Mr. Cherry said his neighbor "Rich" at 491 S. Warren Ave. was outside with his wife and saw the whole incident.

Caller advised she called for a harassment report about the traffic stop and cruiser 194 (Cain #2650) responded (Inc. #1407002071). Officer Cain referred caller to IAB. Caller advised Officer Cain was also at the scene of the traffic stop, and was "pretty nice" at both incidents.

Possible video: 223546.av (1988) and 223549.av (1988). Unable to play or copy due to technical difficulties. Will provide copies when able. ✓

GB001645

## Guidelines for Conducting Administrative I.A.B. Interviews

The following will be the administrative interview of Officer Oliver George,
Reference: Complaint of Ms. Claudia Craft and Mr. Brad Cherry; IAB Database
*Concluding Questions:* Interview is being conducted at IAB on 9/23/14 commencing at
approximately _____ 6:55 _____ PM.
Present During Interview: Is there anything else you would like to add to this interview? _____.
Asking the questions: Has the statement you have just given been truthful and factual to the
best of your knowledge?

**Division of Police Personnel:** Have you said anything while the tape recorder was off that you feel
should be placed on the record now?

*Introductory Comments:* (attorney/union representative _____ ), do you have any contractual
issues to raise?

· Q: State your name, badge number, and assignment.
Interview concludes: Were you been advised in writing of the nature of this investigation and
A-42.108    did you sign a form entitled "Notification of Internal Investigation, Rights, ·
and Administrative Order to Submit to Interview"?

Q: Had you been advised prior to this interview that all City of Columbus
employees have the right to be accompanied, represented, and advised by
a union representative and/or an attorney in any administrative interview?

*(If there is an attorney and/or union representative...)*

Q: Would you please introduce your attorney and/or union
representative for the record?

### *(If FOP member...)*

Q. Because I am conducting an investigation into alleged misconduct, our
contract requires me to inform you to the extent known at this time,
whether this investigation is focused on you for a potential charge, either
departmental or criminal. At this time, I can tell you that this
investigation is administrative in nature, not criminal, and is focused on
determining whether a violation of Division rules and/or policies has
occurred. Any charge of violating Division rules and/or policies will now
be determined by the Internal Affairs Bureau.

### QUESTIONS:

Concluded 7:01 pm.

## Notification of Internal Investigation, Rights, and
## Administrative Order to Submit to Interview

IAB Database #___201408-0040____

The Columbus Division of Police is conducting an administrative investigation. The following are the basic known facts:

Complainants allege that one of the above listed officers used improper language during a traffic stop.

*Billy Church #5197*
Sergeant Billy Church #5197

I, Officer Oliver George, acknowledge the following:

➢ I have been informed of the nature of the allegation(s) and basic known facts prior to being interviewed on September 23, 2014.
➢ All City of Columbus employees have the right to be accompanied, represented, and advised by a union representative and/or an attorney in any administrative interview.
➢ The information gained from this interview may not be used against me in any criminal proceeding, except for charges of Perjury.
➢ I am being ordered to fully and truthfully answer all questions asked, and that my failure to do so could result in the termination of my employment.

*Oliver G. George* 2647    9-23-14  6:50 PM
Signature                  Date/Time

Witnessed by:

*Signature* 2542

Original to investigative package
Copy to employee

PatrolView :: Search

Back to Search

## Officer(s) assigned to 198B on 8/17/2014

| Badge #: 2651 | Name: GROVES, ADAM |
| Badge #: 2647 | Name: GEORGE, OLIVER |

| Date | Time | Inc # | Code | Status | Remarks |
|------|------|-------|------|--------|---------|
| 08/17/2014 | 15:21:56 | P140699521 | 16B | DP | 167 HALDY AVE CBUS FRA |
| 08/17/2014 | 15:22:57 | P140699521 | 16B | ~ | 167 HALDY AVE CBUS FRA |
| 08/17/2014 | 15:32:31 | P140699521 | 16B | UE | |
| 08/17/2014 | 15:32:31 | P140699521 | 16B | UU | |
| 08/17/2014 | 15:32:39 | P140699521 | 16B | ER | 167 HALDY AVE CBUS FRA |
| 08/17/2014 | 15:50:21 | P140699521 | 16B | CL | 199 S CENTRAL AVE CBUS FRA: @NETCARE |
| 08/17/2014 | 15:50:21 | P140699521 | 16B | ER | 199 S CENTRAL AVE CBUS FRA: @NETCARE |
| 08/17/2014 | 15:50:22 | P140699521 | 16B | EC | 199 S CENTRAL AVE CBUS FRA: @NETCARE |
| 08/17/2014 | 16:16:04 | P140699695 | 43A | DP | WHITETHORNE AVE/W MOUND ST CBUS FRA |
| 08/17/2014 | 16:16:09 | P140699695 | 43A | ER | WHITETHORNE AVE/W MOUND ST CBUS FRA |
| 08/17/2014 | 16:17:13 | P140699698 | 16 | DP | 3631 SOLDANO BLVD CBUS FRA: @CHUCK E CHEESE |
| 08/17/2014 | 16:17:16 | P140699698 | 16 | ER | 3631 SOLDANO BLVD CBUS FRA: @CHUCK E CHEESE |
| 08/17/2014 | 16:17:18 | P140699698 | 16 | ER | 3631 SOLDANO BLVD CBUS FRA: @CHUCK E CHEESE |
| 08/17/2014 | 16:17:29 | P140699699 | 47A | DP | 678 BELVIDERE AVE CBUS FRA |
| 08/17/2014 | 16:17:31 | P140699699 | 47A | ER | 678 BELVIDERE AVE CBUS FRA |
| 08/17/2014 | 16:29:28 | P140699698 | 16 | DP | 3631 SOLDANO BLVD CBUS FRA: @CHUCK E CHEESE |
| 08/17/2014 | 16:29:32 | P140699698 | 16 | ER | 3631 SOLDANO BLVD CBUS FRA: @CHUCK E CHEESE |
| 08/17/2014 | 16:43:15 | P140699740 | 33A | DP | 641 CHESTERSHIRE RD CBUS FRA |
| 08/17/2014 | 16:43:26 | P140699740 | 33A | ER | 641 CHESTERSHIRE RD CBUS FRA |
| 08/17/2014 | 16:57:30 | P140699776 | 17A | DP | 681 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 16:57:34 | P140699776 | 17A | ER | 681 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 17:17:34 | P140699776 | 17A | ~ | 681 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 17:39:26 | P140699926 | 43A | DP | 43 DAKOTA AVE CBUS FRA:AO |
| 08/17/2014 | 17:39:27 | P140699926 | 43A | ER | 43 DAKOTA AVE CBUS FRA:AO |
| 08/17/2014 | 17:39:29 | P140699926 | 43A | ER | 43 DAKOTA AVE CBUS FRA:AO |
| 08/17/2014 | 17:40:00 | P140699926 | 43A | XB | 43 DAKOTA AVE CBUS FRA:AO |
| 08/17/2014 | 17:46:41 | P140699948 | 6 | DP | W BROAD ST/CLARENDON AVE CBUS FRA |
| 08/17/2014 | 17:46:42 | P140699948 | 6 | AR | W BROAD ST/CLARENDON AVE CBUS FRA |
| 08/17/2014 | 17:46:47 | P140699948 | 6 | AR | W BROAD ST/CLARENDON AVE CBUS FRA |

| | | | | | |
|---|---|---|---|---|---|
| 08/17/2014 | 18:24:35 | P140700032 | 26 | DP | 544 RYAN AVE CBUS FRA |
| 08/17/2014 | 18:24:37 | P140700032 | 26 | ER | 544 RYAN AVE CBUS FRA |
| 08/17/2014 | 18:24:43 | P140700032 | 26 | ER | 544 RYAN AVE CBUS FRA |
| 08/17/2014 | 18:26:01 | P140700033 | 26 | DP | 343 S POWELL AVE CBUS FRA |
| 08/17/2014 | 18:26:17 | P140700033 | 26 | ER | 343 S POWELL AVE CBUS FRA |
| 08/17/2014 | 18:29:08 | P140700033 | 26 | AR | 343 S POWELL AVE CBUS FRA |
| 08/17/2014 | 18:31:55 | P140700033 | 26 | EC | 343 S POWELL AVE CBUS FRA |
| 08/17/2014 | 18:34:17 | P140700067 | 50A | DP | 229 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 18:34:18 | P140700067 | 50A | AR | 229 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 18:34:24 | P140700067 | 50A | ER | 229 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 18:37:21 | P140700077 | 6 | DP | 483 S WARREN AVE CBUS FRA |
| 08/17/2014 | 18:37:23 | P140700077 | 6 | AR | 483 S WARREN AVE CBUS FRA |
| 08/17/2014 | 18:37:42 | P140700077 | 6 | AR | 483 S WARREN AVE CBUS FRA |
| 08/17/2014 | 18:55:19 | P140700120 | 33 | DP | DEMOREST RD/SULLIVANT AVE CBUS FRA |
| 08/17/2014 | 18:55:21 | P140700120 | 33 | ER | DEMOREST RD/SULLIVANT AVE CBUS FRA |
| 08/17/2014 | 18:56:23 | P140700120 | 33 | AR | DEMOREST RD/SULLIVANT AVE CBUS FRA |
| 08/17/2014 | 19:02:46 | P140700146 | 50A | DP | 229 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 19:02:47 | P140700146 | 50A | AR | 229 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 19:03:07 | P140700146 | 50A | ER | 229 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 19:08:18 | P140700146 | 50A | AR | 229 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 19:09:16 | P140700146 | 50A | EC | 229 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 19:36:52 | P140700246 | 48A | DP | S POWELL AVE/FREMONT ST CBUS FRA;ALLEY <>CHASE |
| 08/17/2014 | 19:36:54 | P140700246 | 48A | ER | S POWELL AVE/FREMONT ST CBUS FRA;ALLEY <>CHASE |
| 08/17/2014 | 19:36:58 | P140700246 | 48A | ER | S POWELL AVE/FREMONT ST CBUS FRA;ALLEY <>CHASE |
| 08/17/2014 | 19:48:30 | | SUB | OS | SUB 19 |

GB001649

## Guidelines for Conducting Administrative I.A.B. Interviews

The following will be the administrative interview of Officer Adam Groves,
Reference: Complaint of Ms. Claudia Craft and Mr. Brad Cherry; IAB Database
#201408-0040. This interview is being conducted at IAB on 9/24/14 commencing at
approximately _____3:09_____ PM.
Present during the interview are _____,
Asking the questions will be _____.

### Division of Police Personnel

*Introductory Questions:*

- Q:     State your name, badge number, and assignment.
- Q:     Have you been advised in writing of the nature of this investigation and
         did you sign a form entitled "Notification of Internal Investigation, Rights,
         and Administrative Order to Submit to Interview"?
- Q:     Had you been advised prior to this interview that all City of Columbus
         employees have the right to be accompanied, represented, and advised by
         a union representative and/or an attorney in any administrative interview?

*(If there is an attorney and/or union representative...)*

- Q:     Would you please introduce your attorney and/or union
         representative for the record?

### (If FOP member...)

- Q.     Because I am conducting an investigation into alleged misconduct, our
         contract requires me to inform you to the extent known at this time,
         whether this investigation is focused on you for a potential charge, either
         departmental or criminal.   At this time, I can tell you that this
         investigation is administrative in nature, not criminal, and is focused on
         determining whether a violation of Division rules and/or policies has
         occurred. Any charge of violating Division rules and/or policies will now
         be determined by the Internal Affairs Bureau.

### QUESTIONS:

## Notification of Internal Investigation, Rights, and Administrative Order to Submit to Interview

IAB Database #   201408-0040

The Columbus Division of Police is conducting an administrative investigation.   The following are the basic known facts:

Complainants allege that one of the above listed officers used improper language during a traffic stop.

_Billy Church #5197_
Sergeant Billy Church #5197

I, Officer Adam Groves, acknowledge the following:

➤ I have been informed of the nature of the allegation(s) and basic known facts prior to being interviewed on September 24, 2014.
➤ All City of Columbus employees have the right to be accompanied, represented, and advised by a union representative and/or an attorney in any administrative interview.
➤ The information gained from this interview may not be used against me in any criminal proceeding, except for charges of Perjury.
➤ I am being ordered to fully and truthfully answer all questions asked, and that my failure to do so could result in the termination of my employment.

_Signature_ #2651   9-24-14 3:10PM
Signature          Date/Time

Witnessed by:

_2542_

Original to investigative package
Copy to employee

GB001651

Concluding Questions:

Q: Is there anything else you would like to add to this interview?
Q: Has the statement you have just given been truthful and factual to the best of your knowledge?
Q: Have we discussed anything while the tape recorder was off that you feel should be placed on the record now?
Q: (attorney/union representative _____), do you have any contractual issues to raise?

Interview concluded at _3:15 pm_ .

A-42.108

GB001652

PatrolView :: Details for Incident #P140700207                                    Page 1 of 1

Incident #: P140700207     Call Type:   16A       Incident Date:  8/17/2014

Location:  486 S WARREN AVE  🏵

Apartment:                                        Lat/Lon: 39.94493, -83.07106

Name:     CLAUDIA

Phone:    (614) 817-7940

Address:

1921.: HARRASSMENT RPT
1921.: KNOWN PERSON

Priority:  4       Source:  P       District:  194      Zone:  03       County: FRANKLIN

Call Taker:    2006004 (ADKINS, MELINDA)

Rec:  19:21:05   Disp:  19:21:54   Enr:  19:21:56   Arv:            Clr:   19:38:30

Unit(s):    194B

GB001653

PatrolView :: Search                                    Page 1 of 2

Back to Search

## Officer(s) assigned to 194B on 8/17/2014

| Badge #: 2650 | | | Name: CAIN, JEFFREY | | |
|---|---|---|---|---|---|

| Date | Time | Inc # | Code | Status | Remarks |
|---|---|---|---|---|---|
| 08/17/2014 | 15:22:42 | P140699521 | 16B | DP | 167 HALDY AVE CBUS FRA |
| 08/17/2014 | 15:23:42 | P140699521 | 16B | ~ | 167 HALDY AVE CBUS FRA |
| 08/17/2014 | 15:28:11 | P140699521 | 16B | UE | |
| 08/17/2014 | 15:28:11 | P140699521 | 16B | UU | |
| 08/17/2014 | 15:28:17 | P140699521 | 16B | ER | 167 HALDY AVE CBUS FRA |
| 08/17/2014 | 15:48:17 | P140699521 | 16B | ~ | 167 HALDY AVE CBUS FRA |
| 08/17/2014 | 15:53:29 | P140699521 | 16B | CL | 199 S CENTRAL AVE CBUS FRA; @NETCARE |
| 08/17/2014 | 15:53:29 | P140699521 | 16B | ER | 199 S CENTRAL AVE CBUS FRA; @NETCARE |
| 08/17/2014 | 15:53:31 | P140699521 | 16B | EC | 199 S CENTRAL AVE CBUS FRA; @NETCARE |
| 08/17/2014 | 16:07:14 | P140699234 | 4A | DP | 350 S POWELL AVE CBUS FRA |
| 08/17/2014 | 16:07:27 | P140699234 | 4A | ER | 350 S POWELL AVE CBUS FRA |
| 08/17/2014 | 16:43:53 | P140699775 | 38A | DP | 429 S WARREN AVE CBUS FRA |
| 08/17/2014 | 16:44:29 | P140699775 | 38A | ER | 429 S WARREN AVE CBUS FRA |
| 08/17/2014 | 16:58:11 | P140699775 | 38A | AR | 429 S WARREN AVE CBUS FRA |
| 08/17/2014 | 17:03:48 | P140699775 | 38A | EC | 429 S WARREN AVE CBUS FRA |
| 08/17/2014 | 17:03:57 | P140699833 | 16A | DP | S WARREN AVE/SULLIVANT AVE CBUS FRA |
| 08/17/2014 | 17:03:58 | P140699833 | 16A | AR | S WARREN AVE/SULLIVANT AVE CBUS FRA |
| 08/17/2014 | 17:04:47 | P140699833 | 16A | AR | S WARREN AVE/SULLIVANT AVE CBUS FRA |
| 08/17/2014 | 17:12:18 | P140699849 | 17 | DP | 2958 SULLIVANT AVE CBUS FRA |
| 08/17/2014 | 17:12:19 | P140699849 | 17 | ER | 2958 SULLIVANT AVE CBUS FRA |
| 08/17/2014 | 17:12:35 | P140699849 | 17 | ER | 2958 SULLIVANT AVE CBUS FRA |
| 08/17/2014 | 17:32:35 | P140699849 | 17 | ~ | 2958 SULLIVANT AVE CBUS FRA |
| 08/17/2014 | 17:32:57 | P140699849 | 17 | EC | 2958 SULLIVANT AVE CBUS FRA |
| 08/17/2014 | 17:38:30 | | REPORT | OS | SUB |
| 08/17/2014 | 18:26:31 | P140700033 | 26 | DP | 343 S POWELL AVE CBUS FRA |
| 08/17/2014 | 18:26:32 | P140700033 | 26 | ER | 343 S POWELL AVE CBUS FRA |
| 08/17/2014 | 18:27:42 | P140700033 | 26 | ER | 343 S POWELL AVE CBUS FRA |
| 08/17/2014 | 18:29:15 | P140700033 | 26 | AR | 343 S POWELL AVE CBUS FRA |
| 08/17/2014 | 18:34:21 | P140700067 | 50A | DP | 229 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 18:35:21 | P140700067 | 50A | ~ | 229 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 18:37:12 | P140700077 | 6 | DP | 483 S WARREN AVE CBUS FRA |
| 08/17/2014 | 18:37:13 | P140700077 | 6 | AR | 483 S WARREN AVE CBUS FRA |
| 08/17/2014 | 18:50:08 | P140700077 | 6 | AR | 483 S WARREN AVE CBUS FRA |

GB001654

PatrolView :: Search

| 08/17/2014 | 18:55:22 | P140700120 | 33 | DP | DEMOREST RD/SULLIVANT AVE CBUS FRA |
|---|---|---|---|---|---|
| 08/17/2014 | 18:55:26 | P140700120 | 33 | ER | DEMOREST RD/SULLIVANT AVE CBUS FRA |
| 08/17/2014 | 18:56:14 | P140700077 | 6 | DA | 483 S WARREN AVE CBUS FRA |
| 08/17/2014 | 19:02:49 | P140700146 | 50A | DP | 229 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 19:02:51 | P140700146 | 50A | ER | 229 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 19:02:52 | P140700146 | 50A | ER | 229 S WAYNE AVE CBUS FRA |
| 08/17/2014 | 19:21:54 | P140700207 | 16A | DP | 485 S WARREN AVE CBUS FRA |
| 08/17/2014 | 19:21:56 | P140700207 | 16A | ER | 485 S WARREN AVE CBUS FRA |
| 08/17/2014 | 19:22:53 | P140700207 | 16A | ER | 485 S WARREN AVE CBUS FRA |

GB001655

January 2, 2015

Sgt. Billy Church #5197
Internal Affairs Bureau

Claudia Craft and Brad Cherry
485 S Warren Ave.
Columbus, OH 43204

RE: Citizen Complaint (IAB Database #201408-0040)

Dear Ms. Craft and Mr. Cherry,

Your complaint has been investigated. The Deputy Chief of the involved employee(s)
has reviewed the investigation and rendered the below findings:

Allegation #1:      Officer Oliver George used profanity toward Ms. Claudia Craft.
Disposition #1:   Unfounded

Allegation #1:      Officer Adam Groves used profanity in the presence of Mr. Brad
                          Cherry.
Disposition #1:   Sustained

Any appeal of this disposition must be received by the office of Deputy Chief Kenneth
Kuebler, 614-645-4107, within 14 days of receipt of this notice.

Sincerely,

Sgt. Billy Church #5197

CC: involved employee(s)                                                                                          A-42.105

# OTHER MATERIALS NOTICE

| IAB Database # | 201410-0023 |
|---|---|

Be advised, the following noted materials are associated with this investigation and are being stored and maintained in accordance with current applicable law, and contractual obligations.

| # | Medium |
|---|---|
| | Audio Cassette Tapes |
| | Digital Audio Tapes |
| | VHS Video Tapes |
| | Digital Video Tapes |
| | Photographs |
| | Floppy Disks |
| 2 | CD Computer Disks |
| | |
| | |

IAB Form 38 (1/05)

GB001657

## COLUMBUS DIVISION OF POLICE....ROUTING SHEET FOR CORRESPONDENCE

SUBJECT: Discipline out of I.A.B. Database #204409-004D. 201410 -0023 ᶜᴸʸ

RE: Officer Travis Tucker #2725, 19B16 (Body Mic)

ORIGINATOR: Sergeant David Barrowman #5330     ASSIGNMENT   IAB       DATE: 12/30/2014

---

FORWARD TO:   Sergeant James W. Sheehan, #5229      ASSIGNMENT   S-19-B

REMARKS:   DCC issued on violation of Directive 3.87, II Cruiser Video System. I also reviewed Directive 3.09 Professional

Appearance with Officers Tucker and Adam Groves #2651, 1989.                       ☐ Cont'd on back

SIGNATURE: _Sgt. (sig) #5229, S-19-B_    DATE REC'D   1/20/15      FORWARDED   1/20/15

---

FORWARD TO:   Lieutenant Jimmie D. Barnes, #5066      ASSIGNMENT   L3B

REMARKS: _Documented Corrective Counseling Has Been Issued To Officer_

_Tucker For Violation Of Rule of Conduct 1.03(A) As It Pertains To_    ☑ Cont'd on back

SIGNATURE: _LT. (sig) #5066_    DATE REC'D _1/20/15_      FORWARDED _1/20/15_

---

FORWARD TO:   Commander Scott Hyland #5029      ASSIGNMENT   Cmdr. 3

REMARKS: _All Corrective Action Taken. DCC Attached._

                                      ☐ Cont'd on back

SIGNATURE: X (sig) 5729    DATE REC'D _1/21/15_      FORWARDED _1/21/15_

---

FORWARD TO: _DC Knebler_      ASSIGNMENT _Patrol South_

REMARKS: _For File_

                                      ☐ Cont'd on back

SIGNATURE: _DC (sig)_    DATE REC'D _____      FORWARDED _1/22/15_

---

FORWARD TO: _IAD_      ASSIGNMENT _____

REMARKS: _____

                                      ☐ Cont'd on back

SIGNATURE: _____    DATE REC'D _____      FORWARDED _____

---

FORWARD TO: _____      ASSIGNMENT _____

REMARKS: _____

                                      ☐ Cont'd on back

SIGNATURE: _____    DATE REC'D _____      FORWARDED _____

---

FINAL DISPOSITION: _DOC -2015 - 1569 - 1-27-15 -CLY_

---

ORIGINATING PERSON ADVISED BY: _____

                          NAME                    NOTIFIED VIA            DATE

☐ CD/DVD (#   ) ATTACHMENTS                                       A-10 (02/09)

GB001658

Barnes

Directive 3.87. II B. Non-Documented Constructive Counseling
to both officers Tucker and Groves for failing to wear their hats.
No further action required.

LT. J. Barnes 5068

## Data Processing Worksheet – Columbus Division of Police
### Side A
(Complete one worksheet for each employee involved with the incident. This includes sides A and B)

### Section I - Incident Information:

| Classification of Incident (check all that apply): | Basic Incident Information: |
|---|---|
| □ Forced Entry (complete subsection A) <br> □ Use of Force – Level: 0 – 1 with a complaint of an injury caused by such (complete subsection D) <br> □ Use of Force – Level: 2 – 6 (complete all subsections that apply in section IV) <br> □ Untrained Response – Personal Emergency (complete all subsections that apply in section IV) <br> □ Injury to Prisoner / Injury Prior to Police Contact (complete subsection D) <br> □ Discharge of Firearm – Not a Use of Force (complete subsection E) <br> □ Strip / Body Cavity Search (complete subsection F) <br> ☑ Internal Investigation (complete subsection G) <br> □ Information Only (complete subsection H) <br> □ Police Vehicle Accident – No property damage or any visible or claimed personal injury, or the damage <br>    to the police vehicle is the result of pushing or towing any disabled vehicle (complete subsection H) <br> □ Vehicular Pursuit (complete subsection H) <br> □ Use or Attempted Use of Stopping Tactic (complete subsection H) | Date: 10/20/14 <br><br> Time: 4:15pm <br><br> Incident # 140908037 <br><br> Location of Occurrence (check one): <br> ☑ Precinct # 19 <br> □ Headquarters <br> □ Radio Room <br> □ Foreign Jurisdiction <br> □ Impound Lot <br> □ Unknown |

| Incident Location (check one): | | Incident Description (check one): | |
|---|---|---|---|
| □ Street / Alley <br> ☑ Private Residence / Property <br> □ Public Building / Property <br> □ Business Building / Property <br> □ Bar <br> □ Police Headquarters <br> □ Police Substation <br> □ Police Impound Lot <br> □ Police Vehicle | □ Jail / Correction Facility <br> □ Court <br> □ Police Radio Room <br> □ Property Room <br> □ Other <br> □ Hospital <br> □ Unknown | □ Traffic Incident <br> □ Demonstration / Riot <br> □ Domestic Disturbance <br> □ Crime Committed <br> □ Routine Duty / Patrol <br> □ Disturbance / Fight <br> ☑ Call for Service <br> □ Narcotics Complaint <br> □ Administrative Issue <br> □ Vice Complaint | □ Juvenile Complaint <br> ☑ Request for Information <br> □ Radio Transmission <br> □ Warrant Service / Arrested <br> □ Investigation <br> □ Tactical Deployment <br> □ Mentally Ill Person <br> □ Chain of Command Review <br> □ Other <br> □ EARS Review |

### Section II - Complainant/Suspect/Subject Information:

| | | Medical Status (check one): |
|---|---|---|
| Name: Chief of Police | Sex: _____ Age: _____ | □ N/A <br> □ No Injury <br> ► Injury / Claimed Injury |
| Street: _____ | Race/Ethnicity (check one): | □ No Treatment Required <br> □ Refused Treatment |
| City/State/Zip: _____ | □ Asian <br> □ Black <br> □ Hispanic | □ Treated by Squad / Medic <br> □ Treated and Released by Hospital |
| Phone: _____ | □ White <br> □ Other | □ Hospitalized <br> □ Killed |
| Phone: _____ | □ Unknown | □ Unknown |

### Section III - Personnel Information:

| Employee: | Employee's Action at Time of Incident (check one): | Employee's Medical Status (check one): |
|---|---|---|
| Name: Travis Tucker <br><br> Badge: 2727 <br><br> Assignment: 19B18 <br><br> Classification (check one): <br> ☑ Sworn  Rank: Officer <br> □ Non-Police Personnel <br> □ Non-Sworn Employee <br> □ Reserve Officer <br> □ Unidentified <br><br> Duty Status (check one): <br> □ On Duty <br> □ Off Duty <br> □ Special Duty <br> □ Secondary Employment <br> □ Unknown | □ Directing Traffic <br> ☑ Issuing Citation <br> □ Issuing Warning <br> □ Committing Crime <br> □ Making Arrest <br> □ Serving Warrant <br> □ Transporting <br> □ Processing / Handling Prisoner <br> □ Handling Property <br> □ Patrolling <br> □ Observing <br> □ Investigating and/or Questioning <br> □ Operating Vehicle <br> □ Receiving Calls for Service <br> □ Dispatching <br> □ Conversing / Corresponding <br> □ Tactical Entry <br> □ Other <br> □ Unknown <br> □ Performing Routine Duties | □ N/A <br> □ No Injury <br> ► Injury / Claimed Injury <br> □ No Treatment Required <br> □ Refused Treatment <br> □ Treated by Squad / Medic <br> □ Treated and Released by Hospital <br> □ Hospitalized <br> □ Killed <br> □ Unknown |

U-10.164 (7/14)                Side A              Worksheet # 1 of 1

GB001660

# Data Processing Worksheet – Columbus Division of Police
## Side B
(Check all boxes that apply)

Section IV - Type of Incident(s) to Assign to this Specific Employee:

| (A) Forced Entry: | (C) Levels 3 and Above: | (D) Injury to Prisoner: | (E) Discharge of Firearm: |
|---|---|---|---|
| ☐ SWAT<br>☐ INTAC<br>☐ Patrol<br><br>Action:<br>☐ Serving Warrant<br>☐ Making Arrest<br>☐ Emergency Situation<br><br>Disposition (check one):<br>☐ Within Policy<br>☐ Outside Policy | ☐ Level 3 – Electronic Device (Complete Subsection (D) if a transport was made for barb removal)<br><br>*Also complete Subsection (D) for the below Levels if injured or an injury is claimed<br>➤ Level 4 | Type of Injury:<br>☐ Injury Prior to Police Contact (note - if only using this category in Subsection D omit employee's name on side A)<br>☐ Injury During Pursuit, Arrest Made<br>☐ Injury During Pursuit, No Arrest Made<br>☐ Injury During Arrest<br>☐ Injury After Arrest (Transporting / Processing) | Type of Discharge:<br>☐ Intentional<br>☐ Unintentional<br>☐ Animal (Defense of Self / Others)<br>☐ Animal (Humane Destruction)<br>Disposition (check one):<br>☐ Violation of Policy<br>☐ Not in Violation of Policy |
| (B) Level 2 – Use of Mace:<br>☐ Individual Issued Mace<br>☐ Tactical Unit Ordnance<br>☐ Field Force Ordnance<br><br>Injury Severity:<br>☐ Exposure to Mace<br>☐ No Injury / No Exposure<br>☐ Unknown<br>Medical Status:<br>☐ No Treatment Required<br>☐ Refused Treatment<br>☐ Treated by Medic #:<br>➤ For known adverse reactions complete Subsection (D)<br><br>Disposition (check one):<br>☐ Within Policy<br>☐ Outside Policy | ☐ Pushing / Causing Collision (higher than Level 1)<br>☐ Strike / Punch / Kick<br><br>☐ Level 5 – Use of Impact Weapon<br><br>☐ Level 6 – Canine Bite<br><br>➤ Level 7 – Less Lethal Control<br>☐ Special Ordnance<br>Ordered by: _____<br>☐ Other: _____<br><br>➤ Level 8 – Deadly Force<br>☐ Firearm – Defense of Self<br>☐ Firearm – Defense of Others<br>☐ Firearm – Fleeing Felon<br>☐ Firearm – Warning Shots<br><br>☐ Firearm – Other: _____<br>☐ Other: _____<br><br>☐ Untrained Response – Personal Emergency<br>Technique: _____<br>Disposition (check one):<br>☐ Within Policy<br>☐ Outside Policy | Injury Severity:<br>➤ Minor Injury (injury that does not require transport to a medical facility)<br>☐ Claimed Injury (none visible)<br>☐ Visible Injury<br>➤ Serious Injury (injury that requires transport to a medical facility for treatment)<br>☐ Claimed Injury (none visible)<br>☐ Visible Injury<br>☐ Death in Police Custody<br>Medical Status:<br>☐ No Treatment Required<br>☐ Refused Treatment<br>☐ Treated by Medic #_____<br>☐ Treated and Released by Hospital<br>☐ Hospitalized<br>☐ Killed<br>☐ Unknown<br><br>Disposition (check one):<br>☐ Within Policy<br>☐ Outside Policy | (F) Strip / Body Cavity Search Authorized by:<br>Name: _____<br><br>Badge: _____<br><br>Assignment: _____<br><br>Disposition (check one):<br>☐ Within Policy<br>☐ Outside Policy |

| (G) Internal Investigation: | Nature of Allegation(s) / Investigation: | Disposition (check one): |
|---|---|---|
| Date Division Gained Knowledge: 10/21/14<br><br>Investigating Supervisor:<br>Name: James W. Sheehan    IBM: 6229<br><br>Assignment: S19B<br><br>Investigator / Complainant's Status (check one):<br>☒ Immediate Supervisor<br>☐ Division Employee<br>☐ Chain of Command<br>☐ Administrative Personnel<br>☐ Non-Division Personnel | ☐ City Work Rule: _____<br>☒ Rule of Conduct: 1.15<br>☒ Division Directive: 3.87,II,B<br>☐ Bureau SOP<br>Bureau: _____<br>SOP: _____<br>Page: _____ | ☐ Within Policy<br>☒ Outside Policy |

(H) Information Only: _____

☐ Police Vehicle Accident    ☐ Vehicular Pursuit    ☐ Use or Attempted Use of Stopping Tactic

Section V - Comments:

Officer Tucker was issued a DCC for not wearing his required Body Mic during a Traffic Stop.

Completed By: _[signature]_ 5229                                Assignment: S-17-B

U-10.164 (7/14)                    Side B                    Worksheet # 1 of 1

# COLUMBUS DIVISION OF POLICE....ROUTING SHEET FOR CORRESPONDENCE

SUBJECT: Findings and Recommendations for I.A.B. Database #201409-0040 201410-0022 CLY
RE: Officers Adam Groves #2651, 19B9, Travis Tucker #2725, 19B16

ORIGINATOR: Sergeant David Barrowman #5330   ASSIGNMENT IAB   DATE: 12/30/2014

---

FORWARD TO: Sergeant James W. Sheehan, #5229   ASSIGNMENT S-19-B
REMARKS: See attached letter.
☐ Cont'd on back
SIGNATURE: _Sgt James W ___ #5229, S19B_   DATE REC'D 12/30/14   FORWARDED 1/5/15

---

FORWARD TO: Lieutenant Jimmie D. Barnes, #5068   ASSIGNMENT L3B
REMARKS: I CONCUR WITH BOTH SERGEANT THAT ALLEGATION I AND II AGAINST BOTH OFFICERS SHOULD BE CLASSIFIED AS UNFOUNDED. I CONCUR ☒ Cont'd on back
SIGNATURE: Lt. _J. Barnes_ #5068   DATE REC'D 1/6/15   FORWARDED 1/9/15

---

FORWARD TO: Commander Scott Hyland #5029   ASSIGNMENT Cmdr. 3
REMARKS: I CONCUR W/ FINDINGS/DISCIPLINE RECOMMENDATION EXACTLY AS OUTLINED BY LT. BARNES
☐ Cont'd on back
SIGNATURE: _____ 5029   DATE REC'D 1/9/15   FORWARDED 1/12/15

---

FORWARD TO: A/DC ROBERT STROUSBAUGH   ASSIGNMENT PATROL SOUTH
REMARKS: ALLEGATION I & II ARE UNFOUNDED FOR BOTH OFFICERS. COMPLETE NON-DOC COUNSELING FOR BOTH OFFICERS. ISSUE DCC TO P.O. TUCKER AND RETURN ☐ Cont'd on back
SIGNATURE: A/DC ___ RSB   DATE REC'D 1-12-15   FORWARDED 1-13-15

---

FORWARD TO: CMDR. HYLAND.   ASSIGNMENT C3
REMARKS: FOLLOW THRU AS DIRECTED BY DC
☐ Cont'd on back
SIGNATURE: _____ 5?   DATE REC'D 1/14/15   FORWARDED 1/15/15

---

FORWARD TO: LT. BARNES   ASSIGNMENT L-3-B
REMARKS: FOLLOW THROUGH AS DIRECTED
☐ Cont'd on back
SIGNATURE: LT. ___ #5068   DATE REC'D 1/16/15   FORWARDED 1/26/15

---

FINAL DISPOSITION:

---

ORIGINATING PERSON ADVISED BY:
                                    NAME                          NOTIFIED VIA          DATE

☐ CD/DVD (#      ) ATTACHMENTS                                           A-10 (02/09)

GB001662

BALANCE—

WITH SERGEANT SHEEHAN REGARDING THE FAILURE OF BOTH OFFICERS TO WEAR THEIR DIVISION-ISSUED HATS DURING THE INCIDENT AND THE FAILURE OF OFFICER TUCKER TO WEAR THE BODY MICROPHONE AS REQUIRED. I AGREE THAT BOTH OFFICERS SHOULD BE ISSUED NON-DOCUMENTED CONSTRUCTIVE COUNSELING FOR VIOLATION OF RULE OF CONDUCT 1.03(A) AS IT PERTAINS TO DIVISION DIRECTIVE 3.09 FOR FAILING TO WEAR THEIR HATS. I FURTHER RECOMMEND THAT OFFICER TUCKER BE ISSUED A DOCUMENTED CONSTRUCTIVE COUNSELING FOR VIOLATION OF RULE OF CONDUCT 1.03(A) AS IT PERTAINS TO DIRECTIVE 3.87 II B, REQUIREMENT TO WEAR BODY MICROPHONE. I RECOMMEND NO FURTHER ACTION

LT. Jim R___ #5068

# DIVISION OF POLICE

Intra-Divisional

January 5, 2015

TO:        Chief Kimberley Jacobs, Chief of Police

FROM:      Sergeant James Sheehan #5229, S-19-B

SUBJECT:   Findings/Recommendations

RE:        I.A.B. Database #201410-0023

---

Ma'am,

On December 30, 2015, I received an Internal Investigation (I.A.B. Database #201410-0023) conducted by Sergeant David Barrowman #5040, with allegations against Officers Adam Groves #2651, 19B9, and Travis Tucker #2725, 19B16.  Sergeant Barrowman #5040 interviewed all the involved officers and witnesses to the alleged allegations against Officers Groves and Tucker. Sergeant Barrowman also found Internal Policy Issues not based on the original Complaint.

### Officers Adam Groves #2651, 19B9 & Travis Tucker #2725, 19B16

**Allegation I:  Officer Travis Tucker searched Mr. Samuel Becker without consent.**

**Allegation II:  Officer Adam Groves searched Mr. Samuel Becker's vehicle without consent.**

**Internal Policy Issue(s) Not Based on the Original Complaint**

**Policy Issue I: Officers Tucker and Groves were captured by cruiser video not wearing their hat during the traffic stop.**

**Policy Issue II: Officer Tucker did not utilize his CVS body microphone.**

I concur with Sergeant Barrowman that the findings of Allegations I, and II, against officers Groves and Tucker be classified as "Unfounded."

I.A.B. Database #201410-0023
Page 2

## Policy Issues I:

I reviewed the CVS video and it shows officers Groves and Tucker did not have their hats on. Officer Tucker and Groves on this date were watching a residence at 270 Nashoba Avenue. This address is known to them and other officers on the precinct for narcotics activity, gun runs, and other violent felony crimes. I believe this is an isolated incident with the two officers. I reviewed the Division Disciplinary Tracking System on both Officers Tucker and Groves and found neither had any previous violations for Directive 3.09 Professional Appearance. I recommend **Non-Documented Constructive Counseling** for both Officer Tucker and Officer Groves.

## Policy Issue II:

Officer Tucker did not utilize his CVS body microphone. In reviewing the CVS it clearly shows that officer Tucker did not activate or have on his person the body microphone. This is in violation of Division Directive 3.87 Cruiser Video System more specifically 3.87II,B which states *"The driver, or probationary officer in an FTO unit, shall wear the body microphone when exiting the marked unit anytime the CVS is recording."* I reviewed the Division Disciplinary Tracking System on Officer Tucker which showed he has not had any violations of this Directive. I recommend that Officer Tucker receive **Documented Constructive Counseling** for violation of Division Directive 3.87II, B

Respectfully Submitted,

Sergeant James Sheehan #5229
S-19-B

# Division of Police

### Intra-Divisional

### December 18, 2104

To:         Deputy Chief Kenneth Kuebler #5008
            Patrol South Subdivision

From:       Commander Jennifer Knight #5026
            Internal Affairs Bureau

Subject:    **I.A.B. Database #201410-0023**

Attached is the investigation of I.A.B. #201410-0023, which was conducted by the Internal Affairs Bureau. Sgt. David Barrowman has completed this investigation. Please evaluate and classify each specific allegation listed below:

### Officer Travis Tucker #2725, 19B16

**Allegation I:**                          Officer Travis Tucker #2725 searched
                                           Mr. Samuel Becker without consent.

**Investigator Recommendation:**           Unfounded
**Deputy Chief's Determination:**          UN FounD-ed
**Policy/Procedure Followed:**
**Rule Violated:**
**Corrective Action:**

### Officer Adam Groves #2651, 19B9

**Allegation II:**                         Officer Adam Groves #2651 searched
                                           Mr. Samuel Becker's vehicle without
                                           consent.

**Investigator Recommendation:**           Unfounded
**Deputy Chief's Determination:**          UNFOUND-ed
**Policy/Procedure Followed:**
**Rule Violated:**
**Corrective Action:**

GB001666

IAB Database #201410-0023
Cover Letter
Page 2

**Deputy Chief's Signature:** _____ 5022 **Date:** /-/8-/5

When completed, return the investigation and your findings to this Bureau.

☒ **A-42.149 was also forwarded to the Chain of Command with this investigation.**

Respectfully submitted,

Michael C. Deskins #5040

FOR      Commander Jennifer Knight #5026
          Internal Affairs Bureau

JK/DB

A-42.139 (11/14)

GB001667

# Division of Police

## Intra-Divisional

## December 18, 2014

**To:**        Commander Jennifer Knight #5026
              Internal Affairs Bureau

**From:**      Sergeant David M. Barrowman #5330
              Internal Affairs Bureau

**Subject:**   Investigative Summary
              **Ref: I.A.B. Database #201410-0023**

Investigator: **Sergeant David M. Barrowman #5330**

### Circumstances of Incident

On October 20, 2014, at approximately 4:15 pm, Mr. Samuel Becker was stopped by Officer Travis Tucker and Officer Adam Groves for a traffic violation. Out of that incident, Mr. Becker came into the Internal Affairs Bureau and filed a Citizen's Complaint alleging the following:

### Allegation I

**Officer Travis Tucker #2725 searched Mr. Samuel Becker without consent.**

### Allegation II

**Officer Adam Groves #2651 searched Mr. Samuel Becker's vehicle without consent.**

### Response to Allegation I and II

**Mr. Samuel Becker (complainant)** stated in his Internal Affairs interview with Sergeant Barrowman, conducted by telephone, that on October 20, 2014 he was at his home when his friend, Mr. Mackinsey Johnson, called and asked if he would give Mr. Johnson's friend, Adam, a ride home. Mr. Becker stated that he agreed to give Adam a ride home, to the Hilltop area, for $20.00. Mr. Becker stated that he drove to Mr. Johnson's home and picked up Mr. Johnson and Adam. Mr. Becker stated that he drove to an unknown address near Doren Avenue and Adam got out of his vehicle. Mr. Becker stated that he drove away and stopped at the stop sign on Doren Avenue at

Investigative Summary
I.A.B. Database #201410-0023
PAGE 2

Lechner Avenue. Mr. Becker stated that he turned left and proceeded south on Lechner Avenue. Mr. Becker stated that, seconds later, a cruiser pulled in behind him and initiated a traffic stop by activating the cruiser beacons. Mr. Becker stated that he pulled over and stopped his vehicle.

Mr. Becker stated that a male white officer, later identified as Officer Adam Groves, approached the driver's side of his vehicle as a male black officer, later identified as Officer Travis Tucker, approached the passenger's side of his vehicle. Mr. Becker stated that he was pulled over for failing to stop for the stop sign located at Doren Avenue and Lechner Avenue. Mr. Becker stated that he debated the violation with Officer Groves. Mr. Becker stated that Officer Groves asked him if he had any guns, weapons, or drugs in his vehicle. Mr. Becker stated that he answered, "No." Mr. Becker stated that a minute or so passed by and Officer Groves asked him to step out of the vehicle. Mr. Becker stated that he thought the officers had changed sides during the stop and that he believed Officer Tucker searched him. Mr. Becker stated that during the search of his person, Officer Tucker had reached inside of his pocket. Mr. Becker changed his statement and stated that Officer Groves had searched him but he wasn't sure which officer had searched him. Mr. Becker stated that he asked the officer if he wanted him (Mr. Becker) to take his shoes off. Mr. Becker stated that the officer stated, "No."

Mr. Becker stated that after he was searched, Officer Tucker talked with him and Mr. Johnson at the rear of his (Mr. Becker) vehicle as Officer Groves searched his vehicle. Mr. Becker stated that while at the back of his vehicle, Officer Tucker stated, "The reason we pulled you over wasn't because you ran a stop sign, the reason we pulled you over is because you pulled away from a ....... trap house or drug house."

**Officer Travis Tucker #2725 (focus Officer)** stated in his Internal Affairs Interview with Sergeant Barrowman, conducted in person, that on October 20, 2014, he was assigned to work cruiser #190. Officer Tucker stated that shortly before 4:15 pm, Officer Groves contacted him and informed him that a vehicle had just parked in front of 270 Nashoba Avenue. Officer Tucker stated that the officers on his precinct knew that address to be involved in illegal drug activity. Officer Tucker stated that Officer Groves maintained observation of the vehicle as he (Officer Tucker) waited west of the location. Officer Tucker stated that once the vehicle left 270 Nashoba Avenue, it traveled west on Doren Avenue. Officer Tucker stated that he was seated in his cruiser on Lechner Avenue, north of Doren Avenue, facing south. Officer Tucker stated that he observed the vehicle, driven by Mr. Becker, roll through the posted stop sign on Doren Avenue, at Lechner Avenue, providing probable cause for a traffic stop. Officer Tucker stated that he got behind Mr. Mr. Becker's vehicle and performed a traffic stop on Lechner Avenue, south of Doren Avenue.

Officer Tucker stated that he approached the passenger's side of the vehicle as Officer Groves made contact with the driver, Mr. Becker. Officer Tucker stated that he

GB001669

Investigative Summary
I.A.B. Database #201410-0023
PAGE 3

gathered Mr. Johnson's information as Officer Groves retrieved Mr. Becker's driver's
license. Officer Tucker stated that he explained to both occupants the traffic law
violated and questioned them about leaving from in front of a house known for
narcotics activity. Officer Tucker stated that Officer Groves informed the occupants of
their concerns that they may have weapons and/or drugs on them and in the vehicle.
Officer Tucker stated that Mr. Becker assured them that he was not in possession of
any contraband and informed them that they could search him and his vehicle. Officer
Tucker stated that he walked over to the driver's side of the vehicle and asked Mr.
Becker to exit his vehicle. Officer Tucker stated that he began to perform a pat down
on Mr. Becker when he felt an item in Mr. Becker's left front pants pocket that
immediately felt like illegal drugs. Officer Tucker stated that the item turned out not to
be illegal drugs and he completed the pat down. Officer Tucker stated that both
occupants stood at the rear of Mr. Becker's vehicle as Officer Groves searched the
vehicle for contraband. Officer Tucker stated that he stood with Mr. Becker so Mr.
Becker could retract consent at any time. Officer Tucker stated that Mr. Becker never
retracted consent to search. Officer Tucker stated that the vehicle was cleared, Mr.
Becker was issued a citation, and they drove away without incident.

**Officer Adam Groves #2651 (focus Officer)** stated in his Internal Affairs interview
with Sergeant Barrowman, conducted in person, that on October 20, 2014, shortly
before 4:14 pm, he observed a vehicle, occupied by Mr. Becker and Mr. Johnson,
parked in front of 270 Nashoba Avenue. Officer Groves stated that the address is
known for illegal narcotics activities. Officer Groves stated that he ran the license plate
through LEADS and discovered that the vehicle was not from the area. Officer Groves
stated that he communicated with Officer Tucker and informed him when the vehicle
drove away. Officer Groves stated that Officer Tucker observed a traffic violation and a
stop was made on Lechner Avenue. Officer Groves stated that he approached and
spoke with Mr. Becker. Officer Groves stated that he explained his concerns and asked
Mr. Becker if he had any weapons or illegal drugs. Officer Groves stated that Mr.
Becker gave consent to search.

Officer Groves stated that he walked to the passenger's side of the vehicle and
performed a pat down on Mr. Johnson prior to searching the vehicle. Officer Groves
stated that he did not witness the pat down or search of Mr. Becker. Officer Groves
stated that Officer Tucker, Mr. Becker, and Mr. Johnson stood close enough to
discontinue the vehicle search at any time. Officer Groves stated that no contraband
was located. Officer Groves stated that Mr. Becker and Mr. Johnson left without
incident.

**Mr. Mckinsey Johnson (witness)** stated in his Internal Affairs interview with
Sergeant Barrowman, conducted by telephone, that on October 20, 2014, he was a
passenger in Mr. Becker's vehicle. Mr. Johnson stated that while they were in the
Grove City area, his friend Adam called him and asked him for a ride to the area of

GB001670

Nashoba Avenue. Mr. Johnson stated that he did not know Adam's last name. Mr. Johnson stated that they drove to an unknown address, near Nashoba Avenue, and picked up Adam. Mr. Johnson stated that they gave Adam a ride to his destination on Nashoba Avenue. Mr. Johnson stated that Adam got out of the vehicle and walked to an unknown house on Nashoba Avenue. Mr. Johnson stated that within a few minutes of driving away, they were stopped in a traffic stop, a block over on Lechner Avenue.

Mr. Johnson stated that Officer Tucker approached his side of the vehicle and asked him several questions pertaining to where they had been. Mr. Johnson stated that Officer Tucker walked away for several minutes, returned, and asked him (Mr. Johnson) to exit the vehicle. Mr. Johnson stated that Officer Tucker performed a pat down, then walked him to the rear of Mr. Becker's vehicle where Mr. Becker was standing.

Mr. Johnson was confused and didn't know which officer had interacted with Mr. Becker. Mr. Johnson stated that he did not witness the conversation between Mr. Becker and either officer. Mr. Johnson stated that he did not know the circumstances pertaining to Mr. Becker exiting his vehicle and arriving to the rear of his vehicle. Mr. Johnson stated that while they stood at the rear of Mr. Becker's vehicle, Officer Groves searched Mr. Becker's vehicle. Mr. Johnson stated that Mr. Becker didn't question or ask them to discontinue the search at any time.

**Arbitrator video from cruiser 190 (201459.AV)** documented the following:

4:14:40, Mr. Becker failed to come to a complete stop for the stop sign on Doren Avenue at Lechner Avenue.

4:15:03, Officer Tucker initiated traffic stop.

4:15:28, Officer Tucker exited his cruiser and approached passenger's side of suspect vehicle without wearing his hat or body microphone.

4:15:35, Officer Groves approached driver's side of the suspect vehicle without wearing his hat.

4:19:56, Officer Tucker retrieved an item from Mr. Becker's front left pocket during a pat down, inspected the item, and then put it back.

4:24:58, Officer Groves came from passenger's side to driver's side and searched vehicle.

4:26:00, Mr. Becker and Mr. Johnson re-enter Mr. Becker's vehicle.

Investigative Summary
I.A.B. Database #201410-0023
PAGE 5

4:33:53, Both officers approached suspect vehicle and Officer Groves appeared to issue a citation.

**Patrol View Search of 270 Nashoba Avenue** revealed that officers have been involved in at least three incidents that involved illegal drugs at that location. The search also revealed that officers have been at that location at least seventeen different times since February of 2012. (Pg. #2-6)

## Investigator's Comments

The Urban Dictionary defines the phrase "trap house" as a place where drugs are sold.

## Investigator's Recommendation of Finding

## Allegation I

### Officer Travis Tucker #2725 searched Mr. Samuel Becker without consent.

Mr. Becker originally reported to the Internal Affairs Bureau to file a Citizen's Complaint for receiving a traffic citation. When Mr. Becker was informed that he would have to contest the citation in court and not in the complaint process, Mr. Becker stated that he and his vehicle were searched without consent. Mr. Becker stated that he wasn't sure which officer had searched him. Mr. Johnson was seated in the vehicle, in the front passenger's seat, next to Mr. Becker, but oddly stated that he didn't witness any conversation between the officers and Mr. Becker. Both officers stated that Mr. Becker gave them consent to search. Officer Tucker stated that even with consent to search he only performed a pat down of Mr. Becker's outer clothing until he came upon an item in Mr. Becker's front left pants pocket.

The video indicated that Mr. Becker was not upset or disturbed about the incident and was conversing with Officer Groves. Even though Mr. Becker stated that he did not provide consent to search, he did state that he asked Officer Tucker if Officer Tucker wanted him to take his shoes off during the encounter, which would add to the officers claim to consent being granted. Therefore, I recommend that **Allegation I** be classified as **Unfounded.** The alleged conduct is refuted by a preponderance of the evidence.

GB001672

Investigative Summary
I.A.B. Database #201410-0023
PAGE 6

## Allegation II

### Officer Adam Groves #2651 searched Mr. Samuel Becker's vehicle without consent.

Mr. Becker originally reported to the Internal Affairs Bureau to file a Citizen's Complaint for receiving a traffic citation. When Mr. Becker was informed that he would have to contest the citation in court and not in the complaint process, Mr. Becker stated that he and his vehicle were searched without consent. Mr. Johnson stated that he didn't witness the conversation between the officers and Mr. Becker even though he was seated in the vehicle. It is clear by the cruiser video that Officer Groves searched Mr. Becker's vehicle and both officers stated that Officer Groves searched Mr. Becker's vehicle, with consent. The video documented that Mr. Becker was in a position to contest the search of his vehicle but there is no evidence that he did. Therefore, I recommend that **Allegation II** be classified as **Unfounded**. The alleged conduct is refuted by a preponderance of the evidence.

Respectfully submitted,

Sergeant David M. Barrowman #5330
Internal Affairs Bureau

GB001673

# Division of Police

### Intra-Divisional

### December 18, 2014

To:      Deputy Chief Kenneth Kuebler #5008
              Patrol South Subdivision

From:   Commander Jennifer Knight #5026
              Internal Affairs Bureau

Subject:  **Internal Policy Issue(s) Not Based on Original Complaint**

RE:       **I.A.B. Database #201410-0023**

During the investigation of I.A.B. #201410-0023, which was conducted by Sgt. Barrowman of the Internal Affairs Bureau, potential minor misconduct not based on the original complaint was discovered. This notification has been submitted for a review of and to document each alleged issue listed below:

### Officer Travis Tucker #2725, 19B16

Policy Issue I:            Officer Tucker was captured by cruiser video not wearing his hat during a traffic stop. Officer Tucker stated that he didn't wear his hat because he felt it was an officer safety issue.

Deputy Chief's Determination:   *Not Worthy Policy*
Policy/Procedure Followed:      *DP. 3.09*
Rule Violated:                    *1.03 (A)*
Corrective Action:            *Non-Doc - Corrected.*

Policy Issue II:          Officer Tucker did not utilize the CVS body microphone during a traffic stop that was captured on video. Had Officer Tucker utilized the body microphone, the conversation in question would have been recorded. Officer Tucker stated that he either forgot to grab it prior to exiting his cruiser or the batteries may have been dead. Officer Tucker stated that he couldn't remember either way.

IAB Database #201410-0023
Internal Policy Issue(s) Not Based on Original Complaint
Page 2

Deputy Chief's Determination: _Not Written Policy_
Policy/Procedure Followed: _D.D. 3.87 II B_
Rule Violated: _1.03 B)_
Corrective Action: _DCC_

## Officer Adam Groves #2651, 19B9

Policy Issue I:     Officer Groves was captured by cruiser video not
                    wearing his hat during a traffic stop. Officer Groves
                    stated that he didn't wear his hat because he felt it
                    was an officer safety issue.

Deputy Chief's Determination: _Not Written Policy_
Policy/Procedure Followed: _D.D. 3.07_
Rule Violated: _1.03 (A)_
Corrective Action: _Non-Doc-Counseling_

Deputy Chief's Signature: _[signature]_ Date: _1-13-15_

When completed, return the administrative investigative packet and your findings to
this Bureau.

Respectfully submitted,

_[signature]_ #5040

For     Commander Jennifer Knight #5026
        Internal Affairs Bureau

JK/DB

# Complaint Narrative

| IAB Database Number | 201410-0023 |
|---|---|

| Contractual Target Date | 1/9/2015 |
|---|---|

**Incident:**

| | |
|---|---|
| Date of occurrence | 10/20/2014 |
| Time of occurrence | 4:15 PM |
| Place of occurrence | Doren Avenue @ Lechner Avenue |
| Date complaint received | 10/21/2014 |
| Time complaint received | 12:15 PM |

| | |
|---|---|
| Complaint received by | Sergeant Raymond Meister #5268 |
| Entered into database by | Sergeant Donna Alexander #5225 |
| Narrative completed by | Sergeant Raymond Meister #5268 |

**Complainant:**

| | |
|---|---|
| Name | Samuel Becker |
| Address (number/street) | 5484 Forest Glen Drive |
| Address (city/state/zip) | Grove City, Ohio 43123 |
| Primary phone | (614) 312-1940 |
| Secondary phone | |

**Involved Personnel:**

| Name/Badge Number | Assignment |
|---|---|
| P. O. Adam Groves, #2651 | 19B9, {W/T} |
| P.O. Travis Tucker, #2725 | 19B16, {T/F} |

**Summary of Contact with Complainant:**

The complainant states that he was stopped improperly, and then his person and his car were improperly searched. The complainant was advised to dispute the citation he received in traffic court, therefore the remaining issues are what he is complaining about.

Audio available.

A-42.102

GB001676

PatrolView :: Search                                                                    Page 1 of 1

Back to Search

## Address Search
Results for: 270 nashoba

| Date | Inc # | 10-Code | Location |
|------|-------|---------|----------|
| 10/23/2014 | P140916118 | 16 | 270 NASHOBA AVE |
| 10/20/2014 | P140908005 | 48A | 270 NASHOBA AVE |
| 10/14/2014 | P140889594 | 33 | 270 NASHOBA AVE : SUSPECT INSIDE THIS HOUSE |
| 10/12/2014 | P140882919 | 44 | 270 NASHOBA AVE |
| 10/10/2014 | P140875325 | 48A | 270 NASHOBA AVE |
| 09/04/2014 | P140758856 | 16A | 270 NASHOBA AVE |
| 07/29/2014 | P140637992 | 8 | 270 NASHOBA AVE |
| 07/29/2014 | P140637951 | 8 | 270 NASHOBA AVE |
| 05/06/2014 | P140367027 | 49A | 270 NASHOBA AVE |
| 09/28/2012 | P120833480 | 34 | 270 NASHOBA AVE |
| 09/16/2012 | P120796899 | 16A | 270 NASHOBA AVE |
| 09/16/2012 | P120796781 | 16A | 270 NASHOBA AVE |
| 08/31/2012 | P120747292 | 50A | 270 NASHOBA AVE |
| 06/17/2012 | P120503467 | 8B | 270 NASHOBA AVE :HOUSE TO THE RIGHT |
| 05/15/2012 | P120398457 | 49A | 270 NASHOBA AVE |
| 05/07/2012 | P120370615 | 16 | 270 NASHOBA AVE |
| 02/13/2012 | P120118238 | 34C | 270 NASHOBA AVE |

12/15/2014
GB001677

Incident #: P140882919      Call Type:  44        Incident Date:  10/12/2014

Location:  270 NASHOBA AVE

Apartment:                                           Lat/Lon: 39.95049, -83.05102

Name:    NIKI

Phone:   (614) 735-6779

Address:      179 POWELL COLUMBUS S

1941.: FRIEND IS BEING 44ED IN THE BASEMENT
1941.: SAYING THAT THEY ARE 5 OF THEM DOWN THERE
1941.: SAID THE SUSP ARE DEALER AND HAVE 33S
1942.: S10B COPIED
1942.: CALLER IS IRO OF THE HOUSE WAS IN THE BASEMENT BUT GOT OUT

Priority:  1        Source:  9        District:  190      Zone:  03       County:  FRANKLIN

Call Taker:     2013141 (REICHENBACH, JENNIFER)

Rec:  19:41:09  Disp:  19:41:33  Enr:  19:42:33  Arv:  19:50:01  Clr:  01:03:24

Unit(s):     190B  191B  192B  193B  198B  550  7316  81B  9081E

Print

Incident #: P140889594　　Call Type: 33　　　Incident Date: 10/14/2014

Location: 270 NASHOBA AVE : SUSPECT INSIDE THIS HOUSE

Apartment:　　　　　　　　　　　　　　　　　　　Lat/Lon: 39.95049, -83.05102

Name:

Phone:

Address:

| |
|---|
| 2145.: MW ** DRK HAIR / 20YO OR SO ... FRANKIE ** GREY STRIPED SHIRT<br>2145.: MALE WAS ON THE STREET / AND FIRED SHOTS AT THE CALLERS FAMILY<br>2145.: THAT WAS OUT ON THE PORCH **<br>2146.: S19B ADV<br>2146.: THERE WAS ANOTHER MALE WITH HIM ** MW / IN A CARHART / HE DRIVES A WHITE TRUCK |

Priority: 2　　　Source: P　　　District: 190　　Zone: 03　　　County: FRANKLIN

Call Taker:　2005009 (MCENEANY, DAWN)

Rec: 21:45:47　Disp: 21:45:55　Enr: 21:46:14　Arv: 21:50:02　Clr:　23:53:05

Unit(s):　　`152B　158B　190B　191B　194B　198B　7312　7316　9061E　9100E
9102E　S19B`

Print

Case: 2:16-cv-00880-ALM-CMV Doc #: 40-5 Filed: 11/22/17 Page: 87 of 106 PAGEID #: 1688

Incident #: P140367027    Call Type:   49A    Incident Date:   6/6/2014

Location:   270 NASHOBA AVE

Apartment:                                      Lat/Lon: 39.95049, -83.05102

Name:    MALE REF

Phone:

Address:

| |
|---|
| 2034.: MALES AND FEMALES SELLING 49A AND 49S WORKING OUT FRONT |
| 2038.: W19A ENR WAS JUST OUT HERE |
| 2118.: 9192E -- CHANGED LOCATION TO PROPERTY ROOM |

Priority: 3      Source: P      District: 190     Zone: 03      County: FRANKLIN

Call Taker:    2006004 (ADKINS, MELINDA)

Rec: 20:34:43  Disp: 20:34:56  Enr: 20:35:29  Arv: 20:41:07  Clr: 22:37:37

Unit(s):    192B  9192E  W19A

Print

Incident #: P120398457     Call Type: 49A     Incident Date: 5/15/2012

Location: 270 NASHOBA AVE

Apartment:                                        Lat/Lon: 39.95049, -83.06102

Name:    FEMALE REF

Phone:

Address:

2150.: 15 MB ON THE PORCH DOING 49A

Priority: 3     Source: P     District: 190     Zone: 03     County: FRANKLIN

Call Taker:    2004013 (LUCAS, ELIZABETH)

Rec: 21:50:46   Disp: 22:06:33   Enr:          Arv:          Clr:   23:05:22

Unit(s):   CRT15

Print

GB001681

KIM JACOBS
Chief of Police



THE CITY OF
**COLUMBUS**
MICHAEL B. COLEMAN, MAYOR

DIVISION OF POLICE

April 10, 2015

Sgt. David Barrowman
Internal Affairs Bureau
614-645-0747

Mr. Samuel Becker
5484 Forest Glen Dr.
Grove City, Ohio 43123

RE: Citizen Complaint (IAB Database #201410-0023)

Dear Mr. Becker,

Your complaint has been investigated. The Deputy Chief of the involved employee(s) has reviewed the investigation and rendered the below findings:

Allegation #1:    Officer Travis Tucker #2725 searched Mr. Samuel Becker without consent.
Disposition #1:   Unfounded

Allegation #2:    Officer Adam Groves #2651 searched Mr. Samuel Becker without consent.
Disposition #2:   Unfounded

Any appeal of this disposition must be received by the office of the Patrol South Deputy Chief (645-4107) within 14 days of receipt of this notice.

Sincerely,

Sgt. David Barrowman #5330

CC: Involved employee(s)

120 Marconi Boulevard
P.O. Box 15009
Columbus, Ohio 43215-0009

The City of Columbus is an Equal Opportunity Employer

T: (614) 645-4545
F: (614) 645-4551
TDD (614) 645-4677
www.columbuspolice.org

GB001682

## Notification of Internal Investigation, Rights, and
## Administrative Order to Submit to Interview

### IAB Database #201410-0023

The Columbus Division of Police is conducting an administrative investigation. The following are the basic known facts: On October 20, 2014, at approximately 4:15 pm, Mr. Samuel Becker was stopped by Officer Travis Tucker and Officer Adam Groves for a traffic violation. Out of that incident, Mr. Becker came into the Internal Affairs Bureau and filed a Citizen's Complaint alleging the following:

1. Officer Travis Tucker #2725 searched Mr. Samuel Becker.

2. Officer Adam Groves #2651 searched Mr. Samuel Becker's vehicle.

Sergeant David Barrowman #5330

I, Officer Adam Groves #2651, 19B9, acknowledge the following:

➢ I have been informed of the nature of the allegation(s) and basic known facts prior to being interviewed on _____, 20____.
➢ All City of Columbus employees have the right to be accompanied, represented, and advised by a union representative and/or an attorney in any administrative interview.
➢ The information gained from this interview may not be used against me in any criminal proceeding, except for charges of Perjury.
➢ I am being ordered to fully and truthfully answer all questions asked, and that my failure to do so could result in the termination of my employment.

_____ #2651   12-1-14
Signature          Date/Time

Witnessed by:

_____

_____

Original to Investigative package
Copy to employee

GB001683

## Notification of Internal Investigation, Rights, and
## Administrative Order to Submit to Interview

### IAB Database #201410-0023

The Columbus Division of Police is conducting an administrative investigation. The following are the basic known facts: On October 20, 2014, at approximately 4:15 pm, Mr. Samuel Becker was stopped by Officer Travis Tucker and Officer Adam Groves for a traffic violation. Out of that incident, Mr. Becker came into the Internal Affairs Bureau and filed a Citizen's Complaint alleging the following:

1. Officer Travis Tucker #2725 searched Mr. Samuel Becker.

2. Officer Adam Groves #2651 searched Mr. Samuel Becker's vehicle.

Sergeant David Barrowman #5330

I, Officer Travis Tucker #2725, 19B16, acknowledge the following:

➢ I have been informed of the nature of the allegation(s) and basic known facts prior to being interviewed on __12-1__, 20_14_.
➢ All City of Columbus employees have the right to be accompanied, represented, and advised by a union representative and/or an attorney in any administrative interview.
➢ The information gained from this interview may not be used against me in any criminal proceeding, except for charges of Perjury.
➢ I am being ordered to fully and truthfully answer all questions asked, and that my failure to do so could result in the termination of my employment.

_____  12/1/14
Signature                Date/Time

Witnessed by:

_____

_____

Original to investigative package
Copy to employee

GB001684



# Citizen Complaint

## Columbus Division of Police

L.A.B. Database Number  201410-0023

<span style="font-size:small">I.A.B. Use Only</span>



**Personnel Involved** (List additional involved personnel in narrative below)

Name _Adam Groner_    #2651

<span style="font-size:small">Badge/IBM/Tech. Number      Assignment</span>

Name _Travis Tucker_    #2725

<span style="font-size:small">Badge/IBM/Tech. Number      Assignment</span>

**Complainant**

Name _Samuel Becker_   Sex M   Age 20   Ethnic Group _American Ind_

Address _3484 Forest Glen Drive_

Home # _614-321-1640_   Work # _____   Cell # _____   Pager # _____

**Occurrence**

Location _Doren Ave & Lechner Ave._   Radio Incident Number 14090809

Date _10/20/2014_   Time _4:58pm_   Cruiser District _____

**Specific Details of Occurrence**

_I was parked on Doren Ave and as I pulled out I saw a police officer pull out about 300 meters behind me. I stopped at the first stop counted to 3, stopped at second stop sign counted to three, and as I start to pull away the lights come on there car to pull me over. Officer Adam Groner said to me do you know why we pulled you over? You can the stop sign even though he was the second officer on scene. They ask me to step out of the car put my hands behind me back and searched me, the car & my friend. He did not tell if I or the car could be searched. And as we sat in the rain why they searched the car, Officer Travis Tucker told us the only reason we stopped you is because you are stopped in front of a trap house, and said you do not run the stop sign._

Section 2921.15(B) of the Ohio Revised Code states that any person who knowingly files a false complaint of misconduct against a police officer is guilty of a misdemeanor of the first degree.

☑ Complainant notified and acknowledges understanding of Section 2921.15 (B) of the Ohio Revised Code

The above statement is true and correct to the best of my knowledge

Complainant's Signature _____   Date _10/21/2014_

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

**Received by:**

Name and Badge/IBM # _SGT. RAYMOND A. MEISTER #5268_

Date/Time Received _10/21/2014_   _12:40 pm_   How Received _Walk-In_

Citizen Concern Form Number _____

<span style="font-size:small">I.A.B. and Patrol Administrative Use Only</span>

A-8 (Rev 08/02)

GB001685

KIM JACOBS
Chief of Police



THE CITY OF
**COLUMBUS**
MICHAEL B. COLEMAN, MAYOR

DIVISION OF POLICE

October 27, 2014

Sergeant David Barrowman
Internal Affairs Bureau
645-0560

Mr. Samuel Becker
5484 Forest Glen Drive
Grove City, Ohio 43123

RE: Citizen Complaint (IAB Database #201410-0023)

Dear Mr. Glass,

Your complaint was received by the Division of Police and was assigned to me for investigation.

The current status of your complaint is:

     (X)    Currently under investigation

     ( )    On hold pending the outcome of related criminal, civil, or contractual issues

     ( )    This investigation has been completed and is being reviewed for a final disposition.

Sincerely,

Sergeant David Barrowman #5330

120 Marconi Boulevard
P.O. Box 1506912.104
Columbus, Ohio 43215-0909

The City of Columbus is an Equal Opportunity Employer

T: (614) 645-4545
F: (614) 645-4551
TDD (614) 645-4677
www.columbuspolice.org

GB001686

## COLUMBUS DIVISION OF POLICE....ROUTING SHEET FOR CORRESPONDENCE

SUBJECT: EARS Referral re. Officer Adam Groves #2651, 19B9

ORIGINATOR: Commander Michael Gray #5021    ASSIGNMENT  SVB    DATE: 1/26/2015

---

FORWARD TO:  Commander Robert Hyland  ~~5001~~ *(5007)*    ASSIGNMENT  Patrol/Zone 3

REMARKS: DISCUSSED w/ SGT SMART 4/7/15. HE WILL FOLLOW THRU.

☐ Cont'd on back

SIGNATURE:                        DATE REC'D  4/7/15   FORWARDED  4/7/15

---

FORWARD TO: SGT. SMART    ASSIGNMENT  S-19. B

REMARKS: OFFICER GROVES WAS UNABLE TO ATTEND THE SURVIVING VICTIM
CONFLICTS TRAINING BECAUSE HE WAS ON ANNUAL LEAVE + WHEN

☑ Cont'd on back

SIGNATURE:         5321    DATE REC'D  4/7/15   FORWARDED  6/18/15

---

FORWARD TO: LT. J. BAINES #5068    ASSIGNMENT  L-3-B

REMARKS: I recommended THE PATC TRAINING COURSE TITLED, "USE OF FORCE
AND DOCUMENTATION" FOR OFFICER GROVES TO ATTEND AND SGT. SMART

☑ Cont'd on back

SIGNATURE: LT. J. B. #5068    DATE REC'D  6/18/15   FORWARDED  6/20/15

---

FORWARD TO: COMMANDER S. HYLAND #5029    ASSIGNMENT  COMMANDER ZONE 3

REMARKS: CONCUR w/ RECOMMENDED COURSE, SGT. SMART BEING REFERRED TO
CITY ACADEMY FOR 2nd HALF 2015 COURSES. DC REVIEW + TO PERSONNEL

☑ Cont'd on back

SIGNATURE:                        DATE REC'D  6/22/15   FORWARDED  6/22/15

---

FORWARD TO: A/DC STRAUSBAUGH    ASSIGNMENT  PATROL SOUTH

REMARKS: CONCUR; COC TO CONTINUE TO MONITOR PROGRESS AND
ENSURE TRAINING IS SCHEDULED WHEN AVAILABLE.

☐ Cont'd on back

SIGNATURE:          1502C  DATE REC'D  6-23-15   FORWARDED  6-23-15

---

FORWARD TO: HR    ASSIGNMENT  PERSONNEL

REMARKS:

☐ Cont'd on back

SIGNATURE:                        DATE REC'D                   FORWARDED

---

FINAL DISPOSITION:

---

ORIGINATING PERSON ADVISED BY:
                              NAME                          NOTIFIED VIA                 DATE

☐ CD/DVD (#     ) ATTACHMENTS                                          A-10 (02/09)

GB001687

THIS TYPE OF TRAINING BECOMES AVAILABLE AGAIN, I WILL MAKE SURE HE ATTENDS. OFFICER GROVES HAS BEEN SCHEDULED TO ATTEND THE COURSE, "USE OF FORCE AND DOCUMENTATION", ON 7/21/15 - 7/23/15. I WILL ENSURE HE ATTENDS. I HAVE SENT THE COURSE REGISTRATION FORM TO ADVANCED TRAINING. IF THIS COURSE OFFERED BY ADVANCED TRAINING IS NOT SATISFACTORY, PLEASE ADVISE, RESPECTFULLY AND I WILL CANCEL REGISTRATION.

SGT. MICHAEL SHARP S321 S19B

BALANCE —

HAVE ENROLLED OFFICER GROVES INTO THIS COURSE AND HE WILL ENSURE THAT OFFICER GROVES ATTENDS A COMMUNICATION SKILLS COURSE ONCE WHEN ONE IS LOCATED. SGT. SHARP AND I WILL MONITOR OFFICER GROVES' PROGRESS.

LT. JIM B. 5068

GB001688

COLUMBUS DIVISION OF POLICE....ROUTING SHEET FOR CORRESPONDENCE

SUBJECT: __EARS Referral re: Officer Adam Groves #2651, 19B9__

ORIGINATOR: __Commander Michael Gray #5021__    ASSIGNMENT __Special Victims Bureau__    DATE: __1/26/2015__

FORWARD TO: __Deputy Chief Ken Kuebler #5008__    ASSIGNMENT __Patrol South__
REMARKS: __READ~ RECommENDATIoNS on QL BEFORE 3-1-15__
☐ Cont'd on back
SIGNATURE: __DC Kuebler__    DATE REC'D _____    FORWARDED __2-2-15__

FORWARD TO: __CmDe HYLAND__    ASSIGNMENT __C-3__
REMARKS: __To SGT. SHEEHAN for Follow THROUGH__
☐ Cont'd on back
SIGNATURE: __W. HYLA 5029__    DATE REC'D __2/2/15__    FORWARDED __2/4/15__

FORWARD TO: __SGT. SHEEHAN__    ASSIGNMENT __519-B__
REMARKS: __SEE ATTACHED LETTER__
☐ Cont'd on back
SIGNATURE: __A. Sheehan #5229__    DATE REC'D __2/4/15__    FORWARDED __2/17/15__

FORWARD TO: __LT. J. BARNEY #5068__    ASSIGNMENT __L-3-B__
REMARKS: __I FIND THAT SGT. SHEEHAN CONDUCTED A THOROUGH REVIEW OF ALL OF THE__
__INCIDENTS INVOLVING USE OF FORCES BY OFFICER GROVES, AS WELL AS THE__ ☒ Cont'd on back
SIGNATURE: __LT. J. Barney #5068__    DATE REC'D __2/20/15__    FORWARDED __3/3/15__

FORWARD TO: __COMMANDER S. HYLAND #5029__    ASSIGNMENT __COMMANDER 3__
REMARKS: __I CONCUR w/ FINDINGS/CONCLUSIONS ARTICULATED BY SGT. SHEEHAN AND__
__SUPPORT HIS RECOMMENDATIONS FOR MOVING FORWARD.__    ☐ Cont'd on back
SIGNATURE: __W HYLA 5029__    DATE REC'D __3/16/15__    FORWARDED __3/20/15__

FORWARD TO: __DC KUEBLER__    ASSIGNMENT __PATROL SOUTH__
REMARKS: __Concur. Fwd To CmDe HYLAND For FOLLOW THROUGH__
__CHAIN To PAY PARTICULAR ATTENTION To PO GROVES__    ☐ Cont'd on back
SIGNATURE: __DC Kuebler__    DATE REC'D _____    FORWARDED __4-6-15__

FINAL DISPOSITION: __FWD TO CmDr HYLAND__

ORIGINATING PERSON ADVISED BY: _____
NAME          NOTIFIED VIA          DATE

☐ CD/DVD (#          ) ATTACHMENTS          A-10 (02/09)

BARNES

U.10.100 Completion describing each incident. All of the incidents resulted in a level four use of force however each of the incidents were different in nature and all of the resulting uses of force were found within policy and to have been reasonable. I find that each incident was properly documented but Sergeant Sheehan's request for Officer Groves to attend additional training to improve on his documentation skills is reasonable and Officer Groves was receptive to this training. Sergeant Sheehan also recommended that Officer Groves attend the upcoming Surviving Verbal Skills training. Throughout all of these incidents Officer Groves was carrying his expandable baton and not the taser and at the recommendation of Sgt. Sheehan, Officer Groves is now carrying the taser when available, providing him another use of force option. On February 27, 201 Sgt. Sheehan, Sgt. Saare, and I met with Officer Groves to review the findings of th GARS committee and our recommendations with him. Officer Groves was receptive to our recommendations and accepted them in a positive manner. Sgt. Saare will continue to monitor Officer Groves progress and Sgt. Saare will follow through to ensure Officer Groves receives/attends the recommended training.

Lt. _____ #5068

Articulation - Auditing    Boiler plate and/or
Vague/non-specific suspect descriptions. Advise me
of the specifics of the _____ training prior to
attendance (who, where etc)    Ltd.

GB001690

# Registration Form

## Columbus Division of Police Personnel

Complete this form and send through departmental mail to "Advanced Training Course Registration"

Name of Course  USE OF FORCE AND DOCUMENTATION

Date of Course  7/21/15 – 7/23/15

Name/Badge or IBM of Student  ADAM GROVES

Assignment  1989

Work Phone  645-4597

Alternate Phone Number _____

Supervisor's Name  SGT. MICHAEL SAARI #5321  S19R

I have read and understand the registration/cancellation policies and procedures for reserving a seat in this class.

Student Signature _____ 5321 ____  Date  6/18/15

As the supervisor of the of the above named personnel, I approve of this application for training.

Supervisor Signature _____ 5321 ___  Date  6/18/15

Please return to Officer Stephanie Gibson, Advanced Training.

# DIVISION OF POLICE

Intra-Divisional

January 7, 2015

**TO:**      Deputy Chief Ken Kuebler #5008
Patrol South Subdivision

**FROM:**    Commander Michael Gray #5021
EARS Committee Chairperson

**SUBJECT:**  Employee Action Review System – Semi-Annual Review

On December 15, 2014, the EARS Committee convened to review incidents from April 1, 2013 through March 31, 2014. Incidents reviewed included:

☒ **Citizen Complaints**

☐ **Uses of Mace**

☒ **Uses of Force**

**Involved Personnel: Officer Adam C. Groves #2651, 19B9**

Based on the review, the EARS Committee has determined that a pattern of conduct may exist in one or more of the following areas:

☐ Allegation(s)
☐ Behavior
☐ Verbal or nonverbal communication
☒ Tactics
☐ Use of Force level(s) compared with suspect's resistance/aggression
☐ Injuries sustained by citizens
☒ Other: Articulation in U.10.100s

☐ Race, size, gender, ethnicity, socio-economic status, and other generally objective means of describing subjects/complainants
☐ Reaction to words, actions, or circumstances
☐ Personality conflict

This letter is being forwarded to advise you of the Committee's concerns. It is the Chain of Command's responsibility to review the investigation that gave rise to this notice and to determine a proper course of action. **Per Directive 3.03 the assigned supervisor must complete a Sworn EARS Plan, Form J-10.110S, and submit it to the Deputy Chief for approval *within 14 days.***

Page 2

The following investigations were reviewed:

- 201311-0129
- 201311-0218
- 201312-0051
- 201401-0088
- 201406-0210

The Committee noted a pattern with regard to the articulation on the U.10.100's relative to documenting why the use of force was needed. The Committee believed that all of the U.10.100s contained repetitive articulation and lacked specifics. Additionally, the Committee believes the taser or other tactics might be viable options in some of the instances where there were Level 4 strikes to suspects who had locked their arms under their bodies. This is because of the possibility of injury to an officer's hand while delivering punches (as occurred in another incident that was reviewed this cycle). The Committee has determined this warrants review by Officer Groves' chain of command.

Respectfully Submitted,

Commander Michael Gray #5021
EARS Committee Chairperson

# DIVISION OF POLICE

Intra-Divisional

March 3, 2015

TO:        Kimberley Jacobs #5000, Chief of Police

FROM:   Sergeant James W. Sheehan, Patrol Zone 3, S-19-B

SUBJECT:  EARS Semi-Annual Review

RE:        Officer Adam Groves #2651, 19B9

---

Ma'am,

On February 4th, 2014, I received notification from the Employee Action Review System (EARS) Committee that they had concerns regarding the Level 4 Use of Force (Tactics) and the Articulation in the U.10.100s that Officer Adam Groves #2651, 19B9 had used during the one year review period that the EARS Committee had.

The committee noted a pattern with regards to articulation on the U.10.100s relative to documenting why the use of force was needed. The Committee believed that all of the U.10.100s contained repetitive articulation and lacked specifics. Additionally, the Committee believes the use of a Taser or other tactics might be viable options in some of the instances where there were Level 4 strikes to the suspects who had locked their arms under their bodies. This is because of the possibility of injury to an officer's hand while delivering punches (as occurred in another incident that was reviewed this cycle). The Committee has determined this warrants review by Officer Groves' Chain of Command.

Pursuant to Division Directive 3.03, I reviewed the incidents in question for the purpose of determining whether intervention was necessary regarding Officer Groves use of force techniques. The following is a result of my review:

## Synopsis of Incidents:

Of the five investigations reviewed by the EARS Committee, all were Use of Force investigations (Level 4). My review was focused on the Action Response to Resistance (Level 4) investigations and the U.10.100s articulation and tactics.

GB001694

EARS Semi-Annual Review RE: Officer Adam Groves #2651
Page 2 February 17, 2015

**Investigation #2013110129:** Officer Groves was called to 97 Derrer Height Ln. on a disturbance between two men. One of the men Mr. Paul Williams was extremely upset and refused to listen to officers to calm down. Mr. Williams threatened the other party, Officer Groves went to arrest him at which time Mr. Williams took up a fighter's stance balling his fist in an aggressive posture. Officer Groves then delivered one Level 4 closed fist punch with his right hand which was effective. Mr. Williams was then placed under arrest without further incident. Officer Groves' actions were found to be **"Within Policy"** by his chain of command.

**Investigation 2013110218:** Officer Groves was dispatched on a Burglary in progress at 2527 Sullivant Avenue. The female caller stated that a male was trying to gain entry into the residence and busted out the front porch light. Officer Jeff Cain was the first to arrive and had a male at gunpoint that was holding a metal pipe when Officer Groves arrived. The male finally dropped the metal pipe and Officers Brandon Petry and Alex Rilling tried a Level 1 Use of Force which caused them to fall to the ground. The male quickly placed his right hand under his stomach to his waistline, and ignored officer's commands. Officer Groves then delivered a Level 4 Use of Force fist strikes to the males right rib cage and shoulder area which were effective, and officers were able to place him into custody. The Use of Force was classified as effective. Officer Groves' actions were found to be **"Within Policy"** by his chain of command.

**Investigation 2013120051:** Officer Groves and Officer Oliver George took a Mr. Corey Brobst to the Mt. Carmel West Hospital to be evaluated for a mental health disorder. Hospital staff told officers that Mr. Brobst had become violent. Officer Groves stated he tried to calm Mr. Brobst down at which time Mr. Brobst took up a fighter's stance clinching his fist and lunged at Officer George. Officers were unable to gain control of Mr. Brobst. Officer George delivered a Level 4 Use of Force knee strike to the common peroneal which had little effect. Officer Groves then placed Mr. Brobst to the ground at which time he placed his hands underneath himself towards his waistline. Officer Groves feared that Mr. Brobst could have gained control of a weapon and quickly delivered two Level 4 Use of Force closed fist strikes. This was effective in gaining control of Mr. Brobst right hand. Officer George then was able to gain control of the left hand after Officer Groves performed an infra-orbital maneuver. The officers were then able to control Mr. Brobst. Officer Groves' actions were found to be **"Within Policy"** by his chain of command.

**Investigation 2014010088:** Officer Groves and Officer Jeff Cain were dispatched to 491 Wrexham Avenue on a burglary alarm. Officer Groves and Cain noticed a maroon Mercury Grand Marquis parked out front which was slowly pulling away from the residence. Officer Cain, while on foot, was able to stop the vehicle. Both officers approached the vehicle and detected a strong odor of

GB001695

marijuana emitting from the vehicle. Officer Cain noticed a pry bar on the floor board by the feet of one of the suspects. Officer Cain was trying to remove the passenger, Mr. Mario White, from the vehicle and place handcuffs on him. Mr. White quickly spun on Officer Cain and took off running. Officer Groves saw Officer Cain engage in a foot pursuit and he engaged as well. Officer Groves stated that while in the foot pursuit Mr. White kept grabbing at his waistline. Officers caught up to Mr. White in the rear of 550 Belvidere Avenue. Officer Groves stated Officer Cain was the first to engage Mr. White and was struggling with him on the ground. Officer Groves stated he gave Mr. White several verbal commands to stop his resistive behavior and to roll over onto his stomach. Mr. White refused to listen and instead grabbed at his waistline as if he was trying to retrieve something. Officer Groves immediately responded to this action by delivering two Level 4 closed fist strikes to Mr. Whites' face. This Use of Force had the desired effect and Officer Groves was able to roll Mr. White onto his stomach, and Officer Cain was able to place his left hand in handcuffs. Officer Groves then stated Mr. White took his right hand and placed it in the same area he was trying to retrieve something from his waistline earlier in the altercation. Officer Groves still believed that a weapon could be involved and delivered two more Level 4 closed fist strikes. This Use of Force also had the desired effect and they were able to place both Mr. Whites' hands in handcuffs. Officer Groves' actions were found to be **"Within Policy"** by his chain of command. This incident resulted in Officer Groves sustaining a minor injury to his right pinkie finger. Officer Groves told me this minor injury did not result from his strikes.

**Investigation 2014060210**: Officer Groves responded with several officers to 538 Wrexham Avenue on a possible breaking and entering. Several individuals were detained inside the residence. Officer Groves was inside an attic with Officer Kylie Lavey who started giving commands to a male suspect to show his hands. Officer Lavey was able to get control of the males' right arm as she was pulling him from under some installation he was hiding in. Officer Groves saw this and immediately recognized the male, and that the male had a weapons warrant for his arrest. Officer Groves stated the attic was a closed confined space and was trying to gain control of the males' left hand. Officer Groves stated the male would not give his hand up and was reaching in the area of his waistline. Officer Groves knowing this individual had a warrant for a weapons offense did not know if the male was trying to retrieve a weapon. Officer Groves did not have a Taser on this date and felt that a Level 2 Use of Force mace would contaminate the area due to the confined space of the attic. Officer Groves utilized a Level 4 one closed fist strike to the right side of the male. This had the desired effect and he was able to gain control of the left hand and place him in handcuffs. Officer Groves actions were found to be **"Within Policy"** by his chain of command.

GB001696

## Analysis of the Review:

Of the five incidents involving the Level 4 Use of Force by Officer Groves, all five incidents involved a suspect that was actively resisting possibly with a weapon or acting in an aggressive position as to strike the officer. All five of the Uses of Force were effective and deemed **"Within Policy"** by his chain of command. Four of the five incidents involved Officer Groves stating the suspect reached or had their hands under their stomach area in the U.10.100s. Two of these four incidents show that the suspect had a weapon previous (metal pipe in hand, and a warrant for weapons offense.) Officer Groves knew this from previous contacts and knowledge that one of the suspects had a weapons warrant for his arrest. Another incident the officers could smell fresh burnt marijuana emitting from the vehicle. The suspect out of this ran reaching around the waistline. The suspect was then on the ground as officers were trying to take him into custody. The suspect then reached twice to the same area of his waistline causing Officer Groves to use a Level 4. Officers are trained that drugs and weapons go together and Officer Groves believed the suspect could have been armed with a weapon due to his actions and training. The final incident was in a hospital ER room at which the suspect was being treated by hospital staff that left to get officers due to his behavior. The suspect could have easily grabbed a weapon which Officer Groves wrote in his U.10.128. The weapon could have been a dirty needle or scalpel. The suspect out of this incident stated to the Sergeant that he challenged the officers both physically and verbally.

## Additional Information:

The EARS committee reviewed incidents from April 1, 2013, through March 31, 2014. During the summer of 2014, I informally spoke to Officer Groves about the number of times he utilized a Level 4 Use of Force within the past year. I reviewed some of the incidents involving Officer Groves. I became aware that EARS committee had recommended him for review by his chain of command and decided to have a meeting with him. On February 9, 2015, I had a meeting with Officer Groves after roll call. I discussed several of the incidents with him from the EARS review that I had looked at during the past several days.

I first discussed the incidents that involved the use of force Level 4 punches and strikes during his encounters with the suspects. I discussed other tactics that may be used such as the Taser and Mace. Officer Groves informed me that he carries the expandable baton, and not the Taser. This was the case in one of the incidents where maybe a Taser could have been used. Officer Groves further explained he was unable to use his mace or feared that the mace would have contaminated him and the other officers. This was explained in the incident at Mt. Carmel West Hospital ER, and the confined space in the attic. I discussed with Officer Groves the benefit of using the Taser and having this intermediate

GB001697

weapon on his duty belt then the expandable baton as an option. Officer Groves was receptive to this suggestion and stated that he would now take the Taser out instead of carrying the expandable baton. I then discussed the repetitive articulation in Officer Groves U.10.100s that the EARS committee had reviewed and stated lacked specifics. I believe that the U.10.100s did have some circumstances that appear to be similar and could have stated more details for the action used by Officer Groves however his chain of command did find all of these incidents **"Within Policy."** Officer Groves stated he believes things have been going better for him since last March in his Uses of Force.

### Conclusions and Recommendations:

After my review of all five incidents given by the EARS Review Committee for evaluation, I do not find a negative pattern based on U10.100 articulation.

I realize the EARS Review Committee looks at all five of these cases and determines if there is a potential pattern that may need to be addressed. I also know each one has to be evaluated on their particular circumstances separately at the same time. I have done both in this review.

The Division needs to constantly refer to the resources that guide the actions of the officer during the time of the incident. I have done this during my review and referred to the Use of Force Continuum, which I have attached a copy of to this response. The section in the under suspect actions gives the example "Wrestling with Officer/Pushing Officer". The appropriate suggested response for the officer includes "Striking, Punching, Kicking, Striking Muscle Groups, Baton Restraints, and Electrical Devices" (i.e. Taser). It has also been established an officer can go one step higher on the Continuum to help end or resolve the incident as quickly and safely as possible. The next step above is "Baton Techniques". By simply referencing the Use of Force Continuum one can easily reason the response to resistance by Officer Groves on each occasion was reasonable and within policy and directly reflected the training he has received. If all five incidents resulted in a Level 3 Taser use, I believe the Committee would have had the same concerns. I believe the discussion I had with Officer Groves regarding other viable tactics and options on the Use of Force Continuum will make him more conscious of his options during encounters with resistive suspects.

To address the concerns of the articulation on the U.10.100s containing repetitive articulation and lacking specifics, I recommend Officer Groves attend a training class involving U.10.100 writing and articulation. I believe this would help him explain when he has to transition from one level of force to other options when a technique is not working. Officer Groves will also attend the

GB001698

EARS Semi-Annual Review RE: Officer Adam Groves #2651
Page 6  February 17, 2015

class in May on Surviving Verbal Conflicts. I will also continue to monitor Officer Groves U.10.100's and the progress he makes.

I recommend that no further action be taken regarding this matter.

Respectfully submitted,

Sergeant James W. Sheehan #5229
Patrol South, Zone 3, S-19-B

Prepared By: _____ #5229  2/17/15
              Sergeant        Date

Reviewed By: _____ 5068  2/20/15
              Lieutenant  Date

Reviewed By: _____ 3/29/15
              Commander  Date

Approved By: _____ 4-6-15
              Deputy Chief  Date

Reviewed With: _____ #2651  2-17-15
                Officer        Date

Distribution:
Copy to Involved Officer
Original and all copies to Personnel Unit

J-10  1105  Aug 2006

GB001699