| Columbus Police Division Directive | EFFECTIVE Mar. 30, 2012 | NUMBER 3.91 |
|---|---|---|
| | REVISED Jun. 30, 2014 | TOTAL PAGES 6 |
| **Chemical Agents and Intermediate Weapons Regulations** | | |

Cross Reference....... 3.23, 3.25, 3.34, 3.57, 3.62

## I. Definitions

A. Advanced Taser® (hereafter referred to as taser)

An intermediate weapon not intended to replace firearms or self-defense techniques. The taser is designed to temporarily immobilize a violent or potentially violent subject. When applied correctly, the taser generates an electrical current that dominates the neuromuscular and sensory nervous system, incapacitating the subject.

B. eXtended Range Electronic Projectile (XREP®)

A self-contained, wireless electronic control device, deployed from a 12-gauge pump-action shotgun, designed to temporarily override the command and control systems of the body to impair muscular control and temporarily immobilize a violent or potentially violent subject as the taser does.

## II. Policy Statements

A. Chemical Agents

1. Sworn personnel shall carry only those chemical agents that have been authorized by the Chief of Police.
2. Sworn personnel shall not carry chemical spray until training and qualification standards have been satisfied. Sworn personnel shall demonstrate proficiency with chemical spray once each calendar year.
3. Sworn personnel may use chemical spray to protect themselves or another person from harm to effect the arrest or gain control of a physically aggressive/resistive subject to prevent escape or to prevent or stop the commission of a criminal offense.
    a. Sworn personnel should not use chemical spray on handcuffed subjects unless they pose a danger to themselves, officer(s), or the public.
    b. Supervisors investigating incidents in which chemical spray has been used against a handcuffed person shall comply with the applicable procedures detailed in the Supervisor's Manual and the "*Use of Force*" directive.
4. The use of a chemical agent deployed by being thrown or rolled requires the approval of a lieutenant or higher authority.


Δ π EXHIBIT 20
Deponent Johnson
Date 5-9-17  Rptr. TLA
WWW.DEPOBOOK.COM

   a. A SWAT lieutenant may designate a lower-ranking SWAT officer to give such an order.

   b. A sergeant acting as a zone lieutenant may not give such approval.

5. Sworn personnel may use their Division-issued chemical spray to disperse a non-violent congregation of violators who are not moving. Prior to deployment of the chemical spray, at least two notifications should be made to the participants in the crowd advising them that they are committing a violation of law and are to disperse, and that chemical spray will be used if they fail to comply with the order.

   a. The notifications should be made in a manner which the participants in the crowd should reasonably be able to hear and understand.

   b. The notifications and subsequent deployment of chemical spray in crowd control situations should be video-recorded when possible.

6. Sworn personnel encountering a group of people, some of whom are engaged in violent conduct, shall be guided by the "**Use of Force**" directive when determining whether to use chemical spray. If chemical spray is used, it should be directed at the persons participating in the violent conduct, not at the group in general. The incident should be video-recorded when possible.

7. Sworn personnel deploying a chemical agent shall make a reasonable effort to decontaminate exposed persons once the situation is under control. Decontamination may include exposure to fresh air, flushing the eyes with fresh water, or seeking medical attention.

B. Intermediate Weapons

1. Sworn personnel shall carry only those intermediate weapons authorized by the Chief of Police. The approved intermediate weapons are:

   a. A flashlight not to exceed 15" in length

   b. The issued tactical baton

   c. The approved taser and/or the XREP

2. Sworn personnel shall not carry an intermediate weapon until training and qualification standards for that weapon have been satisfied. Sworn personnel shall requalify once each calendar year with each intermediate weapon they are authorized to carry.

3. Sworn personnel may use an intermediate weapon to protect themselves or another person from harm; to effect the arrest of or gain control of a physically aggressive/resistive subject; or to prevent or stop the commission of a criminal offense.

4. Sworn personnel should not use an intermediate weapon on handcuffed subjects unless they pose a danger to themselves, officer(s), or the public.

5. Intermediate weapons are not a substitute for deadly force.

6. It is recommended that sworn personnel have an approved intermediate weapon and a restraint device available when in possession of a firearm while off duty.
7. Sworn personnel shall complete a *Use of Force* Report, form U-10.128, when an intermediate weapon is used on a subject.
8. Sworn personnel shall complete the Personal Advanced Taser Agreement, form J-10.112, and obtain approval from the Defensive Tactics Unit (DTU) prior to carrying a personally-owned taser. Personally-owned tasers may be carried while working regular duty, special duty, or off-duty as an intermediate weapon. Division-owned tasers that are not personally assigned shall only be used for regular duty.
9. Sworn personnel shall not target the head, face, neck, or groin with the taser in probe mode or with the XREP.
10. Sworn personnel should not intentionally target the chest area, above the sternum when deploying the taser in probe mode or deploying the XREP, when possible.
11. Sworn personnel may target the neck or groin with the taser in drive-stun mode.
12. Sworn personnel should consider the following when determining whether to use the taser or the XREP:
   a. Subject's age
   b. Subject's weight
   c. Subject's obvious physical disabilities
   d. Subjects who are in a position where a fall may cause substantial injury or death
13. Sworn personnel should not use the taser or XREP on small children, infirmed or elderly individuals, obviously pregnant females, or subjects who are in control of a motor vehicle.
14. Sworn personnel shall not deploy the taser or XREP on subjects known to have come in contact with flammables, or in environments where flammables are obviously present.
15. Sworn personnel shall not use the taser on a fleeing subject who committed a minor-misdemeanor as a primary offense, unless the subject is posing an articulable threat to the officer or to another citizen.

   Note: Failure to Comply and/or Obstructing Official Business violations are not justification for using the taser.
16. Sworn personnel shall properly store the taser and/or XREP when it is not in use. Once the taser/XREP is issued, sworn personnel shall not leave the taser/XREP unattended.
17. Sworn personnel shall not change or modify the taser/XREP.

18. Sworn personnel shall contact a DTU supervisor for replacement of any taser/XREP that is not safe or functioning properly. Only a DTU supervisor shall repair the taser/XREP or accessories.
19. Sworn personnel shall not remove the Digital Power Magazine (DPM) from the taser unit. Once the DPM read-out reaches 20% or less, personnel should have the DPM replaced. The DPM shall only be replaced by a DTU supervisor.
20. Taser accidental discharges
    a. Sworn personnel shall notify an on-duty supervisor and record the incident on the Taser Log Sheet, form S-70.113.
        (1) If a subject is struck, sworn personnel shall complete a *Use of Force* Report and follow the applicable procedures outlined in the "*Use of Force*" directive.
        (2) If no subject is struck, sworn personnel shall ensure that the probes and cartridges are destroyed.
        (3) The supervisor shall conduct an administrative investigation when an incident occurs at a location other than a police facility, or at a police facility when a suspect or arrestee is present.
21. Taser deployment
    a. Sworn personnel choosing to deploy a taser shall confirm that the weapon selected is a taser and not a firearm.
    b. Only cartridges marked "25 FEET" or "XP" shall be used in the taser.
    c. When feasible, sworn personnel should communicate to the subject that the taser is going to be deployed to attempt to gain compliance. This can be communicated to the subject by removing the air cartridge and displaying the laser on the subject and "sparking" the taser unit.
        Note: When the taser is "sparked" for compliance, sworn personnel shall complete a *Use of Force* Report.
    d. If possible, personnel should give the loud verbal command, "Taser! Taser! Taser!" prior to firing the taser.
    e. Sworn personnel may use the taser in the drive-stun mode to gain control of suspects displaying active resistance. The drive-stun mode shall not be used with a live air cartridge in place.
22. Taser post-use
    a. Any subject upon whom the taser is used, in either probe or drive-stun mode, shall be examined by EMS personnel and shall remain under observation by sworn personnel until slated or released.
    b. Sworn personnel shall request an EMS unit respond to the scene to remove any probes that have penetrated the skin, or to care for wounds caused by probes that penetrated, but fell out. Sworn personnel shall not remove the probes.

  (1) If the subject is transported to a medical facility, sworn personnel shall ride in the medic unit and remain with the subject until further medical attention has been offered.
  (2) Sworn personnel shall call EMS personnel to the scene if any signs or symptoms of medical distress become evident.
 c. Sworn personnel shall provide the subject with the Taser Aftercare form, S-70.112.
 d. Sworn personnel shall treat the taser cartridge, wires, and probes as evidence and shall secure and submit them to the Property Control Unit for two years. This does not apply to accidental discharges when no subject is struck. Probes that have penetrated the skin should be treated as a biohazard and proper universal health precautions should be taken when handling and packaging them.

23. Taser dataport
 a. Only zone lieutenants, a DTU supervisor, and Internal Affairs Bureau supervisors shall access the taser's USB dataport.
 b. Taser dataport settings shall only be set or adjusted by a DTU supervisor.
24. Each unit assigned a taser shall maintain a Taser Log Sheet that shall include:
 a. Tasers assigned to the unit
 b. Taser cartridge serial numbers assigned to the unit
 c. Spent taser cartridge serial numbers with the date fired, the officer's name and badge number, and the taser serial number it was fired from
25. When the Taser Log Sheet indicates four cartridges remain assigned to a unit, the first shift supervisor shall obtain replacements through DTU.
26. Completed Taser Log Sheets shall be forwarded to DTU for retention.
27. XREP deployment (including accidental discharges)
 a. Sworn personnel shall notify an on-duty supervisor.
  (1) If a subject is struck, sworn personnel shall complete a **Use of Force** Report and follow the applicable procedures outlined in the "**Use of Force**" directive.
  (2) If no subject is struck, sworn personnel shall ensure that the probes and cartridges are destroyed.
  (3) The supervisor shall conduct an administrative investigation.
 b. If possible, sworn personnel should communicate to the subject that the taser is going to be deployed to attempt to gain compliance.
 c. If possible and prior to firing the XREP, sworn personnel should advise other police personnel at scene of the deployment of the XREP. This warning will help prevent contagious fire.
 d. If possible, the XREP operator should have lethal force cover next to him or her.

28. XREP post-use
   a. Any subject upon whom the XREP is used shall be examined by EMS personnel and immediately transported to a medical facility to have the XREP removed by medical personnel.
   b. Sworn personnel shall ride in the medic unit and remain with the subject until the appropriate medical attention has been offered.
   c. Sworn personnel shall treat the XREP cartridge as evidence and shall secure and submit it to the Property Control Unit for two years. This does not apply to accidental discharges when no subject is struck. Personnel turning in the XREP cartridges(s) shall ensure the probes are intact and articulate this information on the property slip.
      Note: XREP probes that have penetrated the skin should be treated as a biohazard and proper precautions should be taken when handling and packaging them.
   d. Sworn personnel shall provide the medical facility with written XREP removal instructions.
29. Each unit assigned a XREP shall maintain a Taser Log Sheet that includes:
   a. XREP cartridge serial numbers assigned to the unit.
   b. Taser X12 Less Lethal Shotgun serial number assigned to the unit.
   c. Spent XREP cartridge serial numbers with the date fired, officer's name, badge number, and the taser serial number it was fired from.
30. Sworn personnel shall send completed XREP log sheets to DTU for retention.
31. Sworn personnel shall obtain XREP replacements through DTU.