IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DALE PHILLIPS, | : | |
| | : | Case No. 2:16-cv-880 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | |
| KAREN BLAIR, *et al.*, | : | Magistrate Judge Vascura |
| | : | |
| Defendants. | : | |

## ORDER

This matter is before the Court on the Motion for Partial Summary Judgment of Defendants Officers Karen Blair, Adam Groves, Jean Byrne, Douglas McClain, Jr., and Chad Cazan, Sergeant Lowell Rector, Chief Kimberley Jacobs, and the City of Columbus. (ECF No. 30). For the reasons that follow, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

#### A. Factual Background

Dale Phillips, a forty-eight-year-old Black man, is a former Ohio State Highway Patrol Officer and a self-employed truck driver. (ECF No. 1 at 4-5). On September 15, 2015, he was driving his pick-up truck through Columbus with a white female in the passenger seat when Karen Blair, a City of Columbus police officer, suddenly pulled out of an alleyway in her cruiser. (*Id.* at 3-5). Officer Blair's abrupt appearance cased Mr. Phillips to stop short and blocked Phillips's vehicle in the alleyway. (ECF No. 1 at 3-5).

Officer Blair had been in the midst of responding to a police radio dispatch that aired a report of a burglary in progress at a closed bar at 2756 Sullivant Avenue. (*Id.* at 5). Dispatch had reported that a white male and two Black females were carrying items out of the bar and putting

them in a vehicle. (*Id.*). After Officer Blair blocked Mr. Phillips' egress, police dispatch issued further information: the three burglary suspects were reportedly "back inside" the bar. (*Id.*).

Despite the inconsistencies between the suspects identified on the radio dispatch and Mr. Phillips and his compatriot, Officer Blair decided to detain Mr. Phillips and called his license plate into dispatch. (*Id.* at 6). When Mr. Phillips asked why he was being stopped, Officer Blair responded, "I don't know, but we're going to find out." (*Id.* at 6). Mr. Phillips balked, noting that an unlawful detention violated his civil rights. (*Id.*).

Officer Blair then requested Mr. Phillips' and his passenger's identification. (*Id.*). Again, he asked why he was being stopped and whether he was being detained, but he provided his name, date of birth, and social security number. (*Id.*). His passenger stated that she did not have identification. (*Id.*).

Finally, after Mr. Phillips repeatedly inquired as to the nature of the stop, Officer Blair told Mr. Phillips that he was being detained. (*Id.*).

Officer Jean Byrne then arrived at the scene. (*Id.* at 7). Officer Byrne asked the passenger to step out of the truck and separately questioned her about the burglary. (*Id.*). Although Officer Byrne concluded that the passenger was not involved, Officer Byrne nevertheless continued to detain both Mr. Phillips and the passenger. (*Id.*).

Several other Defendant Officers then arrived, including Adam Groves, Chad Cazan, and Douglas McClain. (*Id.*). All of the Officers knew that the burglary suspects remained in the building. (*Id.*). Nevertheless, Officer Blair continued to question Mr. Phillips, eventually informing him that she was investigating a burglary. (*Id.*). Mr. Phillips denied any involvement with the crime. (*Id.*).

Officer Blair then asked Mr. Phillips to turn his truck off. (*Id.*). He did so. (*Id.*). Officer Groves asked Mr. Phillips to step out of the truck. (*Id.*). Mr. Phillips initially responded, "You illegally stopped me for no reason and I stopped my vehicle. You asked me to turn my vehicle off. . . and I have turned my vehicle off. You asked for my license and I have given you my license. Now you want me to step out of my vehicle. Why?" (ECF No. 44 at 165). Officer Blair then pulled his truck door open. (*Id.*). Mr. Phillips began to exit the cab of the truck. (*Id.*).

Before Mr. Phillips could comply, Officer Groves forced the truck door open and grabbed Mr. Phillips' left arm. (ECF No. 1 at 8). Mr. Phillips asked "What are you grabbing me for? Why are you assaulting me?" (ECF No. 30-1 at 166). But the officers never answered Mr. Phillips' question – they only repeated the command to "stop resisting." (*Id.* at 167). Apparently eager to comply, Mr. Phillips then asked "What the hell do you guys want me to do? Get on the ground? Put my hands behind my back? What?" (*Id.*). Still, the Officers gave him no guidance other than to "stop resisting." (*Id.*). Mr. Phillips told them "I'm ex-state patrol, you dumbasses." (*Id.*). Quickly thereafter, Officer Blair grabbed Mr. Phillips' right arm and Officer Cazan grabbed Mr. Phillips' legs, causing him to fall head and shoulder first on the pavement. (ECF No. 1 at 7). All of the Officers leaped on Mr. Phillips' body, pushing his face into the ground. (*Id.*).

The Officers then cuffed Mr. Phillips. (*Id.*). Officer Groves then maced Mr. Phillips, getting the nozzle of the mace bottle so close to Mr. Phillips' face that it scraped the inside of his eye. (*Id.*).

Next, Defendant Sergeant Lowell Rector arrived on the scene. (*Id.*). Sergeant Rector and the Officers transferred Mr. Phillips to a police cruiser while they conspired to falsely charge Mr. Phillips with "Obstructing Official Business." (*Id.* at 8-9).

As a result of the encounter, Mr. Phillips suffered injuries to his eyes, head, knees, and right shoulder. (*Id.* at 9). He required surgery on his right arm to repair a torn tendon sustained during the incident. (*Id.*).

As for the criminal charge, the Columbus City Attorney offered to dismiss it if Mr. Phillips would agree not to pursue a civil case against the police. (*Id.*). Mr. Phillips declined the offer and went to trial. (*Id.*). He was found guilty at his first trial, appealed the conviction to the Tenth District Court of Appeals, and was found not guilty at the second trial. (*Id.* at 10). Mr. Phillips maintains that during both trials, "Officers Blair, Byrne, and Groves provided false testimony as to Mr. Phillips' truck being identified as the exact truck used to burglarize the building, the location of Mr. Phillips['] truck in relation to the dispatched location, the dispatched description of the suspects, the timing of the officers['] arrival on scene and what they witnessed, and Mr. Phillips' actions as he stepped out of his truck and was being handcuffed." (*Id.*).

### B.  Procedural Background

Mr. Phillips now brings suit under 42 U.S.C. § 1983 against Officers Blair, Byrne, Cazan, Groves, and McClain, Sergeant Rector, and the City of Columbus for violations of the Fourth Amendment (First Cause of Action); against Officer Blair, Sergeant Rector, and the City of Columbus for Malicious Prosecution (Second Cause of Action); and against Officer Blair for First Amendment retaliation (Third Cause of Action). (*Id.* at 13-14).

Defendants filed a Motion for Partial Summary Judgment, arguing that Defendants are protected by the doctrine of qualified immunity as to the Fourth Amendment claims of unreasonable seizure, false arrest, excessive force, and malicious prosecution, as to the state law claim of malicious prosecution, and as to the First Amendment retaliation claim. (ECF No. 30).

Defendants also argue that the City of Columbus is entitled to summary judgment as to Plaintiff's claims. (*Id.*). The motion is ripe and ready for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

### A. Qualified Immunity

Under the doctrine of qualified immunity, government officials are not liable for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotations omitted)). Qualified immunity is a two-step analysis: this Court must determine whether the officers violated Mr. Phillips' constitutional rights, and if so, whether those rights were clearly established at the

time. *Smith v. Stoneburner*, 716 F.3d 926, 929 (6th Cir. 2013) (citing *Pearson*, 555 U.S. at 236). In the Sixth Circuit, when analyzing whether a constitutional right was clearly established, courts "must look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within [the Sixth] circuit, and finally to decisions of other circuits." *Denton v. Rievley*, 353 Fed.Appx. 1, 5–6 (6th Cir. 2009) (quoting *Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009)).

In this context, "clearly established" means that "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotations omitted)). Courts must "define the 'clearly established' right at issue on the basis of the 'specific context of the case.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citing *Saucier*, 533 U.S. at 201). Such specificity is "especially important in the Fourth Amendment context" because of the highly fact-intensive nature of the inquiry. *Wesby*, 138 S. Ct. at 590 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)) (per curiam ). Thus, liability will not attach unless there exists "a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment." *Id.* (quoting White v. Pauly, 137 S. Ct. 538, 552 (2017) ) (per curiam). Plaintiffs bear the burden of showing that Defendants are not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005). Finally, "the issue of qualified immunity may be submitted to a jury only if 'the legal question of immunity is completely dependent upon which view of the [disputed] facts is accepted by the jury.'" *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (quoting *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir.2007)).

### 1. Unreasonable Seizure

Defendants argues first that Defendant Officers Blair, Groves, Cazan, McClain, and Byrne and Sergeant Rector are entitled to summary judgment because qualified immunity shields them from liability as to the Fourth Amendment claim of unreasonable seizure. (ECF No. 30 at 19).

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. Amend. IV. "A warrantless search or seizure is 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Roark*, 36 F.3d 14, 17 (6th Cir. 1994) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One of those exceptions is an investigative stop—or *Terry* stop—a "temporary, involuntary detention[ ] which must be predicated upon 'reasonable suspicion.'" *United States v. Dickens*, No. 17-5721, 2018 WL 4203481, at *2 (6th Cir. Sept. 4, 2018)) quoting *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008).

The Sixth Circuit applies a "two-step conjunctive analysis to determine whether police action falls within the exception for *Terry* stops." *United States v. Powell*, 210 F.3d 373 (6th Cir. 2000) (citing *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993). Under this analysis, the Court will first "ascertain whether the officer had a 'reasonable suspicion' supported by 'specific and articulable facts' that the suspect was involved in criminal activity.'" *Id.* (citing *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986). The facts upon which an officer relies in making this determination "must substantially distinguish the stopped individual from the broader universe of law-abiding citizens." *Id.* (citing *Reid v. Georgia*, 448 U.S. 438, 441 (1980) (per curiam)). As the Supreme Court memorably noted in *Terry*, a law enforcement officer may not rely on an "inchoate and unparticularized suspicion or 'hunch.'" *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

Additionally, "reasonable suspicion to stop a person, whether suspected of a past or ongoing crime, must rest on specific facts—available to the officers *before* they initiate contact—tending to show that the person stopped is in fact the person wanted in connection with a criminal investigation." *United States v. Hudson*, 405 F.3d 425, 438 (6th Cir. 2005). The second step in the analysis requires court to analyze "'whether the degree of intrusion into the suspect's personal security' was reasonably related to the character of the reasonable suspicion." *Powell*, 210 F. 3d 373 (quoting *Garza*, 10 F.3d at 1245)).

Here, not only was there a dearth of specific and articulable facts to connect Mr. Phillips to the ongoing burglary, but also the only facts known to police about the actual suspects were completely inconsistent with a theory that Mr. Phillips was the perpetrator. Police should have been looking for a *white man* and two Black women *inside* a bar at 2756 Sullivant Avenue. Instead, they stopped a *Black man* and white woman in a vehicle *outside* the bar. Absolutely nothing about Mr. Phillips' behavior before the stop commenced distinguished him from any other law-abiding citizen, and two salient characteristics distinguished him from the description of the suspects. In short, drawing all inferences in favor of Mr. Phillips, as the Court must at this stage, Officers were acting on less than an unparticularized suspicion or a hunch – they were actually acting in contravention of known facts. *Cf. Terry v. Ohio*, 392 U.S. 1, 27 (1968). If a jury ultimately credits Mr. Phillips' allegations, the Defendants violated clearly established law.

### 2.     False Arrest

Defendants next seek summary judgment on Mr. Phillips' false arrest claim. To prevail on a federal false arrest claim a plaintiff must "prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)). It is clearly established law that

falsifying facts to establish probable cause to arrest is unconstitutional. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989); *Donta v. Hooper*, 774 F.2d 716, 718 (6th Cir.1985); *Franks v. Delaware*, 438 U.S. 154, 168 (1978).

Here, Mr. Phillips was ultimately arrested on a charge of violating the City of Columbus' Obstruction of Official Business ordinance, which provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties." §2321.31 (A).[1] "A conviction under [the Obstruction of Official Business ordinance] requires (1) the performance of an unprivileged act (2) with the purpose of preventing, obstructing or delaying the performance by a public official of an authorized act within his official capacity (3) which hampers or impedes the public official in the performance of his lawful duties." *Patrizi v. Huff*, 690 F.3d 459, 464 (6th Cir. 2012) (quoting *Lyons v. Xenia*, 417 F.3d 565, 573 (6th Cir. 2005). The first element—an unprivileged act—must be "an affirmative act by the defendant, and the mere failure of a person to respond to an officer's request is not in violation of the statute." *Bauer v. City of Cincinnati*, No. 1:09-CV-46, 2011 WL 5042069, at *6 (S.D. Ohio Oct. 24, 2011) (citing *Hamilton v. Hamm,* 33 Ohio App.3d 175, 514 N.E.2d 942 (Ohio Ct. App.1986)).

Defendants argue that the arrest was based on probable cause because "when [Mr. Phillips] was first ordered to exit his vehicle, he did not comply." (ECF No. 30 at 27). It is true that "a police officer may as a matter of course order the driver of a *lawfully* stopped car to exit his vehicle." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (emphasis added). But the converse is

---

[1] The Sixth Circuit has held that cases interpreting the substantially identical provision in the Ohio code are relevant precedent. *Patrizi v. Huff*, 690 F.3d 459, 464 (6th Cir. 2012).

also true: police may not unlawfully order a driver out of his or her car.  Here, there is a genuine issue of material fact as to whether the car was lawfully stopped.  *See* Part III.A.1, *supra*. Moreover, there is a genuine issue of material fact as to whether Mr. Phillips' actions constituted timely compliance, active resistance, or mere failure to respond to an officer's request. Again, the legal question of immunity depends on which version of the facts is accepted by the fact-finder. Under these circumstances, Defendants have not demonstrated that they are entitled, as a matter of law, to summary judgment on the false arrest claim.

### 3. Excessive Force Against Officer Byrne

Defendants and Mr. Phillips agree that Officer Byrne is entitled to summary judgment because there is no evidence that she ever used force against Mr. Phillips. (ECF No. 30 at 31; 50 at 11). Summary Judgment is therefore **GRANTED** as to the excessive force claim against Officer Byrne.

### 4. Excessive Force Against Officers Blair, Groves, Cazan, and McClain

Mr. Phillips argues that excessive force was used against him at two points: first, when Officers Blair, Groves, Cazan, and McClain pulled him from his truck and leaped on him, tearing the tendon in his forearm from his bicep, and second, when Officer Groves maced him directly in the eyeball after he was handcuffed.  (ECF No. 50 at 33-34).

"Whether an officer has exerted excessive force during the course of seizure is determined under an 'objective reasonableness standard.'" *Baynes v. Cleland*, 799 F.3d 600, 607–08 (6th Cir. 2015) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 399 (6th Cir. 2009)).  In performing this inquiry, a court must balance "the consequences to the individual against the government's interests in effecting the seizure." *Id.* (quoting *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir.2002)).  This fact-specific assessment requires paying "particular attention to 'the severity

of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)). The lawfulness of the conduct will be judged from the perspective of a "reasonable officer on the scene." *Id.* (quoting *Morrison*, 583 F.3d at 401)).

Mr. Phillips has presented sufficient evidence to create a genuine issue of material fact as to the use of excessive force on both occasions. The evidence in the record does not conclusively establish whether officers reasonably believed that Mr. Phillips was a potential burglary suspect and, if so, how severe the burglary was, or even whether they reasonably believed he was obstructing justice. The evidence in the record does not answer the question whether Mr. Phillips posed any threat at all—indeed, it tends to establish that Mr. Phillips was non-hostile and compliant. Finally, as discussed in Part III.A.2, *supra*, the evidence in the record does not establish whether Mr. Phillips was actively resisting arrest, or whether the command he was given were valid, or whether he was simply not given sufficient time to comply. See Harris v. City of Circleville, 2008 WL 211363 *11 (S.D. Ohio Jan. 23, 2008).

Defendants argue that, at minimum, Officers Blair and McCain should be entitled to summary judgment because both officers only used force to the extent they attempted to assist in handcuffing. (ECF No. 53 at 26-27). But here, again, the facts are inconclusive: Mr. Phillips testified that he did not personally know where Officers Blair and McClain were located when he was taken to the ground, but that is to be expected: the incident occurred quickly and fluidly, and the act of smashing his face into the ground foreclosed, to put it mildly, perfect situational awareness. (ECF No. 171 at 43-44). Mr. Phillips *did* testify that Officer Blair grabbed his arm as he was being removed from the truck and that after he was brought down, officers were pushing

down on his shoulders and possibly sitting on his legs. (ECF No. 44 at 175-85). Furthermore, Officer Blair testified at the criminal trial that Officer McClain was "part of" the struggle with Mr. Phillips and Officer Groves similarly testified that Officer McClain "join[ed] in" the use of force. (ECF No. 50-6 at 55, 211). Drawing all inferences in favor of Mr. Phillips, as the Court must, it is impossible to foreclose his excessive force claim against Officers Blair and McCain at this juncture. In sum, because the entirety of the qualified immunity defense to the excessive force claim relies on disputed facts, it must be submitted to a jury.

### 5. Malicious Prosecution Against Officer Blair and Sergeant Rector

Next, Mr. Phillips asserts a claim of malicious prosecution against Officer Blair and Sergeant Rector, alleging that Officer Blair falsified her police report on the Obstruction of Official Business charge and that Sergeant Rector participated in the charging decision despite knowing that the officers lacked probable cause for arrest. (ECF No. 50 at 42).

In the Sixth Circuit, a claim for malicious prosecution under the Fourth Amendment "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). "To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute.'" *Id.* (quoting *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir.2007)). "Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution." (*Id.*) (citing Fox, 489 F.3d at 237). "Third, the plaintiff must show that, 'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty,' as understood in our Fourth Amendment jurisprudence, apart from the

initial seizure." *Id.* at 308-09 (quoting *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007). "Fourth, the criminal proceeding must have been resolved in the plaintiff's favor." *Id.* at 309 (citing *Heck*, 512 U.S. at 484 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.")).

Here, Defendants argue that they are entitled to qualified immunity as to the malicious prosecution claim because "there was probable cause for Plaintiff's arrest" and because "there is no evidence Sergeant Rector had personal knowledge as to the facts supporting the obstruction charge." (ECF No. 30 at 38). As discussed above, the question whether there existed probable cause is based on contested facts, so summary judgment is not appropriate as to that element. As for Sergeant Rector, his deposition testimony suggests that he was aware that the description of the burglary suspects from dispatch did not match Mr. Phillips' description – he just did not care. Consider the following exchange:

> Q. And Mr. Phillips is a black man and his passenger is a white woman; is that correct?
>
> A. You asked me if he is a black man and his passenger was a white woman?
>
> Q. Yes.
>
> A. At the time of the incident, I didn't – it wasn't an issue for me. He is a black man. He identifies himself as a male black.
>
> Q. Why wasn't the description of the suspects an issue for you when you arrived?
>
> . . .
>
> A. When we investigate a burglary in progress or a breaking and entering, the color of someone's skin is not what we're looking for.
>
> Q. What about if they – if dispatch says the burglar is a large white male, and you have a small black male, would that matter to you in terms of your investigation?
>
> A. The actions of the suspect are what matter to me, not the color of their skin.

(ECF No. 45 at 58-59). This strikes the Court as prevarication cloaked in color-blindness. No reasonable police officer would conclude that discarding the description of the suspect is good police work. And it is for this reason that the Court concludes that there is a genuine issue of material fact as to whether Sergeant Rector participated in the decision to investigate and prosecute Mr. Phillips despite a lack of probable cause.[2]

### 6. Retaliatory Detention and Arrest Against Officer Blair

Finally, Defendants argue that Officer Blair is entitled to qualified immunity as to Mr. Phillips' claim of First Amendment retaliation. "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (citing *Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir.1998); *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 406 (6th Cir.1998); *Penny v. United Parcel Serv.,* 128 F.3d 408, 417 (6th Cir.1997); *Yellow Freight Sys., Inc. v. Reich,* 27 F.3d 1133, 1138 (6th Cir.1994)). Mr. Phillips argues that Officer Blair impermissibly retaliated against him starting when he asked her why he was being stopped, and that she escalated her retaliatory measures by using excessive force when he called the law enforcement officers "dumbasses."

---

[2] Defendants' argument that "Officer Blair and Rector have immunity under R.C. 2744.02(B)(3)" is untimely because it is raised for the first time in the reply brief, *see Woodard v. Winters*, No. 2:16-CV-704, 2018 WL 4610511, at *3 (S.D. Ohio Sept. 26, 2018), and it is unconvincing because that section of the Ohio Revised Code appears to concern municipal liability over the care of public roads and bridges. O.R.C. 2744.02(B)(3) ("[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair. . . .").

-14-

"There can be no doubt that the freedom to express disagreement with state action, without fear of reprisal based on the expression, is unequivocally among the protections provided by the First Amendment." *McCurdy v. Montgomery Cty., Ohio*, 240 F.3d 512, 520 (6th Cir. 2001) (citing *Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975)). Police officers in particular should be aware that it is unlawful to "exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely, anyone who takes an oath of office knows—or should know—that much." *Id.* (quoting *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990)).

Defendants argue that the existence of probable cause to arrest Mr. Phillips defeats the retaliation claim as a matter of law. (ECF No. 30 at 39). The Court repeats once again that whether probable cause existed is a contested issue of fact, and concludes, therefore, that summary judgment must be denied.[3]

### B. Claims Against the City of Columbus

The Court arrives, finally, at Mr. Phillips' claims against the City of Columbus. "Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978)). But it may be liable under § 1983 for "harms caused by direct actions of the municipalities themselves . . . harms caused by the implementation of municipal policies or customs, . . . and harms caused by employees for whom

---

[3] Defendants' failure to establish that probable cause existed is sufficient to defeat summary judgment. The Court therefore need not address at this juncture whether it was clearly established law at the time of the arrest in 2014 that there exists a specific Constitutional right to be free from a retaliatory arrest that is otherwise supported by probable cause. It notes without deciding, however, that there appears to have been a coalescence of law in the Sixth Circuit in recent years that an arrest supported by probable cause could nevertheless violate the First Amendment.

the municipality has failed to provide adequate training." *Morgan v. Fairfield Cty., Ohio*, No. 17-4027, 2018 WL 4228432, at *7 (6th Cir. Sept. 6, 2018) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993); *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017)). Here, Mr. Phillips alleges that the City of Columbus is liable for three reasons: its practice in use of chemical weapons; its ratification of unconstitutional seizure and use of excessive force; and its malicious prosecution of Mr. Phillips.

### 1. Custom of Unconstitutional Use of Chemical Weapons

First, Mr. Phillips argues that the Columbus Police Department's practice in deploying chemical weapons establishes municipal liability. "To show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015).

The parties agree that the written policy of the Columbus Police Department is that "[s]worn personnel should not use chemical spray on handcuffed subjects unless they pose a danger to themselves, officer(s), or the public." (ECF No. 41-3). Mr. Phillips argues, however, that it is the practice of the Columbus Police Department to use mace on incapacitated subjects. (ECF No. 50 at 51-52). Mr. Phillips bases this conclusion on the deposition testimony of Deputy Chief of Police Kenneth Kuebler, whom he argues "admitted that officers are permitted to mace a citizen who is compliant with their orders and not resisting them." (ECF No. 50 at 51-52). Defendants argue that Deputy Chief Kuebler not only did not state that police officers are generally permitted to use mace on compliant citizens, he also "expressly denied that characterization of his

testimony." (ECF No. 53 at 34). A review of Deputy Chief Kuebler's testimony reveals that he does admit that there are circumstances in which an officer may "mace a citizen who is complying with their orders and not resisting." (ECF No. 42 at 68). When pressed to name such a circumstance, he noted that "you could have someone who is blocking access to an emergency, who [is] doing things that are not specifically resistive, but [is] causing harm or injury to others because of their actions." (*Id.*). He also noted that CPD officers need not necessarily give a warning before making a compliant, non-resisting citizen. (*Id.* at 69). But he later clarified that he was *not* saying that Columbus police are permitted to mace a fully-compliant citizen who is not resisting. (ECF No. 42 at 70).

If his initial testimony is true, the practice of the Columbus Police Department is dramatically at odds with basic use of force principles memorialized in *Graham v. Connor*, which requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The Sixth Circuit has explicitly held that gratuitous macing is unconstitutional as a matter of clearly established constitutional law. *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994). If his corrected testimony is the true account, then perhaps the actual practice of the Columbus Police Department largely aligns with its written policy which forbids the use of mace on handcuffed subjects unless they pose a danger. It is for a jury to decide which version of the testimony to credit, and thus, the Court cannot grant summary judgment on the *Monell* claim alleging a custom of unconstitutional use of chemical weapons.

### 2. Ratification of Unconstitutional Seizure and Excessive Use of Force

A municipality's failure adequately to investigate police misconduct can constitute ratification of the illegal act. *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985); *Wright v. City*

*of Canton, Ohio*, 138 F. Supp. 2d 955, 966 (N.D. Ohio 2001) (municipal liability may be stablished when an investigation is inadequate).[4] Mr. Phillips argues that the City ratified the unconstitutional seizure because it failed to investigate the seizure at all, and that it ratified the unconstitutional use of force because it failed meaningfully to investigate the incident. Defendants appear to concede that the initial seizure of Mr. Phillips' person was never investigated. It is therefore up to a jury to determine whether that failure to investigate is evidence of a policy of condoning the conduct at issue. As for the investigation into the use of force, several deficiencies in the investigation could lead a reasonable juror to conclude that the investigation was mere pretense. One particularly notable example of such a deficiency: in the report stemming from the internal investigation, the investigator wrote that "Mr. Phillips admitted he was not following [the Officers'] instructions." Obviously, if it were true, this fact would have been crucial to determining whether the use of force was reasonable. But later, when confronted with an audio recording of Mr. Phillips' interview, the investigator conceded that, in reality, no such admission ever occurred. (ECF No. 41 at 1777-78). Hence, the issue of ratification is a question for the jury, and Defendants' Motion for Summary Judgment is denied on this issue.

### 3. Malicious Prosecution

Finally, Mr. Phillips argues that the City of Columbus should be liable for malicious prosecution. To prevail on a § 1983 claim against the City, Mr. Phillips is required to demonstrate that his harms were caused by the direct actions of the City, by implementation of the City's policies or customs, or by inadequately trained employees. *Monell v. Department of Social*

---

[4] Contrary to Defendants' arguments, one inadequate (or nonexistent) investigation is enough to demonstrate ratification. Beecause "evidence that a municipality inadequately investigated an alleged constitutional violation can be seen as evidence of a policy that would condone the conduct at issue," *Otero v. Wood*, 316 F.Supp.2d 612, 627–28 (S.D. Ohio 2004), a plaintiff need not show a pattern or practice of ratification to establish municipal liability.

*Services*, 436 U.S. 658, 690-91 (1978). He makes no such allegations with regard to his claim of malicious prosecution, and nothing in the record suggests that his prosecution was the result of a pattern or practice of the City. As for the claim of malicious prosecution sounding in state law, as this Court has previously held:

> Under Ohio law, the City cannot be held liable for intentional torts committed by its employees, including malicious prosecution. Ohio Revised Code Section 2744.02(A)(1) grants the City immunity from tort liability, unless Section 2744(B) provides an exception. Section 2744(B) allows the City to be held liable for torts related to: (1) the negligent operation of motor vehicles; (2) proprietary functions of the government; (3) the disrepair of public roads; (4) defects in government buildings; and (5) injuries expressly imposed by statute. Plaintiff does not suggest that his claims arise from the operation of motor vehicles, public roads, faulty government buildings, or other statutes, and the term "proprietary function" does not include "[j]udicial, quasi-judicial, prosecutorial, legislative, [or] quasi-legislative functions[.]" O.R.C. §§ 2744.01(C)(1)(f); 2744.02(G). Indeed, the City is immune from liability arising from its governmental functions "if the employee involved was engaged in the performance of a "judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function." O.R.C. § 2744.03(a)(1).

*Lower v. City of Columbus*, No. 2:16-CV-0394, 2016 WL 7230853, at *4 (S.D. Ohio Dec. 14, 2016) (Marbley, J.). Summary Judgment is therefore **GRANTED** as to the malicious prosecution claims against the City of Columbus.

### IV. CONCLUSION

The Motion for Partial Summary Judgment (ECF No. 30) is **GRANTED** as to the excessive force claim against Officer Byrne, **GRANTED** as to the malicious prosecution claims sounding in federal law and Ohio law against the City of Columbus. It is **DENIED** as to all other claims.

**IT IS SO ORDERED.**

                                          **s/ Algenon L. Marbley**
                                          **ALGENON L. MARBLEY**
                                          **UNITED STATES DISTRICT JUDGE**

**DATED: September 28, 2018**